Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY, LLP**
aapton@zlk.com
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: 415-373-1671

*Attorneys for Plaintiff Jeremy Villanueva*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY VILLANUEVA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PROTERRA INC., GARETH T. JOYCE, and KARINA FRANCO PADILLA,<br><br>Defendants. | Case No. 3:23-cv-03519<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>Demand for Jury Trial</u> |

Plaintiff Jeremy Villanueva ("Plaintiff") alleges the following upon information and belief, except as to those allegations concerning himself, which are alleged upon personal knowledge. Plaintiff's information and belief is based on the investigation of his undersigned counsel, which included, among other things, review and analysis of: (a) public statements made by or on behalf of Proterra Inc. ("Proterra" or the "Company"), including public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) press releases; (c) reports of securities and financial analysts; (d) news articles; and (e) industry reports. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE CLAIM

1.  Plaintiff brings this action pursuant to of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78a, et seq., and Rule 10b-5 promulgated thereunder, on behalf of

himself and all persons similarly situated who purchased or otherwise acquired Proterra securities between August 2, 2022 to March 15, 2023, inclusive (the "Class Period").

2. Proterra designs and manufactures zero-emission electric transit vehicles and electric vehicle solutions for commercial applications.

3. On August 2, 2022, Chief Financial Officer Karina Franco Padilla described the company's strong financial position by stating "we have . . . the balance sheet to not only ride out potential economic turbulence over the next year," and said the company had $523 million of cash and cash equivalents on their balance sheet. On March 15, 2023, just seven months later, Proterra announced the company was in violation of a liquidity clause in their secured convertible notes. The company also announced they may have to qualify an audit report with a "going concern" clause.

4. During the Class Period, Plaintiff and other similarly situated investors bought Proterra securities at artificially inflated prices due to Defendants' false and/or materially misleading statements. When the truth concerning the company's liquidity issues emerged, Proterra's stock price decreased resulting in significant losses to investors. This action seeks to compensate those investors and recover the damages they sustained because of Defendants' fraudulent conduct.

**JURISDICTION AND VENUE**

5. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6. This Court has subject matter jurisdiction over this action under Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

7. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

**PARTIES**

9. Plaintiff purchased Proterra securities at artificially inflated prices during the Class Period and was damaged upon the revelation of Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Proterra is attached hereto.

10. Defendant Proterra was founded in 2004 and is incorporated in the State of Delaware. Its principal executive offices are located at 1815 Rollins Road, in Burlingame, California 94010. During the Class Period, Proterra's securities traded in an efficient market on the Nasdaq under the symbol "PTRA".

11. Defendant Gareth Joyce ("Joyce") is the Company's Chairman and Chief Executive Officer. Joyce has 10 years of experience across the transportation sector. Joyce started at Daimler AG in 2004 and rose to president and Chief Executive Officer of Mercedes-Benz Canada before leaving Delta Cargo in 2016.  At Delta Air Lines, Inc., Joyce became Chief Sustainability Officer before leaving to join Proterra in November 2020, and he has been the Chief Executive Officer of Proterra since September 2021.

12. Defendant Karina Franco Padilla ("Padilla"), was the Company's Chief Financial Officer in August of 2022.  Prior to joining Proterra in 2022, Padilla served as Senior Vice President of Finance and North America Chief Financial Officer at JELD-WEN.  Padilla also held leadership positions at Ingersoll Rand, including as interim Chief Financial Officer of the Latin America business unit and Vice President of Finance, Corporate Planning, and Analysis.

13. Defendants Joyce and Padilla are collectively referred to herein as the "Individual Defendants."

14. Each of the Individual Defendants:

    (a)    directly participated in the management of Proterra;

    (b)    was directly involved in the day-to-day operations of Proterra at the highest levels;

3

(c) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d) was directly or indirectly involved in the oversight or implementation of Proterra's business and/or finances;

(e) was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning Proterra; and/or

(f) approved or ratified these statements in violation of the federal securities laws.

15. Because of the Individual Defendants' positions within Proterra, they had access to undisclosed information about the true issues with the company's balance sheet and gross margins.

16. As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial status and to correct any previously-issued statements that had become materially misleading or untrue.

17. The Individual Defendants, because of their positions with Proterra, possessed the power and authority to control the contents of Proterra's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

18.     Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Proterra's securities by disseminating materially false and misleading statements and/or concealing material adverse facts. This scheme caused Plaintiff and other shareholders to purchase Proterra's securities at artificially inflated prices.

**FACTUAL BACKGROUND**

19.     Proterra designs and manufactures zero-emission electric transit vehicles and electric vehicle solutions for commercial applications.

20.     In December of 2021, Proterra announced their plans to open a new factory in Greer, South Carolina that would begin production in the second half of 2022. The factory would manufacture battery systems for Proterra Powered customers' electric vehicles, including buses, industrial equipment, delivery and work trucks.

21.     On August 2, 2022, Proterra announced their earnings for the second quarter of 2022. In that announcement, the company stated they had $523 million in cash and cash equivalents on hand and stated "we have . . . the balance sheet to not only ride out potential economic turbulence over the next year but to emerge as a central player of this developing market."

22.     The day those earnings were announced, the company had an earnings call. During that call, CFO Karina Franco Padilla said the company achieved "sequential gross margin improvement." Padilla also stated "we retain a healthy balance of cash and equivalents on our balance sheet of more than $520 million as of June 30. While this year's investment in our new factory accelerates our cash usage in 2022, the new Greer, South Carolina facility will allow us to multiply our existing battery production capacity several times. This positions us for growth on revenue, improved margins and cash flow in the years ahead." Padilla made additional comments regarding the company's improving margins and the strength of the company's balance sheet.

23.     Contrary to these statements during the Class Period, the company faced severe financial issues regarding their balance sheet and their gross margins. On March 15, 2023, Proterra announced their quarterly earnings. In that announcement, the Company stated they were in

violation of a liquidity clause in their secured convertible notes and that they may have to qualify an audit report with a "going concern" clause.  The financial issues stemmed from an increase in cash burn because of a decrease in gross margin and an increase in accounts receivable during the relevant quarter.

24. In response to the announcement, Proterra's stock price plummeted as investors and analysts reevaluated the Company's financial stability. Throughout the Class Period, Proterra's stock price lost some value, but when the truth was finally revealed, the bottom fell out. In the span of just a day, Proterra's stock price substantially dropped from $2.51 per share to $1.16 per share, eliminating approximately $118 million in market capitalization in one day.

## SUBSTANTIVE ALLEGATIONS

**A.   *False and/or Materially Misleading Statements***

*August 2, 2022 – Quarterly Letter*

25. On August 20, 2022, Proterra released their quarterly earnings for the second quarter of 2022 in a quarterly letter.  Chief Executive Officer Gareth Joyce signed the quarterly letter on behalf of the Company.  The "Highlights" section of the earnings release stated the company had "$523M in cash, cash eq, and short term investments."  The Company said the new factory was "on target for start of production before the end of 2022," and "we expected it to provide greater scale and production efficiency to support better margins."   The Company described their financial stability by saying:

> With $523 million of cash, cash equivalents, and short-term investments as of the end of Q2 2022, our new Greer factory adding multiple GWh of new battery manufacturing capacity, Proterra Powered partnerships to develop or supply battery systems with more than a dozen OEMs across 20 vehicle programs, and approximately $1.3 billion in federal grant programs available to the industry for zero emission transit buses and chargers in fiscal year 2022, we believe we have the technology, the product, the competitive positioning and the balance sheet to not only ride out potential economic turbulence over the next year but to emerge as a central player of this developing market.

*August 2, 2022 – Earnings Call*

26.     On the same day the Company released their earnings for the second quarter of 2022, they had an earnings call that included Chief Financial Officer Gareth Joyce and Chief Financial Officer Karina Padilla.  Joyce touted the company's growth and execution "while sustaining a strong balance sheet with more than a $0.5 billion in cash and equivalents as of June 30."  Joyce described the company's approach in 2022 by saying "early on this year, we began assessing a strategy of operational and capital disciplines throughout the organization focused on enduring growth that prioritizes margin improvement over revenue growth, cash preservation without sacrificing our growth investments and focusing on core growth opportunities that can provide the highest return on capital as well as the fastest return of capital.  We continue to be supported by a healthy balance sheet with more than $520 million in cash and equivalents as of June 30 and I reassure you it's not one we take for granted in any way, shape, or form."

27.     During that earnings call, Padilla touted the company's sequential gross margin improvement and said "we retain a healthy balance of cash and equivalents on our balance sheet of more than $520 million as of June 30."  Padilla also the Company's new factory would "allow us to multiply our existing battery production capacity several times.  This positions us for growth on revenue, improved margins and cash flow in the years ahead."  Padilla also said "our underlying gross margin should continue to improve in the years ahead from higher pricing that balances our cost, greater production volumes and scale benefits and improvement in our labor efficiency, more effective supply chain and greater manufacturing efficiencies overall as we bring our new manufacturing capacity online."

28.     Padilla discussed the strength of the company's balance sheet at length during the call by saying:

> Lastly, on the cash front.  Our balance sheet remains strong with $523 million in cash and equivalents as of June 30 sets us apart from others.  The health of our balance sheet is not coincidental.  Liquidity is a priority, it always has been and will continue to be.  But we will continue to invest responsibly in battery capacity expansion, product research and development and across our operations to support our growth strategy for the years to come…I cannot emphasize enough that we understand the importance of

7

prudent cash management especially in such volatile times. Despite the challenging environment we are all currently facing, I believe we are in an excellent position to ride out any potential economic downturn on the horizon and have ample room to improve our gross margins over time as supply chain and inflation headwinds normalize and as we ramp up our new capacity to full production.

### *November 2, 2022 – Quarterly Letter*

29.   On November 2, 2022, the Company released quarterly earnings for the third quarter of 2022 in a quarterly letter. Chief Executive Officer Gareth Joyce signed the quarterly letter on behalf of the Company. The "Highlights" section of the earnings release stated the company had "$409M in cash, cash equivalents, and short-term investments." The company said "the third quarter of 2022 was a breakthrough quarter for Proterra. We reported record quarterly revenue surpassing $96 million, representing growth of 55% compared to Q3 2021 and 29% compared to our prior record in Q2 2022." The Company also said "we are trimming our guidance for 2022 capital expenditures to a range of $70 million to $80 million, as we approach completion of the first phase of our Powered 1 factory."

### *November 2, 2022 – Earnings Call*

30.   On the same day the Company released their earnings for the third quarter of 2022, they had an earnings call that included Chief Financial Officer Gareth Joyce and Chief Financial Officer Karina Padilla. Joyce said "Q3 2022 was a breakthrough quarter for Proterra. Not only did we report record quarterly revenue of $96 million, almost 30% above our prior record in Q2 2022, but this was driven by new highs in revenue across both our business units, along with record production and deliveries at Proterra Transit."

31.   During the call, Joyce continued to describe the company's financial strength:

> All in, as you can see, Q3 was a breakthrough quarter for us all round. Based on our performance through the first 3 quarters and our current views on Q4, which has 17% fewer working days than Q3 due to the holidays, and downtime for year-end inventory, we are maintaining our 2022 revenue guidance range of $300 million to $325 million, representing growth of 24% to 34% year-over-year.

32. Chief Financial Officer Padilla also described the Company's "record-breaking revenue:

> Consolidated revenue was $96.2 million, representing growth of 55% year-over-year and 29% sequentially. Proterra Powered and Energy grew 239% year-over-year and 68% sequentially to reach $39.9 million in quarterly revenue for the first time. Proterra Powered and represented more than 40% of total revenue in the quarter, more than doubling its 19% contribution in Q3 of the prior year. For perspective, we reported more revenue in the third quarter of 2022 than we did through the first 3 quarters of 2021 combined.

33. Padilla also emphasized the importance of liquidity for the Company by saying "we continue to be supported by [a] strong balance sheet, ending the quarter with $408 million in cash, cash equivalents and short-term investments." Padilla went on:

> Cash and liquidity is a top priority for us, and it will continue to be. We are allocating our cash to the areas we believe are most critical to reinforcing our market leadership and position us for growth in the years ahead. Ending the quarter with a cash and cash equivalents balance of more than $400 million, we believe we have the flexibility to navigate these times of economic uncertainty and capital market volatility in an advantageous competitive position just as electric commercial vehicle adoption begins to accelerate.

34. Defendants' statements referenced in ¶¶ 25 - 33 constituted violations of the securities laws because the statements were false and/or misleading as well as failed to disclose material adverse facts about one of the Company's financial status. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company repeatedly stated the $523 on their balance sheet meant the company had abundant liquidity and financial stability; and, (ii) the new factory would continue to improve production efficiency and gross margins.

**B.** ***The Truth Emerges***

<u>March 15, 2023</u>

35. On March 15, 2023, Proterra released quarterly earnings for the fourth quarter of 2022 in a quarterly letter. The Company announced they had a net loss of $81 million and a gross loss of $20.3 million in the fourth quarter of 2022.

1  36. The Company also announced that they expected the audit report included in the 10-K annual report would contain a going concern qualification, which would be an event of default under Company debt agreements. The Company also announced they had obtained a limited waiver under their convertible notes for violating a minimum liquidity covenant.

37. When the smoke cleared at the end of the trading day, Proterra's stock price had dropped from March 15th's closing price of $2.51 to March 16th's closing price of $1.16—*a staggering loss of $1.35 per share representing nearly 53% of its value*. The volume of shares traded that day was more than ten times as high as the daily average volume during the Class Period.

C.  *Loss Causation*

38. The market for Proterra common stock was open, well-developed, and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Proterra stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Proterra stock relying upon the integrity of the market of Proterra, and market information related to the Company and have been damaged thereby.

39. During the Class Period, Defendants named in this Action materially misled the investing public, thereby inflating the price of Proterra stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make their own statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Proterra's business, operations, and prospects as alleged herein.

40. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Proterra's financial issues. These material misstatements and/or omissions had

10

the cause and effect of creating and/or maintaining in the market an unrealistically positive assessment of the Company and its operations, thus causing the Company's stock to be overvalued and artificially inflated at all relevant times. The materially false and/or misleading statements made by Defendants named in this Action during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

41. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that caused the price of Proterra stock to be artificially inflated by failing to disclose and/or misrepresenting the adverse facts detailed herein. As Defendants' misrepresentations and fraudulent conduct were gradually disclosed and became apparent to the market, the artificial inflation in the price of Proterra's stock was removed, and the price of Proterra stock fell.

42. As a result of their purchases of Proterra stock during the Class Period at artificially inflated prices, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

43. The timing and magnitude of the price decline in Proterra stock negate any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Proterra Defendants' fraudulent conduct.

### D. *Presumption Of Reliance; Fraud-On-The-Market*

44. At all relevant times, the market for Proterra stock was an efficient market for the following reasons:

    (a) Proterra stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

    (b) As a regulated issuer, Proterra filed periodic public reports with the SEC and the Nasdaq;

    (c) Proterra communicated with public investors via established market communication mechanisms, including through regular dissemination of

|   |   |   |
|---|---|---|
|   |   | press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and |
|   | (d) | During the Class Period, on average, millions of Proterra shares were traded on a weekly basis. On news days, the Company's trading volume increased into the millions, reflecting an active trading market for Proterra stock and investors' expectations being impounded into the stock price. |

45. As a result of the foregoing, the market for Proterra's securities promptly digested current information regarding Proterra from all publicly available sources and reflected such information in Proterra's stock price. Under these circumstances, all purchasers of Proterra securities during the Class Period suffered similar injury through their purchase of Proterra securities at artificially inflated prices, and a presumption of reliance applies.

46. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**E.    *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine***

47. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

48. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

49. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Proterra who knew that the "forward-looking statement" was false. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

50. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Class Action Complaint. The statements alleged to be false and misleading herein all relate to then- existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Proterra who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of all individuals and entities who purchased Proterra securities on the public market during the Class Period, and were damaged, excluding Proterra, the Individual Defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants have or had a controlling interest (the "Class").

52. The Class members are so numerous that joinder of all members is impracticable. Throughout the Class Period, shares of Proterra common stock were actively traded on the Nasdaq. While the exact number of Class members is unknown at this time and can be ascertained only

through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other Class members may be identified from records maintained by Proterra or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of the filings of its most recent annual report—on March 13, 2023, Proterra had over 226.4 million shares of common stock outstanding. Upon information and belief, these shares are held by thousands of individuals located throughout the entire world. Joinder would be highly impracticable.

53. Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

54. Plaintiff has and will continue to fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the Defendants' respective acts as alleged herein;

(b) whether the Defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements concerning Proterra's financial status;

(c) whether the price of Proterra's securities during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

(d) whether the Class members have sustained damages and, if so, what is the proper measure of damages.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violation of Section 10(b) and Rule 10b-5 Against All Defendants

57. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other Class members to purchase Proterra securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

59. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Proterra securities in an effort to maintain artificially high market prices for Proterra securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial status as specified herein.

61. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Proterra's value, performance, and continued substantial growth, which included the making of, or participation in the making of,

untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Proterra's financial status under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Proterra securities during the Class Period.

62. Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at Proterra during the Class Period and members of Proterra's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of Proterra, was privy to and participated in the creation, development and reporting of Proterra's SEC filings and public statements concerning Proterra's financial status; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendants and was advised of and had access to other members of Proterra's management team, internal reports, and other data and information about Proterra's financial status, at all relevant times; and (4) each Individual Defendant was aware of Proterra's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing fundamental problems with Proterra's financial status that led to disappointing results from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' misrepresentations concerning the fundamental problems and risks inherent in Proterra's financial status throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64. As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Proterra securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Proterra securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other Class members acquired Proterra securities during the Class Period at artificially high prices and were or will be damaged thereby.

65. At the time of said misrepresentations and omissions, Plaintiff and other Class members were ignorant of their falsity and believed them to be true. Had Plaintiff and the other Class members and the marketplace known the truth regarding the risks and flaws inherent in Proterra's financial status, which was not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired their Proterra securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

66. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their respective purchases and sales of Proterra securities during the Class Period.

68. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

## COUNT II

**The Individual Defendants Violated Section 20(a) of the Exchange Act**

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. The Individual Defendants acted as controlling persons of Proterra within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of Proterra's operations and/or intimate knowledge of the false information filed by Proterra with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Proterra, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of Proterra's financial statements, reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Proterra and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

72. As set forth above, Proterra and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

73. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other Class members suffered damages in connection with their purchases of Proterra's common stock during the Class Period.

74. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

    (a)    Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

    (b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    (d)    Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial of all issues involved, now, or in the future, in this action.

Dated: July 14, 2023                        Respectfully submitted,

                                              **LEVI & KORSINSKY, LLP**

                                              */s/ Adam M. Apton*
                                              Adam M. Apton (SBN 316506)
                                              aapton@zlk.com
                                              1160 Battery Street East, Suite 100
                                              San Francisco, CA 94111
                                              Tel: 415-373-1671

                                              *Attorneys for Plaintiff Jeremy Villanueva*