**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
aapton@zlk.com
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671

*Lead Counsel for Plaintiffs and the Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JEREMY VILLANUEVA, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | No. 3:23-cv-03519-RFL |
| v. | |
| GARETH T. JOYCE, KARINA FRANCO PADILLA, JOHN J. ALLEN, AMY E. ARD, JOHN F. ERHARD, BROOK F. PORTER, JOAN ROBINSON-BERRY, JEANNINE P. SARGENT, CONSTANCE E. SKIDMORE, MICHAEL D. SMITH, DANIEL R. REVERS, MARCO F. GATTI, ARNO HARRIS, JA-CHIN AUDREY LEE, BRIAN GONCHER, and STEVEN BERKENFELD, | CLASS ACTION |
| | **PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| Defendants. | DEMAND FOR JURY TRIAL |
| | Date:       July 30, 2024 |
| | Time:       10:00 am |
| | Courtroom:  15 |
| | Judge:      Hon. Rita F. Lin |

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. iii

STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3)) ..................................... xiv

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

ARGUMENT ......................................................................................................................7

    I.    Applicable Standards Prohibit Dismissal........................................................................7

    II.    The Complaint Adequately Pleads Violations of Section 11 of the Securities Act.............8

        A.  Plaintiffs Tirado, Zinn, and Quick Have Statutory Standing to Sue........................8

        B.  The Registration Statement Contained Material Misstatements............................10

        C.  Defendants' Remaining Arguments for Avoiding Section 11 Liability Fail.........12

    III.    The Complaint Adequately Pleads Liability Under Section 15(a) of the Securities Act ...........................................................................................................19

    IV.    The Complaint Adequately Pleads Violations of Section 10(b) of the Exchange Act ......20

        A.  Plaintiffs Adequately Pleads Actionable False and Misleading Statements..........20

            1.  Plaintiffs Allege Material Misstatements with Particularity...................20

            2.  The Alleged Misrepresentations Were Not Puffery or Statements of Optimism ......................................................................................24

            3.  The PSLRA's Safe Harbor Does Not Apply .........................................25

            4.  The Alleged Misrepresentations Cannot Be Immunized As Opinions............................................................................................26

            5.  The Alleged Misrepresentations Are Not Fraud by Hindsight...............27

            6.  The Complaint is Not a Puzzle Pleading ..............................................28

        B.  The Complaint Pleads a Strong Inference of Scienter .........................................29

i

1.  CW Accounts Confirm Actual Knowledge ............................................30

2.  Proterra Defendants Held Themselves Out as Knowledgeable ..............33

3.  Post-10(b) Class Period Events Support a Strong Inference of Scienter ...............................................................................................34

4.  Suspiciously Timed Insider Sales Bolster Scienter ...............................34

5.  Proterra Defendants' Certification of Company Statements Bolsters Scienter ...............................................................................................35

6.  The Core Operations Doctrine Further Supports Scienter......................36

7.  Suspicious Timing of Departures and Incentive Awards Bolsters Scienter ...............................................................................................36

8.  Proterra Defendants Offer No Plausible Competing Inference ..............37

C.  The Complaint Sufficiently Pleads Loss Causation.................................................38

V.    The Complaint Adequately Pleads Liability Under Section 20(a) of the Exchange Act .............................................................................................................40

CONCLUSION..........................................................................................................................40

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Azar v. Yelp, Inc.*,
    No. 18-CV-00400-EMC, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...............................36

*Bao v. Solarcity Corp.*,
    No. 14-CV-01435-BLF, 2016 WL 54133 (N.D. Cal. Jan. 5, 2016) .......................................32

*Batwin v. Occam Networks, Inc.*,
    No. CV 07-2750 CAS (SHX), 2008 WL 2676364 (C.D. Cal. July 1, 2008)..........................35

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ..................................................................................11, 30, 36

*Bielousov v. GoPro, Inc.*,
    No. 16-CV-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017)............................26, 35

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    No. 19-CV-06361-RS, 2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ....................................18

*Brendon v. Allegiant Travel Co.*,
    412 F. Supp. 3d 1244 (D. Nev. 2019) ...................................................................................31

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) .........................................................................................14, 23

*Browning v. Amyris, Inc.*,
    No. 13-CV-02209-WHO, 2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)..............................35

*Cho v. UCBH Holdings, Inc.*,
    No. C 09-4208 JSW, 2011 WL 3809903 (N.D. Cal. May 17, 2011).....................................28

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    65 F. Supp. 3d 840 (N.D. Cal. 2014) ....................................................................................38

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................................................28

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    527 F. Supp. 3d 1151 (N.D. Cal. 2021) .....................................................................31, 37, 38

*Craig Frazier Design, Inc. v. Zimmerman Agency LLC*,
    No. C 10-1094 SBA, 2010 WL 3790656 (N.D. Cal. Sep. 27, 2010)......................................7

*Crews v. Rivian Auto., Inc.*,
    No. 2:22-CV-01524-JLS-E, 2023 WL 4361098 (C.D. Cal. July 3, 2023) ............................18

iii

*D.E.&J. Ltd. P'ship v. Conaway*,
    133 F. App'x 994 (6th Cir. 2005) .....................................................................................40

*Derr v. Ra Med. Sys., Inc.*,
    No. 19CV1079-LAB-AHG, 2021 WL 1117309 (S.D. Cal. Mar. 24, 2021)..........................16

*Dream Big Media Inc. v. Alphabet Inc.*,
    No. 22-CV-02314-RS, ECF No. 77 (N.D. Cal. Apr. 12, 2024)...............................................3

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..........................................................................................................39

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
    81 F.4th 918 (9th Cir. 2023) ..............................................................................................33

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)...........................................................................................................20

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) .......................................................................................12, 23

*Felipe v. Playstudios Inc.*,
    No. 222CV01159RFBNJK, 2024 WL 1380802 (D. Nev. Mar. 31, 2024) .............................18

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
    501 F. Supp. 3d 735 (N.D. Cal. 2020) ...............................................................................40

*Ferreira v. Funko Inc.*,
    No. 220CV02319VAPPJWX, 2021 WL 8820650 (C.D. Cal. Oct. 22, 2021)........................16

*Feyko v. Yuhe Int'l, Inc.*,
    No. CV 11-05511 DDP PJWX, 2013 WL 3467067 (C.D. Cal. July 10, 2013)......................19

*Finney v. Ford Motor Co.*,
    No. 17-CV-06183-JST, 2018 WL 2552266 (N.D. Cal. June 4, 2018) ..................................15

*Flynn v. Sientra, Inc.*,
    No. CV1507548SJORAOX, 2016 WL 3360676 (C.D. Cal. June 9, 2016).............8, 13, 26, 29

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)...................................................................................2

*Garcia v. Hetong Guo*,
    No. CV-15-1862-MWF-MRWX, 2016 WL 102213 (C.D. Cal. Jan. 7, 2016) .......................40

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ..............................................................25, 27, 31, 33

*Golubowski v. Robinhood Markets, Inc.*,
    No. 21-CV-09767-EMC, 2023 WL 1927616 (N.D. Cal. Feb. 10, 2023) .........................14, 23

iv

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*Haddock v. Countrywide Bank, NA*,
    No. CV146452PSGFFMX, 2015 WL 9257316 (C.D. Cal. Oct. 27, 2015) ...............................3

*Hammer v. Frontier Fin. Corp.*,
    No. C10-0643, 2011 WL 13229260 (W.D. Wash. Sept. 7, 2011)...........................................24

*Hedick v. Kraft Heinz Co.*,
    No. 19-CV-1339, 2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ............................................17

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) .......................................................................................8, 10

*Hoang v. ContextLogic, Inc.*,
    No. 21-CV-03930-BLF, 2023 WL 8879263 (N.D. Cal. Dec. 22, 2023) .................................18

*Hoang v. ContextLogic, Inc.*,
    No. 21-CV-03930-BLF, 2023 WL 6536162 (N.D. Cal. Mar. 10, 2023).................................19

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
    No. SACV1500865AGJCGX, 2017 WL 3205774 (C.D. Cal. July 25, 2017)........................26

*In re Allied Nevada Gold Corp. Sec. Litig.*,
    743 F. App'x 887 (9th Cir. 2018) .........................................................................................32

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ....................................................................................................15

*In re Amgen Inc., Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................................39

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010)....................................................40

*In re Apple Inc. Sec. Litig.*,
    No. 19-CV-02033-YGR, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)................................37

*In re Aqua Metals, Inc. Sec. Litig.*,
    No. 17-CV-07142-HSG, 2019 WL 3817849 (N.D. Cal. Aug. 14, 2019)..............................29

*In re Astra Space, Inc. Sec. Litig.*,
    No. 22-CV-08875-CRB, 2023 WL 4983156 (N.D. Cal. Aug. 2, 2023)................................26

*In re Atossa Genetics Inc. Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017) .............................................................................................7, 9

*In re Autodesk, Inc. Sec. Litig.*,
    132 F. Supp. 2d 833 (N.D. Cal. 2000) ..................................................................................34

*In re Bare Escentuals, Inc. Sec. Litig.*,
    745 F. Supp. 2d 1052 (N.D. Cal. 2010) ................................................................................32

v

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ......................................................................................38

*In re Century Aluminum*,
   729 F.3d 1104 (9th Cir. 2013).  ...............................................................................9, 10

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009).............................................................................10, 19

*In re Cisco Sys. Inc. Sec. Litig.*,
   No. C 11-1568 SBA, 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) .....................................32

*In re Cornerstone Propane Partners, L.P.*,
   355 F.Supp.2d 1069 (N.D. Cal. 2005) .................................................................................29

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ....................................................................12, 13, 19

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ..........................................................................................24

*In re CytRx Corp. Sec. Litig.*,
   No. CV141956GHKPJWX, 2015 WL 5031232 (C.D. Cal. July 13, 2015) ...........................19

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ........................................................................................8, 10

*In re Dentsply Sirona, Inc. Sec. Litig.*,
   665 F. Supp. 3d 255 (E.D.N.Y. 2023) .................................................................................24

*In re Downey Sec. Litig.*,
   No. CV 08-3261-JFW(RZX), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .......................28

*In re Dura Pharms., Inc. Sec. Litig.*,
   No. 99CV0151-L(NLLS), 2000 WL 33176043 (S.D. Cal. July 11, 2000) ...........................35

*In re Eargo Sec. Litig.*,
   No. 21-CV-8597-CRB, 2023 WL 5663154 (N.D. Cal. Aug. 31, 2023).................................35

*In re Enovix Corp. Sec. Litig.*,
   No. 23-CV-00071-SI, 2024 WL 349269 (N.D. Cal. Jan. 30, 2024).......................................28

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-CV-04883-BLF, 2018 WL 1411129 (N.D. Cal. March 21, 2018) .......................23, 30

*In re Fastly, Inc. Sec. Litig.*,
   No. 20-CV-06024-PJH, 2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) ...............................14

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
   97 F.4th 1171 (9th Cir. 2024) ...........................................................................................38

vi

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ................................................................................7, 8, 38

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
   791 F.3d 90 (D.C. Cir. 2015) ..............................................................................................25

*In re Honest Co. Sec. Litig.*,
   No. 221CV07405MCSPLA, 2023 WL 3190506 (C.D. Cal. May 1, 2023).............................9

*In re Honest Co. Sec. Litig.*,
   615 F. Supp. 3d 1149 (C.D. Cal. 2022) ...............................................................................15

*In re Infonet Servs. Corp. Sec. Litig.*,
   310 F. Supp. 2d 1080 (C.D. Cal. 2003) ...............................................................................16

*In re Intuitive Surgical Sec. Litig.*,
   No. 5:13-CV-01920-EJD, 2017 WL 4355072 (N.D. Cal. Sept. 29, 2017).............................17

*In re Intuitive Surgical Sec. Litig.*,
   65 F. Supp. 3d 821 (N.D. Cal. 2014) ...................................................................................29

*In re Leapfrog Enter. Sec. Litig.*,
   237 F. Supp. 3d 943 (N.D. Cal. 2017) .................................................................................20

*In re Lyft Inc. Sec. Litig.*,
   484 F. Supp. 3d 758 (N.D. Cal. 2020) .................................................................................18

*In re MannKind Sec. Actions*,
   835 F. Supp. 2d 797 (C.D. Cal. 2011) .................................................................................27

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022) ...............................................................................................40

*In re Nuvelo, Inc. Sec. Litig.*,
   668 F.Supp.2d 1217 (N.D. Cal. 2009) .................................................................................28

*In re ON24, Inc. Sec. Litig.*,
   No. 4:21-CV-8578-YGR, 2023 WL 7449838 (N.D. Cal. July 7, 2023).................................16

*In re Pac. Gateway Exch., Inc., Sec. Litig.*,
   No. C-00-1211 PJH, 2002 WL 851066 (N.D. Cal. Apr. 30, 2002) ......................................26

*In re Pivotal Sec. Litig.*,
   No. 3:19-CV-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020) .................18, 27, 32

*In re Plantronics, Inc. Sec. Litig.*,
   No. 19-CV-07481-JST, 2022 WL 3653333 (N.D. Cal. Aug. 17, 2022)...........................12, 36

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ................................................................................. *passim*

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*In re Questcor Sec. Litig.*,
No. SA CV 12-01623 DMG, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013).......................33, 34

*In re Silicon Storage Tech., Inc., Sec. Litig.*,
No. C-05-0295PJH, 2007 WL 760535 (N.D. Cal. Mar. 9, 2007)...........................................15

*In re Snap Inc. Sec. Litig.*,
No. 217CV03679SVWAGR, 2018 WL 2972528 (C.D. Cal. June 7, 2018) .........................16

*In re Software Toolworks Inc.*,
50 F.3d 615 (9th Cir. 1994) ...................................................................................................19

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................................25

*In re Splunk Inc. Sec. Litig.*,
592 F. Supp. 3d 919 (N.D. Cal. 2022) ...................................................................................12

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996). ................................................................................................13

*In re Surebeam Corp. Sec. Litig.*,
No. 03 CV 1721JM(POR), 2005 WL 5036360 (S.D. Cal. Jan. 3, 2005)................................12

*In re Talis Biomedical Corp. Sec. Litig.*,
No. 22-CV-00105-SI, 2022 WL 17551984 (N.D. Cal. Dec. 9, 2022)....................................26

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
669 F. App'x 878 (9th Cir. 2016) ..........................................................................................10

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ..............................................................................26, 37

*In re Velti PLC Sec. Litig.*,
No. 13-CV-03889-WHO, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015).................................11

*In re Violin Memory Sec. Litig.*,
No. 13-CV-5486 YGR, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ...............................8, 16

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)....................................................................................................39

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2017 WL 3058563 (N.D. Cal. July 19, 2017)...........................24

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 WL 66281 (N.D. Cal. Jan. 4, 2017)...........................................37

*In re WageWorks, Inc., Sec. Litig.*,
No. 18-CV-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020) .............................36, 37

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ........................................................................................16

*In re Zillow Grp., Inc. Sec. Litig.*,
    No. C17-1387-JCC, 2019 WL 1755293 (W.D. Wash. Apr. 19, 2019).............................30, 33

*In re Zynga Inc. Sec. Litig.*,
    No. C 12-04007 JSW, 2014 WL 721948 (N.D. Cal. Feb. 25, 2014).....................................29

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
    No. 17-CV-05558-HSG, 2018 WL 4181954 (N.D. Cal. Aug. 31, 2018)....................15, 23, 29

*Jaeger v. Zillow Grp., Inc.*,
    644 F. Supp. 3d 857 (W.D. Wash. 2022)..............................................................................26

*Johnson v. Knapp*,
    No. CV 02-9262DSFPJW, 2009 WL 764521 (C.D. Cal. Mar. 16, 2009) ..............................23

*Jui-Yang Hong v. Extreme Networks, Inc.*,
    No. 15-CV-04883-BLF, 2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .................................32

*Karinski v. Stamps.com, Inc.*,
    No. CV 19-1828-MWF (SKX), 2020 WL 281716 (C.D. Cal. Jan. 17, 2020).........................32

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .....................................................13, 15, 20, 22, 23, 40

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    No. 215CV04003ODWMRWX, 2016 WL 6609210 (C.D. Cal. May 10, 2016) ....................28

*Kong v. Fluidigm Corp.*,
    No. 20-CV-06617-PJH, 2021 WL 3409258 (N.D. Cal. Aug. 4, 2021) ..................................25

*Lamartina v. VMware, Inc.*,
    No. 20-CV-02182-EJD, 2023 WL 2763541 (N.D. Cal. Mar. 31, 2023) ................................35

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ..........................................................................................15, 39

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) .................................................................................................40

*Lopes v. Fitbit, Inc.*,
    No. 18-CV-06665-JST, 2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) .................................34

*Markette v. XOMA Corp.*,
    No. 15-CV-03425-HSG, 2017 WL 4310759 (N.D. Cal. Sept. 28, 2017)...............................27

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011).......................................................................................................7, 10

ix

*McCasland v. FormFactor Inc.*,
No. C 07-5545 SI, 2008 WL 2951275 (N.D. Cal. July 25, 2008) ..........................................29

*McGovney v. Aerohive Networks, Inc.*,
367 F. Supp. 3d 1038 (N.D. Cal. 2019) ................................................................................33

*Mehedi v. View, Inc.*,
No. 21-CV-06374-BLF, 2023 WL 3592098 (N.D. Cal. May 22, 2023) .................................19

*Middlesex Ret. Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) .................................................................................36

*Monachelli v. Hortonworks, Inc*,
225 F. Supp. 3d 1045 (N.D. Cal. 2016) .................................................................................26

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) .......................................................................17, 35, 36

*Mulligan v. Impax Labs, Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ..............................................................14, 17, 23, 24, 36

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ..........................................................................................33, 37

*Nickerson v. Goodyear Tire & Rubber Corp.*,
No. 820CV00060JLSJDE, 2020 WL 4937561 (C.D. Cal. June 3, 2020)...............................15

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019) ......................................................................................2, 20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)........................................................................................................17, 27

*Osher v. JNI Corp.*,
183 Fed. App'x. 604 (9th Cir. 2006) .....................................................................................40

*Poetic License Cap., Inc. v. Ebrahim*,
No. CV-22-99-BLG-KLD, 2024 WL 97370 (D. Mont. Jan. 9, 2024)....................................39

*Pugh v. Trib. Co.*,
521 F.3d 686 (7th Cir. 2008) ................................................................................................35

*Pirani v. Netflix, Inc.*,
No. 22-CV-02672-JST, 2024 WL 69069 (N.D. Cal. Jan. 5, 2024) ........................................28

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ..............................................................................................32

*Primo v. Pac. Biosciences of California, Inc.*,
940 F. Supp. 2d 1105 (N.D. Cal. 2013) .................................................................................29

x

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*Purple Mt. Trust v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) ...............................................................16

*Rabkin v. Lion Biotechs., Inc.*,
    No. 17-CV-02086-SI, 2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ......................10

*Rafton v. Rydex Series Funds*,
    No. 10-CV-01171-LHK, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011) .......................12

*Reckstin Fam. Tr. v. C3.ai, Inc.*,
    No. 22-CV-01413-HSG, 2024 WL 734497 (N.D. Cal. Feb. 22, 2024)...................25

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ................................................................................33

*Rieckborn v. Jefferies LLC*,
    81 F. Supp. 3d 902 (N.D. Cal. 2015) ....................................................................19

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ......................36

*Roberts v. Zuora, Inc.*,
    No. 19-CV-03422-SI, 2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) .........................23, 26, 30

*Rodriguez v. Gigamon Inc.*,
    325 F. Supp. 3d 1041 (N.D. Cal. 2018) .........................................................24, 26

*Rok v. Identiv, Inc.*,
    No. 15-CV-5775-CRB, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017)........................40

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ................................................................................34

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ..........................................................................12, 13

*Sanders v. Realreal, Inc.*,
    No. 19-CV-07737-EJD, 2021 WL 1222625 (N.D. Cal. Mar. 31, 2021) ................16

*Sayce v. Forescout Techs., Inc.*,
    No. 20-CV-00076-SI, 2021 WL 1146031 (N.D. Cal. Mar. 25, 2021).....................40

*Schechter v. Smith*,
    No. EDCV-09-1653 MJG, 2011 WL 13174954 (C.D. Cal. Dec. 6, 2011).............39

*Scheller v. Nutanix, Inc.*,
    No. 19-CV-01651-WHO, 2020 WL 5500422 (N.D. Cal. Sept. 11, 2020) .............31

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) .........................................................10, 13, 14, 21, 23, 29, 30

xi

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*Setzer v. Omega Healthcare Inv'rs, Inc.*,
    968 F.3d 204 (2d Cir. 2020)..................................................................................34

*Sec. & Exch. Comm'n v. Hartcourt Companies, Inc.*,
    No. CV033698LGBPLAX, 2003 WL 27396212 (C.D. Cal. Dec. 18, 2003) .........................13

*Sgarlata v. PayPal Holdings, Inc.*,
    No. 17-CV-06956-EMC, 2018 WL 6592771 (N.D. Cal. Dec. 13, 2018).........................13, 23

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
    No. 20-CV-04737-RS, 2021 WL 4864421 (N.D. Cal. Oct. 19, 2021) ..............................20, 22

*Spitzberg v. Houston Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) .................................................................................32

*Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*,
    No. 22-CV-8228 (JSR), 2023 WL 8287681 (S.D.N.Y. Nov. 30, 2023)............................18, 19

*Steven Strezsak v. Ardelyx Inc.*,
    No. 21-CV-05868-HSG, 2024 WL 1160900 (N.D. Cal. Mar. 18, 2024) ...................36, 37, 38

*Stocke v. Shuffle Master, Inc.*,
    615 F. Supp. 2d 1180 (D. Nev. 2009).....................................................................36

*Strasburger v. Blackburne & Sons Realty Capital Corp.*,
    No. CV 20-00220-CJC(JCX), 2020 WL 6128069 (C.D. Cal. Apr. 22, 2020).........................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)............................................................................................30

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..............................................................35, 36

*United States v. Romm*,
    455 F.3d 990 (9th Cir. 2006) ...........................................................................20, 40

*Vess v. Ciba-Ceigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................13

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .................................................................................14

*Weston v. DocuSign, Inc.*,
    669 F. Supp. 3d 849 (N.D. Cal. 2023) ...................................................................35

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ..........................................................................26, 27

*Yetter v. Ford Motor Co.*,
    428 F. Supp. 3d 210 (N.D. Cal. 2019) ...................................................................15

xii

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*Zeid v. Kimberley*,
   930 F. Supp. 431 (N.D. Cal. 1996) ........................................................................16

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .................................................................................37

**Rules & Regulations**

17 C.F.R. § 229.105 .....................................................................................................11

17 C.F.R. § 229.303(a)(3)(ii) ................................................................................10, 11

Fed. R. Civ. P. 8...............................................................................8, 12, 13, 29

Fed. R. Civ. P. 8(a)(2)................................................................................8

Fed. R. Civ. P. 9(b) ................................................................................12, 13

Fed. R. Civ. P. 12(b)(6)................................................................................7, 8

**Statutes**

15 U.S.C. § 77k.................................................................................................8

15 U.S.C. § 77k(a) ...........................................................................................8

Section 10(b) of the Securities Exchange Act of 1934 .................................................20

Section 11 of the Securities Act of 1933 ...........................................................8, 11, 12

Section 15 of the Securities Act of 1933 .............................................................19, 20

Section 15(a) of the Securities Act of 1933 .........................................................19, 20

Section 20(a) of the Securities Exchange Act of 1934 ................................................40

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

(1) Whether the Complaint alleges violations of Section 11 of the Securities Act of 1933 ("Securities Act");

(3) Whether the Complaint alleges control person liability under Section 15 of the Securities Act;

(4) Whether the Complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act");

(5) Whether the Complaint alleges control person liability under Section 20(a) of the Exchange Act; and

(6) Whether, if Defendants' motions to dismiss are granted in whole or in part, Plaintiffs should be granted leave to amend.

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

Lead Plaintiff Cyress Jam, individually and on behalf of Star Alliance, LLC ("Lead Plaintiff") and Additional Plaintiffs Jeremy Villanueva, Tanya Tirado, Luong Du, William E. Zinn and Raymond Quick (together with Lead Plaintiff, "Plaintiffs"), hereby oppose Defendants'[1] motions to dismiss.

## INTRODUCTION

This is not a close call. Plaintiffs' Complaint is far stronger than most, outlining in detail the extensive misrepresentations and omissions that Defendants made to investors over the course of more than two years. For each, Plaintiffs expressly identify the statement or omission in question, when, where and by whom it was made, and why it was false. Moreover, Plaintiffs do not speculate on the truth that Defendants withheld – they corroborate the falsity of Defendants' representations with the accounts of *sixteen* confidential witnesses ("CWs"), the accounts of Proterra's own customers, and admissions that Proterra executives made to the bankruptcy court overseeing its liquidation. All unquestionably confirm the critical information that Plaintiffs contend was withheld from Proterra investors. Specifically, Defendants made materially false and misleading statements and/or omitted material information concealing from investors that Proterra's core division—the "Transit" line of electric vehicle ("EV") buses—was plagued by known defects, known supply chain problems, and negative margin contracts with certain municipal customers. These misrepresentations and omissions were used initially to take Proterra public via a merger with the Special Purpose Acquisition Company ("SPAC"), ArcLight, and worsened during the 10(b) Class Period, where the identified Defendants additionally concealed that Proterra had made the secret decision to starve Transit of capital in order to fund new initiatives and that Proterra's revenue growth and gross margins did not support its "strategic" growth strategies, decimating its financial condition.[2]

Neither 12(b)(6) motion squarely addresses these allegations. For example, neither addresses

---

[1] The Proterra Defendants are: Jack Allen, Gareth T. Joyce, Amy Ard, Andrew J. Cederoth, and Karina Franco Padilla. The SPAC Defendants are: Jack Allen, John F. Erhard, Brook F. Porter, Joan Robinson-Berry, Jeannine P. Sargent, Constance E. Skidmore, Michael D. Smith, Daniel R. Revers, Marco F. Gatti, Arno Harris, Dr. Ja-Chin Audrey Lee, Brian Goncher, and Steven Berkenfeld. All references to "¶" or "¶¶" are to the numbered paragraphs of the Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint"), ECF No. 83. The terms "Proterra" and the "Company" refer to Proterra Inc. "ArcLight" refers to ArcLight Clean Transition Corp.

[2] Filed herewith is a table listing Defendants' false statements, as alleged in the Complaint.

1

the ***nineteen*** separate allegations of CW2, a former senior finance executive at Proterra, who regularly attended weekly or bi-weekly meetings of the Company's senior executives and confirmed that reports were provided to senior executives detailing known margin problems at Transit. *See* ¶¶60-61, 156-57, 164-65, 277, 284, 321-22, 332, 339-40, 348, 350, 356, 424, 426. CW2 further confirmed specific problems with contracts that did not allow supply cost increases to be passed on, and specific cost issues at both of Proterra's main facilities. *Id.* Defendants ignore CW2's account altogether and provide no legitimate challenge to any of the other fifteen CWs.

Both motions also ignore allegations that Proterra has told the bankruptcy court that the Company fell apart for essentially the same reasons that Plaintiffs allege were omitted from the Company's statements to investors, ¶¶419-21, in addition to, allegations about known but undisclosed defects in Proterra's bus bodies and other parts, known but undisclosed supply chain problems particularly with critical wiring harnesses, and omitted problems with major customers. *See*, *e.g.*, ¶¶145-72. Instead, Defendants attempt to recast well-pleaded allegations as if Plaintiffs alleged only mismanagement, not the omission of business problems from investors. Not so. Plaintiffs' claims of wrongdoing center on the non-disclosure of these problems from investors, rendering Defendants' statements in the Registration Statement and issued during the 10(b) Class Period, false and misleading. *See, e.g.,* ¶¶188-207, 229-54, 258-75, 292-305, 313-37, 365-414. "[W]here the conduct involves deception related to the mismanagement—and not mismanagement alone—the claims are actionable under the federal securities laws." *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 192 (S.D.N.Y. 2010); *accord Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 n.4 (9th Cir. 2019). Defendants' remaining falsity arguments are similarly misplaced, plucking snippets of weaker authorities that do not compare to the extensive allegations at issue here.

Defendants' Securities Act standing argument fares even worse. Attempting to escape that statute's imposing liability and minimal pleading requirements, Defendants actively misrepresent Complaint allegations, contending they make only conclusory standing allegations and "fail to explain how or why their shares are traceable to the Registration Statement they purport to challenge, as opposed to, for example, [ArcLight SPAC] registration statement…." SPAC Mem. at 6-8; Proterra

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

Mem. at 23-24.[3] Defendants' characterization could not be further from the truth. Plaintiffs expressly allege that "immediately prior to the consummation of the Business Combination" ArcLight effected a "deregistration" of *all* previously issued ArcLight shares and thereafter "all securities [] registered [were] issued by…Proterra Inc", meaning any ArcLight shares existing at the time of the merger were canceled and reissued as newly-registered Proterra common stock in connection with the Registration Statement. ¶¶115, 117, 120 (quoting the Registration Statement). Plaintiffs further provide detailed trading history for Plaintiffs Tirado, Zinn, and Quick supporting the traceability of their purchases to the Registration Statement. *See* ¶¶19-21 (incorporating by reference Plaintiffs' previously filed certifications). Thus, there is not even a theoretical possibility that the shares purchased by these Plaintiffs, or any other members of the Securities Act Class, emanated from an earlier ArcLight registration statement. Defendants should be candid with the Court about these allegations, even if fatal to their argument.[4]

Finally, Plaintiffs adequately allege that the Proterra Defendants were at least reckless, and that the disclosure of the truth caused investor losses. Because Defendants show no pleading deficiency, their motions to dismiss should be denied and the parties directed to commence discovery without further delay.

**STATEMENT OF FACTS**

*Proterra's History.* Proterra was an EV company that predominantly developed battery-powered buses for its Transit division. ¶¶126-31. Proterra also had two other divisions: Powered, which designed and manufactured batteries for EVs; and Energy, which provided "high-power charging solutions and software services." ¶132. At the time it went public, Proterra maintained

---

[3] Citations to "SPAC Mem." refer to the Motion to Dismiss filed by the SPAC Defendants (ECF No. 93). Citations to "Proterra Mem." refer to the Motion to Dismiss filed by the Proterra Defendants (ECF No. 94).

[4] Proterra Defendants' refusal to address Plaintiffs' well-pleaded allegations is particularly startling given that the Court afforded Proterra Defendants a considerable page length extension, and they took it upon themselves to file an even larger brief than permitted by violating local rules prohibiting single-spaced paragraphs in the text and using a smaller font than permitted in their thirty-six footnotes. *See Dream Big Media Inc. v. Alphabet Inc.*, No. 22-CV-02314-RS, ECF No. 77 (N.D. Cal. Apr. 12, 2024); *Haddock v. Countrywide Bank, NA*, 2015 WL 9257316, at *7 (C.D. Cal. Oct. 27, 2015).

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

factories in Greenville, SC and City of Industry, CA. ¶¶136-39. Throughout its history, Transit was the Company's core operation and source of revenue. ¶¶133-35.

***ArcLight Negotiates a Merger.*** ArcLight was a blank check company (*i.e.*, a SPAC) that incorporated in July 2020, and completed its initial public offering on September 25, 2020. ¶¶96-102. That Fall, ArcLight began negotiating a merger with Proterra and purportedly commenced due diligence, ultimately executing a definitive merger agreement on January 12, 2021. ¶¶103-11, 178-87. Over the next few months, ArcLight filed multiple versions of the Registration Statement for shares issued in connection with the shareholder approval and consummation of the business combination with Proterra, the latest full version of which was filed and declared effective on May 14, 2021. ¶¶1, 112-13. Under the SPAC structure, ArcLight shareholders were supposed to receive full disclosure of material information in the Registration Statement, such that these shareholders were afforded the opportunity to make an informed decision on whether to (1) redeem their shares for $10 per share prior to the closure of the merger; (2) vote to approve or reject the merger; or (3) exchange their ArcLight shares for new Proterra shares registered by the Registration Statement. ¶¶99, 115-16. On June 11, 2021, ArcLight shareholders approved the business combination with Proterra. ¶114. On June 14, 2021, ArcLight and Proterra consummated their merger and ArcLight deregistered as a publicly traded company, canceling all existing ArcLight shares and initiating the replacement of such shares with newly-registered Proterra shares in connection with the Registration Statement. ¶¶117-18, 120. The following day, Proterra common stock began trading on NASDAQ. ¶¶119. The Registration Statement also explained that in addition to the merger agreement, ArcLight, Proterra, and other affiliated entities entered into a 180-day lock-up agreement. ¶¶121-25.

***Known Problems at Proterra Before the Registration Statement.*** Unbeknownst to investors, Transit was suffering from significant operational and production problems at the time of the merger. ¶¶145-72. As affirmed by multiple CWs, the composite buses manufactured by Proterra demanded appreciably more labor than traditional materials and their highly-customizable, unibody configuration made production significantly more expensive and often delayed, impacting customer relations. ¶¶145-52. Moreover, the composite bodies were defective, routinely developing cracks that

4

caused warranty costs to balloon. ¶¶160-61. Due to these issues, Proterra historically lost money on all but its smallest deals. ¶¶153-55. Additionally, Proterra's City of Industry facility had extraordinary labor and overhead costs that made buses manufactured there, less profitable. ¶¶156-57. Worse yet, Proterra already then had significant known supply chain constraints and rising material costs. ¶¶162-72. None of these problems were disclosed to investors in the Registration Statement. ¶¶188-207.

*Proterra's Strategic Decision to Prioritize Powered.* Prior to the merger, Proterra depended on Transit for the overwhelming majority of its revenue. ¶¶133-35. Indeed, the Registration Statement explained that Transit was crucial to the Company's success and growth. ¶¶140-44. Nevertheless, after the merger, the Company made the strategic decision to secretly divert resources to Powered at the expense of Transit. ¶¶216-28. This move was extremely risky and cash-intensive, especially because of known production problems at Powered. ¶¶218-21. To hide these problems from investors, Proterra regrouped how it reported its operating segments so that Powered would be reported with Energy, a profitable division for Proterra that masked Powered's losses. ¶¶222-24. Even worse, Proterra pushed Powered's expenses onto Transit, while also starving Transit of resources. ¶¶224-25. None of this was disclosed to investors. This manipulation caused a divide among Proterra executives, and ultimately resulted in Defendant Ard resigning as CFO. ¶¶242-48. According to CWs, Ard disagreed with other Proterra executives about Proterra's shift in focus to Powered and was concerned about the significant cash burn it would cause. ¶¶242-44. Once Ard left Proterra, Defendant Joyce further starved Transit to enhance Powered, still hiding this redirection of resources from investors. ¶¶244-48.

*Proterra Defendants Further Mislead Investors.* On August 11, 2021, the identified Proterra Defendants continued to mislead investors by discussing Proterra's business but concealing the decision to starve Transit in order to divert resources to Powered, the profound impacts of that decision, and the known problems that were already negatively affecting the Company. ¶¶229-41. Over the next two years, they continued to tout the Company, all while concealing the impact of their poor decisions. ¶¶235-414. In the middle of 2022, as the secretly-depleted Transit division saw a decline in revenue, Proterra began to cut Transit initiatives that would have saved the Company millions of dollars, including Architecture 2.0, which would have mitigated the known inefficiencies

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

and defects impacting Proterra buses since before the merger. ¶¶278-82. Other cost-saving measures were also abandoned, and shifts were reduced or abandoned due to Proterra's dire financial condition. ¶¶283-84. As a result, Transit's inefficiencies and quality worsened even further, exacerbating Proterra's warranty exposure. ¶¶285-91. Defendants hid the extent of these problems from investors.

In the Fall of 2022, Proterra's cash situation worsened as a direct result of Joyce and Padilla's intentional misrepresentation of the costs of goods for the batteries manufactured under a major Powered supply contract with REV Group's EVO. ¶¶306-12. In August 2022, according to CW3, Joyce and Padilla purposefully changed the battery price component of the pricing model to $180/battery despite calculations necessitating that the batteries be priced at $200-$210/battery for the Company to merely break even under the terms of this contract. ¶¶307-10. This decision caused Proterra to bleed cash. ¶¶309-10. Worse yet, Joyce and Padilla utilized the false positive margins of this contract to convince the Proterra Board of Directors to approve over $100 million of expenditures in October 2022. ¶311. These actions put the Company at material risk of insolvency, but were not candidly disclosed to investors. ¶¶312-414.

Certain Proterra Defendants also made misrepresentations about Proterra's new battery production facility being built in Greer, SC ("Greer"), as announced on December 14, 2021. ¶¶243, 255-57. These Defendants touted Greer without disclosing known inefficiencies and high start-up costs. ¶259. As 2022 progressed, Greer fell months behind schedule. ¶¶72-74, 323-29, 338-56. Even after startup, Greer was a disaster, causing Proterra to routinely underdeliver, miss sales goals, and bleed cash – all of which was seen first-hand by Joyce and other Proterra executives. ¶¶338-56. These extensive and known problems were concealed from investors. By late 2022, Proterra's extravagant spending and business failures put the Company on a trajectory to ruin. ¶330. In a direct response to this cash crunch, Proterra instituted numerous initiatives to conserve cash, including, *inter alia*, layoffs, invoking travel and hiring freezes, and ultimately closing its City of Industry facility. ¶¶330-37. Still, it was unable to remedy its cash problem and missed payments to vendors. ¶¶333-34. Yet, when Proterra Defendants discussed the Company, none of these problems were disclosed to investors.

***The Truth is Slowly Revealed.*** On March 15, 2023, Proterra announced significant losses as

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

the concealed risks materialized, and admitted that: (i) previous indications of backlog were unreliable because they improperly included letters of intent, (ii) Proterra was in violation of a minimum liquidity debt covenant, and (iii) it was at risk of violating the minimum liquidity covenant for the quarter ended March 31, 2023, and if it was unable to obtain an additional waiver, Proterra would be in default under its convertible notes. ¶¶357-63. In response, Proterra's stock price fell by almost 53%. ¶364.

Still, Proterra Defendants prevented a full decline by continuing to mislead investors over the subsequent months. ¶¶364-414. Indeed, despite its March 15, 2023 announcement, investors and analysts believed that Proterra could turn things around due to Proterra Defendants' continued misstatements. ¶¶387-89. In particular, they hid that Proterra was already so distressed that it was withholding payment to some of their suppliers – something internally acknowledged by Joyce himself in a March 2023 town hall with Proterra employees. ¶¶390-92. Further, in April 2023, the Company engaged with two financial institutions to explore selling off Transit. ¶443. Still, Proterra Defendants continued to paint a falsely positive picture to investors by concealing these facts. ¶¶394-414.

Then, after market hours on August 7, 2023, the bottom finally fell out when the Company announced it had voluntarily filed for Chapter 11 bankruptcy. ¶¶415-16. In its bankruptcy documents, Proterra admitted that the filing was the result of the same problems Proterra Defendants had known about for years, as corroborated by CWs, but hid from investors. ¶417. In direct response, Proterra's stock price declined by more than 88%, falling from $1.43 to $0.17. ¶418.

## ARGUMENT

### I.　Applicable Standards Prohibit Dismissal

As the United States Supreme Court instructs, securities fraud plaintiffs "need only allege enough facts to state a claim for relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011). On a Rule 12(b)(6) motion, the court "accept[s] the Plaintiffs' allegations as true and construe[s] them in the light most favorable to Plaintiffs." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017).[5] "[T]he purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide its merits." *Craig Frazier Design, Inc. v.*

---

[5] All internal citations and quotations omitted, unless stated otherwise, and all emphasis is added.

7

*Zimmerman Agency LLC*, 2010 WL 3790656, at \*6 (N.D. Cal. Sep. 27, 2010). "The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *Strasburger v. Blackburne & Sons Realty Capital Corp.*, 2020 WL 6128069, at \*2 (C.D. Cal. Apr. 22, 2020); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (a district court construing a Rule 12(b)(6) motion "is not sitting as a trier of fact"). Rather, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *Gilead*, 536 F.3d at 1057.

## II.    The Complaint Adequately Pleads Violations of Section 11 of the Securities Act

Section 11 creates a private right of action for any individual who purchased a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); *see also In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005). "To establish a *prima facie* § 11 claim, a plaintiff need show only that he bought the security and that there was a material misstatement or omission." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013). Only a "short and plain statement" is required. Fed. R. Civ. P. 8(a)(2); *see also Flynn v. Sientra, Inc.*, 2016 WL 3360676, at \*17 (C.D. Cal. June 9, 2016). Plaintiffs need not plead scienter, reliance, or loss causation. *Hildes*, 734 F.3d at 859. Pleading a claim under Rule 8 "is not an onerous burden" as "[s]pecific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at \*8 (N.D. Cal. Oct. 31, 2014). As Plaintiffs' well-pleaded, non-fraudulent allegations more than satisfy this lenient pleading standard, the Securities Act Defendants are strictly liable for negligently signing and issuing the Registration Statement containing materially false and misleading statements and/or violating SEC Items 105 and 303.

### A.    Plaintiffs Tirado, Zinn, and Quick Have Statutory Standing to Sue

Defendants ignore the Complaint's well-pleaded allegations to incorrectly claim Plaintiffs Tirado, Zinn, and Quick do not have standing to sue. SPAC Mem. at 6-8; Proterra Mem. at 23-24.

8

Under Section 11, any person who purchases a security issued under a materially false or misleading registration statement has standing to sue. 15 U.S.C. § 77k(a). The Complaint explicitly alleges that pursuant to the Registration Statement, any ArcLight shares that were not redeemed prior to the merger were *canceled and exchanged for newly issued Proterra shares registered under the Registration Statement*. ¶¶99, 115-22. As a result, all previously issued ArcLight shares were deregistered and ceased trading on the open market upon the completion of the merger, on June 14, 2021. ¶117. As such, all Proterra shares registered in connection with the business combination and publicly traded between the merger closure and expiration of the 180-day lock-up period are directly traceable to the Registration Statement. ¶¶119-22; *see In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *4 (C.D. Cal. May 1, 2023) (holding that there was "no dispute" that shares purchased before a lock-up period ended were traceable to a registration statement).

The Complaint alleges that Plaintiffs Tirado, Zinn, and Quick have statutory standing because each of these Plaintiffs purchased or otherwise acquired Proterra common stock issued in connection with the Registration Statement within the 180-day lock-up period. Specifically, Quick purchased 5 shares on June 15, 2021, acquired 1,600 shares on June 16, 2021, and purchased an additional 6,389 shares throughout the remainder of the lock-up period; Tirado purchased 56 shares on August 23, 2021; and Zinn purchased 2,276 shares on July 14, 2021. *See* ¶¶19-21 (incorporating by reference previously filed certifications detailing Plaintiffs' transactions). Further, Quick's certification establishes that his 1,600 ArcLight shares were exchanged for newly issued Proterra shares registered under the Registration Statement. *See* ECF No. 83-1.

To manufacture their tracing argument, SPAC Defendants pretend that ¶¶115-21 do not exist and falsely assert that Plaintiffs allege no facts supporting traceability aside from the timing of the Plaintiffs' purchases. This is a misrepresentation of Complaint's allegations that must be credited and taken as true. *Atossa*, 868 F.3d at 793. Unlike the authorities relied on by Defendants, *see* SPAC Mem. at 7-8 & n.7, the Complaint here alleges specific, concrete facts demonstrating that the only plausible explanation is that Plaintiffs Zinn, Tirado, and Quick purchased Proterra shares issued in connection with the Registration Statement because *all* public Proterra shares (whether purchased in the open

9

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

market or exchanged for prior ArcLight shares) were so registered and issued thereunder. ¶¶19-21, 115-21. Specifically, Defendants misplace reliance on *In re Century Aluminum*, 729 F.3d 1104 (9th Cir. 2013). There, the Ninth Circuit held that traceability was not established where a company had issued shares under more than one registration statement and the newly registered shares could not be distinguished from the old shares. *Id.* at 1107-08. Conversely, here *all* Proterra shares were issued in a single offering under the Registration Statement. ¶¶103-25. In that context, "no further factual enhancement is needed because by definition all of [Proterra's] shares will be directly traceable to the offering in question." *Century*, 729 F.3d at 1107.[6]

### B.    The Registration Statement Contained Material Misstatements

Under Section 11, a plaintiff must plead that (1) "the registration statement contained an omission or misrepresentation" that was (2) "material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Daou*, 411 F.3d at 1027; *see also In re Ubiquiti Networks, Inc. Sec. Litig.*, 669 F. App'x 878, 879-80 (9th Cir. 2016); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 544 (N.D. Cal. 2009). Critically, "once defendants [choose] to tout positive information to the market, they [are] bound to do so in a manner that [will not] mislead investors, including disclosing adverse information that cuts against the positive information." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016). A fact is material when a "reasonable investor would have viewed the nondisclosed information as having significantly altered the total mix of information made available." *Matrixx*, 563 U.S. at 38.  Once a material misstatement is shown, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." *Hildes*, 734 F.3d at 859; *see*, *e.g.*, *In re Daou*, 411 F.3d at 1027. Plaintiffs' Complaint readily meets that standard.

The Complaint thoroughly identifies several material misrepresentations and omissions contained in the Registration Statement. ¶¶1-3, 173-77, 188-202. Defendants also had an independent, affirmative duty, which they failed to fulfill, to: (1) provide adequate disclosures about "any known

---

[6] Proterra Defendants make the same argument (Proterra Mem. at 23-24) and its authority is distinguishable for the same reason. *See Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *20 (N.D. Cal. Feb. 15, 2018) (plaintiff alleges traceability based on timing of purchase alone).

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations" (17 C.F.R. § 229.303(a)(3)(ii)); and (2) disclose a "discussion of the most significant factors that make the offering speculative or risky" (17 C.F.R. § 229.105). ¶¶203-207.

Specifically, the Complaint identifies statements about Proterra's Transit buses and their production that were rendered false and/or misleading by omission of crucial adverse information that was corroborated by CWs as known internally (and thus could have been known by the signatories of the Registration Statement had they exercised due diligence). ¶¶145-61, 189-91, 198-207. It also details numerous so-called risks that were misleadingly minimized as "potential" in the Registration Statement, when they had in fact already occurred. *Id.* The Complaint further details misleading statements contained in the Registration Statement omitting known, significant problems in Proterra's supply chain and the impact of COVID-19 on its business. ¶¶162-72, 192-93, 196-200. Finally, Plaintiffs allege the Registration Statement contained misrepresentations about Proterra's City of Industry facility, touting purported benefits while omitting that it incurred incredibly high and overly burdensome labor costs rendering the buses manufactured there unprofitable. ¶¶149-50, 156-57, 167, 172, 194-95. In each case, disclosure was required in the Registration Statement both because omission rendered the statements made therein misleading, and/or under SEC Items 303 or 105. ¶¶203-07. SPAC Defendants' motion concedes as much, addressing the alleged misrepresentations and omissions and thereby acknowledging that those Defendants are well-informed about what Plaintiffs allege to be false or misleading, by whom, when, where, and why.[7]

Defendants' request that the Court assume the misrepresentations to be truthful defies both logic and law. As an initial matter, more than a dozen CWs describe information that was withheld, and Proterra's decline is far more consistent with the concealed adverse conditions CWs describe than Defendants' attempt to rewrite the history of the Company. A statement is misleading if it gives the

---

[7] Plaintiffs' allegations of contemporaneous conditions that demonstrate the statements were false when made distinguish this case from Proterra Defendants' cited case regarding fraud-by-hindsight. *See In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *16 (N.D. Cal. Oct. 1, 2015) ("no allegations of contemporaneous statements or conditions" indicating statements were misleading when issued).

11

"impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). Moreover, Defendants seek to usurp the province of the jury. "[W]hether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact," and "only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds [could] not differ are these issues appropriately resolved as a matter of law." *Fecht v. Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995); *see also In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at \*15 (N.D. Cal. Aug. 17, 2022) ("adequacy of disclosure is normally a jury question"); *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 944 (N.D. Cal. 2022) (same); *In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at \*13 (S.D. Cal. Jan. 3, 2005) (same). Here, it unquestionably belongs to the jury. *See Rafton v. Rydex Series Funds*, 2011 WL 31114, at \*9 (N.D. Cal. Jan. 5, 2011).

### C.    Defendants' Remaining Arguments for Avoiding Section 11 Liability Fail

None of Defendants' remaining excuses raise a colorable argument to avoid the well-pled Section 11 claim as a matter of law.

***Defendants apply the wrong legal standard.*** Instead of addressing the applicable Rule 8 "short, plain statement" standard, SPAC Defendants cite Rule 9(b). SPAC Mem. at 6.[8] Applying this standard would be in error. The Section 11 claim does not "sound in fraud," and its "language and structure" do not "allege[] a unified course of fraudulent conduct and rel[y] entirely on that course of conduct as the basis of" the Section 11 claim. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). Instead, the Section 11 claim is expressly brought under a negligence theory based on Defendants' "fail[ure] to make a reasonable investigation" into the truth of the statements in the Registration Statement and their failure to "exercise reasonable care" to avoid the issuance of misrepresentations and omissions therein. ¶¶548-49. These allegations are distinct from the Exchange Act claims, which are separated into a discrete "Exchange Act Violations" section. *See* ¶¶216-534. Nor is there identity between Plaintiffs' Securities Act and Exchange Act claims. Twelve of the thirteen SPAC Defendants (92.3%) are not even named under the Exchange Act claims, and the claims

---

[8] In addition to asserting their own arguments, the Proterra Defendants adopt all arguments raised in the SPAC Defendants' motion. *See* Proterra Mem. at 23.

12

are based on different statements in different documents issued during different time periods. ¶¶1, 48, 56; *Compare* ¶¶118-202 *with* ¶¶229-414. As other courts have found, it would "eviscerate[] §11" to give Rule 9(b) protection to defendants against whom no fraud has been alleged. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1163 (C.D. Cal. 2008). And, as to the one Defendant named under both claims, the Complaint alleges numerous facts supporting liability under the Exchange Act that are not asserted as to this Defendant's liability under the Securities Act. ¶¶220-28, 230-44, 249-50, 434, 450, 455, 508; *see Sientra*, 2016 WL 3360676, at *17 (Rule 8 applied where, as here, plaintiff only "levie[d] fraud allegations against a select few defendants" based upon "specifie[d] unique, particularized facts as to those defendants").[9]

Thus, Rule 9(b) cannot properly be applied to the Complaint's Section 11 claim. However, even if it did apply, it is easily satisfied by the Complaint's detailed allegations. Rule 9(b) does not require a pleading of evidence. *Sec. & Exch. Comm'n v. Hartcourt Companies, Inc.*, 2003 WL 27396212, at *5 (C.D. Cal. Dec. 18, 2003). Instead, the rule is satisfied by pleading the "who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Ceigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The Complaint specifically identifies each of the misstatements issued in the Registration Statement in question. For each, it specifies the particular statement alleged to be misleading; who made the statement (the parties statutorily responsible for the content of the Registration Statement pursuant to Section 11); where and when the statement was disseminated; and why Plaintiffs contend it was false and/or misleading when made. ¶¶22-49, 112-20, 188-207.

***Defendants' omissions are not cured by certain statements containing historical fact.*** That the Registration Statement misled by half-truths as well as affirmative misrepresentations provides no defense. *See* SPAC Mem. at 9, 12-13; Proterra Mem. at 24-25 (citing ¶¶189, 194, 196, 201). "Even if a statement is not false, it may be misleading if it omits material information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008–09 (9th Cir. 2018); *Sgarlata v. PayPal Holdings, Inc.*, 2018

---

[9] Neither of the "sounds in fraud" cases that SPAC Defendants cite support extending Rule 9(b) to the Section 11 claim under these circumstances. Unlike here, *Rubke*, involved the same factual allegations for both Section 11 and Section 10(b) claims. 551 F.3d at 1161. And in *In re Stac Elecs. Sec. Litig.*, unlike here, the plaintiff made no effort to show any other basis aside from fraud to support claims levied at the Prospectus. 89 F.3d 1399, 1405 (9th Cir. 1996).

13

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

WL 6592771, at *6 (N.D. Cal. Dec. 13, 2018) (same). Once officers or directors of a publicly traded company choose to "tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including by disclosing adverse information that cuts against the positive information." *Schueneman*, 840 F.3d at 706. As a threshold matter, Defendants misread the Complaint, which alleges that Proterra's statement that it continued to "operate with limited interruptions" was then affirmatively false, as affirmed by CWs. ¶¶162-72, 196-97. With respect to the other cited statements, the Complaint plausibly alleges misrepresentation by omission because they failed to disclose the known problems impacting Proterra's buses, its manufacturing process, the City of Industry facility, and the effect COVID-19 had on Proterra's supply chain and production capabilities, thereby painting an inaccurate picture of Proterra's business to investors. ¶¶189-90, 194-97, 201-02. The Registration Statement's failure to provide adverse information prohibits any refuge from liability.

Defendants' cases are all inapposite. In *Golubowski v. Robinhood Markets, Inc.*, 2023 WL 1927616, at *4-5 (N.D. Cal. Feb. 10, 2023) and *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006-07 (9th Cir. 2002), the omitted information did not relate to or undermine the alleged misleading statements. Further, in *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022) and *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *14 (N.D. Cal. Nov. 23, 2021), unlike here, defendants did not tout their businesses so as to require a full disclosure of contrary information.

***The damning information withheld and the unbalanced statements made were not mere "puffery."*** "When determining whether statements amount[] only to puffery, the [C]ourt must analyze the context in which the statements were made." *Mulligan v. Impax Labs, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014). Defendants pluck certain words and phrases out of their false statements robbing them of the very context that the Court should consider. SPAC Mem. at 9-10, 13; Proterra Mem. at 24. Regardless, general statements of optimism give rise to a claim "when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017). Here, the Registration Statement made specific misleading statements about (i) the benefits of Proterra's buses' solid composite bodies while omitting significant known problems with those same components (¶¶189-90); (ii) Transit's

14

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

manufacturing efficiencies despite internal knowledge that Proterra optimized for customization rendering its production highly inefficient, as CWs confirmed (¶191); (iii) the use of "reputable and reliable" suppliers despite knowing that Proterra's suppliers were neither and at the time of the Registration Statement were causing significant production problems (¶¶192-93); and (iv) downplaying the impact of COVID-19, when it had in fact already caused significant disruptions to Proterra's business (¶¶196-97). These verifiably misleading statements – tethered to facts about specific areas of Proterra's business – are nothing like the vague, soft statements highlighted by Defendants' cited cases. *See In re Silicon Storage Tech., Inc., Sec. Litig.*, 2007 WL 760535, at *21 (N.D. Cal. Mar. 9, 2007) ("we should be okay"); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *5 (N.D. Cal. Aug. 31, 2018) ("business is going gangbusters").[10]

***The bespeaks caution doctrine and misleading "risk warnings" do not immunize Defendants' misrepresentations and omissions.*** SPAC Defendants wrongly assert that statements about Proterra's supply chain (¶¶192-93) and "potential" risks (¶¶199-200) are immune from liability under the bespeaks caution doctrine. SPAC Mem. at 11-12. Not so. The bespeaks caution doctrine does not apply to misrepresentations of past or current fact or omissions of existing fact. *See, e.g.*, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947-48 (9th Cir. 2005). Further, the bespeaks caution doctrine can never be applied where, as here, a defendant recasts "then-existing material events and adverse trends or uncertainties that [Defendants] had already been facing … as potential risks." *In re Honest Co. Sec. Litig.*, 615 F. Supp. 3d 1149, 1155–56 (C.D. Cal. 2022). As the Ninth Circuit has repeatedly emphasized, a "warning … of risks that 'could' or 'may' occur is misleading to a reasonable investor when [defendant] knew that those risks had materialized." *In re*

---

[10] Even further afield are SPAC Defendants' other cases, brought under consumer protection, *not* securities law statutes, applying different law, and concerning product superiority claims made in commercial advertisements. *See Nickerson v. Goodyear Tire & Rubber Corp.*, 2020 WL 4937561, at *9 (C.D. Cal. June 3, 2020) ("optimized for on-/off-road conditions" and "designed to deliver performance durability and comfort"); *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d 210, 234 (N.D. Cal. 2019) ("2008 F-350 is a better truck with better performance; guaranteed" and "the 2008 F-350 had superior gas mileage and performance to previous Ford models."); *Finney v. Ford Motor Co.*, 2018 WL 2552266, at *8 (N.D. Cal. June 4, 2018) ("best in-class: horsepower, gas torque, unsurpassed diesel horsepower," and "had superior towing capacity").

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

*Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703-04 (9th Cir. 2021); *Khoja*, 899 F.3d at 1015-16 (same). Here, the Complaint unquestionably pleads that the "potential risks" had already materialized (¶¶162-72, 199-200) at the time of the Registration Statement.[11]

SPAC Defendants' "risk warning" argument is basically a carbon copy of their "bespeaks caution" argument and fails for the same reason. *See* SPAC Mem. at 10. "[T]he Ninth Circuit has carved out a niche for risk warnings that are actionable as material omissions when the warning speaks to entirely ... as-yet-unrealized risks and contingencies and neglects to alert potential investors to the fact that the risks may already have come to fruition." *Sanders v. Realreal, Inc.*, 2021 WL 1222625, at *19 (N.D. Cal. Mar. 31, 2021); *see also Derr v. Ra Med. Sys., Inc.*, 2021 WL 1117309, at *5 (S.D. Cal. Mar. 24, 2021); *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *6 (C.D. Cal. June 7, 2018). Here, the Complaint alleges, and CWs support, that problems with Proterra's composite bus bodies and their impact on customer relations had already surfaced, had already damaged customer relationships, and increased warranty costs (¶¶151, 160-61), including in buses delivered to Southeastern Pennsylvania Transportation Authority (¶161). Thus, unlike in Defendants' cited cases, the Complaint here alleges risks that ***had already materialized***. *Cf. Purple Mt. Trust v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1103 (N.D. Cal. 2020) (risk of reputational damage could not have occurred at the time of the misleading statement); *Violin Memory*, 2014 WL 5525946, at *12 (no allegation risks had already manifested); *Zeid v. Kimberley*, 930 F. Supp. 431, 437 (N.D. Cal. 1996) (same). These allegations are sufficient to establish that the Registration Statement inaccurately framed risks as hypothetical when they were anything but, and therefore are actionable statements. *See Ferreira v. Funko Inc.*, 2021 WL 8820650, at *20 (C.D. Cal. Oct. 22, 2021).

***Defendants cannot escape Section 11 by characterizing their misrepresentations as "opinions."*** Defendants mistakenly claim that three alleged misrepresentations are immune from

___

[11] Defendants' cited cases are misplaced. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1416-20 (9th Cir. 1994) and *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1093 (C.D. Cal. 2003) both involved substantial and accurate cautionary language which, unlike here, did not misrepresent current problems as future risks. *In re ON24, Inc. Sec. Litig.*, 2023 WL 7449838, at *11–12 (N.D. Cal. July 7, 2023) involved statements for which "[t]he truth or falsity … could not be discerned until after IPO." But here, CWs corroborate that information omitted from the Registration Statement and contradicting the statements therein ***was discernable*** at the time. *See, e.g.*, ¶¶145-72.

16

liability because they are opinions. SPAC Mem. at 11; Proterra Mem. at 24. But the Registration Statement spoke in factual terms about the reliability of Proterra's suppliers, the impact COVID-19 already had on Proterra's business, and the risks to Proterra's supply chain. ¶¶192, 196, 199. Only one of the three statements even contains the word "believe" in the offending portion. *See* ¶¶192; *see also Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at *9 (N.D. Ill. Aug. 11, 2021) (rejecting a similar attempt to mischaracterize false statements of fact as opinions when the statements were not prefaced with the words "believe" or "think" and contained embedded false facts). Moreover, using "believe" does not transform factual statements into opinions, or give a defendant license to mislead investors. *See Mulligan*, 36 F. Supp. 3d at 966–67 (ruling that attaching the words "thought" or "believed" does not mean it is an opinion if it contains embedded factual representations).

And, even if opinions, they remain actionable because: (1) the statements embedded facts that were untrue; and (2) the statements omitted material adverse information that "conflict[s] with what a ***reasonable investor*** would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015). Honestly held but irrational beliefs are actionable if they do not fairly align with the information in a defendant's possession. *Id*. The Registration Statement falsely claimed that Proterra's suppliers were "reputable and reliable" (¶192) and framed actual supply chain issue as "potential" (¶199), despite a history of delays and quality issues with Proterra's sole supplier, TPI (¶¶145-61) and the ***already-present*** supply chain issues impacting Proterra's business (¶¶162-72). Further, it factually misstated that COVID-19 had a "limited" impact on Proterra's business, when it had at the time caused known supply chain constraints and inflationary pressures that impacted the Company's gross margins. *Id*. These devastating facts, concealed from investors, demonstrate both that Defendants supplied false information embedded in so-called "opinions," and omitted material information that would undermine the "opinion" to a reasonable investor. *See, e.g.*, *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1023-24 (N.D. Cal. 2020) (opinion actionable where defendants stated they were remediating disclosed accounting weaknesses when, in reality, those issues were getting worse); *In re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072, at *2-3 (N.D. Cal. Sept. 29, 2017) (opinion actionable because the defendant's

17

statements omitted material facts that undermined the statements).

***Defendants cannot refute that the Registration Statement violated SEC Items 105 and 303.*** Defendants assert that they did not violate Item 105 of Regulation S-K because the Registration Statement contained "robust disclosures" concerning relevant risks and uncertainties. SPAC Mem. at 14; Proterra Mem. at n.36. Not so. As outlined in Section II(C), the purported "Risk Factors" provided in the Registration Statement were themselves materially false and misleading when made because they inaccurately described already-incurred risks as potential and hypothetical. ¶¶204, 206. As a result, and unlike in *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020), Defendants did not meaningfully disclose Proterra's actual risks, and thus violated Item 105. *See Felipe v. Playstudios Inc.*, 2024 WL 1380802, at *13 (D. Nev. Mar. 31, 2024) (falsely framing risks as potential when they had "already come to fruition" violates Item 105); *Hoang v. ContextLogic, Inc.*, 2023 WL 8879263, at *15 (N.D. Cal. Dec. 22, 2023) (same); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *6 (N.D. Cal. Aug. 7, 2020) (same).

Defendants' claim that Plaintiffs fail to allege any persistent trend that existed prior to the Registration Statement misreads the Complaint. SPAC Mem. at 14; Proterra Mem. at n.31. The Complaint's well-pleaded factual allegations, substantiated by numerous CWs accounts, support that Proterra had been experiencing design challenges since 2020 (¶¶145-61), as well as supply chain constraints (¶¶162-71) and inflationary pressures (¶¶163-65) since the onset of COVID-19, all of which would reasonably be expected to have an unfavorable impact on the sales and revenue of the Company (¶¶203-07). This is more than sufficient to allege an Item 303 violation. *See Felipe*, 2024 WL 1380802, at *13 (failing to disclose a problem that persisted for over six months was a violation of Item 303); *Crews v. Rivian Auto., Inc.*, 2023 WL 4361098, at *16 (C.D. Cal. July 3, 2023) (failing to disclose high costs that posed a risk to profitability violated Item 303); *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 769 n.4 (N.D. Cal. 2020) (failing to disclose an increased rate of complaints violated Item 303). Insofar as Defendants challenge CWs' accounts, as explained in Section IV(A)(1), Plaintiffs have met the liberal pleading standard to establish that the CWs were in positions to know the information attributed to them. ¶¶59-95. At best, Defendants "raise[] a factual dispute about

18

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

whether the confidential witnesses possessed information about [Proterra] … which would be inappropriate to resolve at this juncture." *Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*, 2023 WL 8287681, at \*11 (S.D.N.Y. Nov. 30, 2023).[12]

 ***SPAC Defendants have not and cannot prove an affirmative defense of due diligence.*** Realizing that the Complaint sufficiently alleges Section 11 violations, the SPAC Defendants ask the Court to assume as a matter of law that they have proved an affirmative defense of due diligence. SPAC Mem. at 15. On its face, the argument is implausible because, accepting all well-pled allegations as true, construed in a light most favorable to Plaintiffs, if these Defendants were even remotely diligent, they never would have signed off on the false and misleading statements in the Registration Statement. Moreover, as Defendants' cited case highlights, this defense is "generally a fact issue, rarely suitable for summary judgment, let alone a motion to dismiss." *Countrywide*, 588 F. Supp. 2d at 1175; *see also Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 914 (N.D. Cal. 2015) (collecting cases).[13] Nevertheless, even at the appropriate juncture, this argument would fail. Unlike in *Mehedi v. View, Inc.*, 2023 WL 3592098, at \*8 (N.D. Cal. May 22, 2023) and *Countrywide*, 588 F. Supp. 2d at 1175, SPAC Defendants did not rely on independent auditors. Where, as here, defendants rely on a management team's assertions, the due diligence defense does not apply. *See In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at \*16–17 (C.D. Cal. July 13, 2015); *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 3467067, at \*4 (C.D. Cal. July 10, 2013) (collecting cases). Moreover, the Complaint does not concede adequate due diligence, but instead cites the Registration Statement's ***false*** assertion of due diligence and makes clear that if they had "exercised reasonable care, these Defendants would have known of the material misstatements and omissions." ¶¶178-87, 549. Thus, "a due diligence defense [cannot be] clear from the face of a complaint as a matter of law." *In re CytRx*, 2015 WL 5031232, at \*16.

## III. The Complaint Adequately Pleads Liability Under Section 15(a) of the Securities Act

 The Complaint adequately pleads secondary liability under Section 15(a) of the Securities Act.

---

[12] SPAC Defendants' reliance on *Hoang v. ContextLogic, Inc.*, 2023 WL 6536162, at \*21–24 (N.D. Cal. Mar. 10, 2023) is misplaced. There, the court analyzed whether the CWs established *scienter*, which is not an element of Section 11 liability.

[13] Notably, *Countrywide* relies on *In re Software Toolworks Inc.*, 50 F.3d 615, 629-30 (9th Cir. 1994), which was decided on summary judgment after extensive discovery. *See* 588 F. Supp. 2d at 1174-75.

19

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

¶¶552-57; *see In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. at 550-51. Because the primary violation is adequately alleged, *see* Section II, and Defendants challenge this claim only as to the underlying primary violation, *see* SPAC Mem. at 15; Proterra Mem. at 25, Plaintiffs' Section 15(a) claim must be sustained. They cannot now contest this point. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).

## IV.    The Complaint Adequately Pleads Violations of Section 10(b) of the Exchange Act

The Complaint adequately alleges that the Proterra Defendants violated Section 10(b) of the Exchange Act by making misrepresentations to investors that were at least reckless. *See* ¶¶216-414. To state a claim under Section 10(b), Plaintiffs must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10 (2011). "Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Khoja*, 899 F.3d at 1008. Here, Defendants challenge falsity, scienter, and loss causation. Each is adequately pled.

### A.    Plaintiffs Adequately Pleads Actionable False and Misleading Statements

#### 1.    Plaintiffs Allege Material Misstatements with Particularity

For each statement or omission, the Complaint alleges who made it, when, where, and how it was disseminated to investors, and why Plaintiffs contend it was false and/or misleading when made. ¶¶230-414. Such details satisfy the particularity requirements of the PSLRA. *In re Leapfrog Enter. Sec. Litig.*, 237 F. Supp. 3d 943, 950 (N.D. Cal. 2017). Throughout the 10(b) Class Period, Proterra Defendants continually misrepresented both the conditions at Proterra and their business strategy. Actual Complaint allegations have nothing whatsoever to do with the fact of their mismanagement, but rather the coverup aimed at hiding adverse information from investors. "Deception concerning mismanagement is actionable under § 10(b)." *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2021 WL 4864421, at *3 (N.D. Cal. Oct. 19, 2021); *see also LifeLock*, 780 F. App'x at 484 (liability attaches for "defendants who mismanage their company and lie to investors

20

about that mismanagement"). Proterra Defendants also omitted crucial and adverse facts when choosing to tout specific aspects of Proterra's business, thereby painting a misleading picture. *See*, *e.g.*, *Schueneman*, 840 F.3d at 705-06.

Plaintiffs allege that Proterra Defendants misled investors in the two years following the merger by falsely claiming that Proterra's business was healthy, and its existing cash was sufficient to support the Company's growth strategies when they knew otherwise. ¶¶232-33, 237-41, 261-66, 292-95, 301-03, 317-18, 323-27, 372-73. In particular, when discussing Transit, Proterra Defendants omitted known COVID-19-related issues, manufacturing issues, and supply chain issues that were impacting the Company, as well as institutional defects at the City of Industry facility that severely impacted its financial success. ¶¶230-41, 249-54, 261-75, 292-95, 298-305, 313-18, 323-29, 335-36, 365-66, 369-86, 394-414. And, Proterra Defendants refused to disclose that the Company had already chosen to pivot away from Transit and was actively starving Transit of resources (*id.*), that Proterra had identified cost-saving measures for Transit but chose not to implement them (¶¶294-305, 313-18, 323-29, 335-36, 365-66, 369-86, 394-414), and that Proterra was actively attempting to sell Transit (¶¶372-73, 396-406). At the same time, Proterra Defendants assured investors that liquidity and Transit were Proterra's priorities, when in fact it was starving Transit to divert limited resources to Powered. ¶¶253-54, 272-75, 292-97, 299-300, 304-05, 313-14, 317-18, 328-29, 372-73, 380-81. Proterra Defendants also falsely touted Transit's backlog as strong, when they knew it was actually slowing, then-produced slim to negative margins, and was compromised by known, then-existing quality and supply chain problems. ¶¶234-35, 249-52, 261-62, 269-71. Moreover, even when Transit did see positive developments, Proterra Defendants incorrectly attributed them to "improvements in [Proterra's] production process." ¶¶315-16. All of this painted an inaccurate and incomplete picture to investors about Proterra's most important division.

Not content with misrepresenting the current state of Transit, Proterra Defendants also misled investors by portraying Powered as more established and healthier than it actually was and claiming that Greer was nearing completion when it was actually behind schedule. ¶¶251-52, 319-20, 323-24, 367-68, 378-79. When touting Greer to investors, Proterra Defendants failed to inform investors that

21

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

the construction of this facility was at least a quarter behind schedule and once it was up and running, it suffered from serious production and operational issues that caused it to routinely underdeliver and miss sales goals. ¶¶319-20, 323-29, 335-36, 365-81, 385-86, 394-409, 411-14. They also falsely portrayed Greer as a solution to the Company's problems, when they knew that it could not resolve extensive, known deficiencies in quality, supply chain and contract structure. ¶¶267-68, 269-71, 304-05, 317-18, 328-29, 380-81. Similarly, Proterra Defendants omitted the drawbacks of the highly touted Greer facility, the drawbacks of Powered and Energy as a unified business segment, and the fact that Powered did not have the performance to support Proterra's significant investments in the business. ¶¶237-38, 253-54, 265-66, 274-75, 292-95, 299-305, 317-18, 323-29, 335-36, 364-70, 375-86, 394-414. Most egregiously, when discussing Powered, Proterra Defendants failed to inform investors that Joyce and Padilla intentionally changed the battery pricing model for a major supply contract to yield positive margins, while knowing that the numbers were inaccurate and the price for the costs of goods sold was higher than reported, ultimately causing Proterra to bleed cash. ¶¶265-66, 270-71, 274-75, 294-95, 299-305, 315-18, 323-29, 365-70, 375-86, 394-414. Finally, Exchange Act Defendants concealed that the Company's decision to prioritize its Powered business over Transit had put the Company on a path to insolvency. ¶¶365-66, 396-70, 378-81, 394-409. These misrepresentations and omissions portrayed Powered as Proterra's key to success, when in reality, it was deeply flawed.

As Proterra sped towards insolvency, Proterra Defendants doubled down on their misrepresentations rather than come clean with investors. For example, in January 2023, Joyce claimed that Proterra was "operating with financial discipline" and that closing the City of Industry facility would improve efficiency, when he knew both to be false. ¶¶335-36. Certain identified Proterra Defendants touted improvements in cash consumption and a "healthy products architecture" when they knew that neither condition in fact existed. ¶¶369-70, 378-79. Accordingly, the alleged false and misleading statements are actionable. *Bayer Aktiengesellschaft*, 2021 WL 4864421, at *3. Finally, Proterra Defendants refused to disclose that the Company's decision to prioritize its Powered business over Transit had put the Company on a path to insolvency. ¶¶365-66, 396-70, 378-81, 394-409. This deprived investors of the full, dire picture of Proterra as it careened towards bankruptcy.

22

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

While Proterra Defendants claim that some statements might be technically true, Section 10(b) does not protect half-truths: "Even if a statement is not false, it may be misleading if it omits material information." *Khoja*, 899 F.3d at 1008–09. Once a defendant chooses to "tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including by disclosing adverse information that cuts against the positive information." *Schueneman*, 840 F.3d at 706. This argument shows only that they have their own reading of the statements to present at trial. That is of no moment here, where the Court "ignores Defendants' version of the facts and relies, instead, on Plaintiff's version contained in the Complaint and any inferences that can be drawn from it." *Johnson v. Knapp*, 2009 WL 764521, at *4 (C.D. Cal. Mar. 16, 2009); *see also Fecht*, 70 F.3d at 1080-81 ("materiality" and "adequacy of disclosure" are generally jury questions).

In addition to explaining why each of the alleged statements made during the 10(b) Class Period was false and/or misleading, the Complaint alleges *sixteen* CW accounts that corroborate the true facts that Proterra Defendants withheld from investors. CW accounts that contradict or undermine a defendant's public statements are sufficient to plead falsity. *See Quality Sys.*, 865 F.3d at 1144; *Mulligan*, 36 F. Supp. 3d at 962-63; *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *17-18 (N.D. Cal. March 21, 2018); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *10 (N.D. Cal. Apr. 28, 2020). Here, Plaintiffs have more than adequately described the CWs' job responsibilities with sufficient particularity. ¶¶59-95. *See Mulligan*, 36 F. Supp. 3d at 942 (noting that providing job titles and describing job responsibilities constitutes a large degree of specificity). Moreover, the Complaint outlines how the CWs' accounts of Proterra's inner workings diverged dramatically from what was told to investors during the 10(b) Class Period. ¶¶145-72, 223-25, 244-47, 260, 277-90, 308-11, 321-22, 332-34, 337, 339-56, 390-92. Thus, the CWs support Plaintiffs' allegations that from 2021 to 2023, the Proterra Defendants continually misled investors about Proterra. The information that CWs confirm was known internally, but Proterra Defendants concealed, was not "unconnected" to the misrepresentations, like in the cases they cite, but instead directly undermined the sectors of Proterra business, operations, and prospects Proterra Defendants chose to tout. *Cf. Golubowski*, 2023 WL 1927616, at *4-6; *Irving*, 2018 WL 4181954, at *5-6; *Brody*, 280 F.3d at 1006-07. For example,

23

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

information like here describing problems that had already occurred are clearly connected to misrepresentations that refer to risks as "potential." *Sgarlata*, 2018 WL 6592771, at \*7.

### 2.   The Alleged Misrepresentations Were Not Puffery or Statements of Optimism

Proterra Defendants improperly attempt to explain away their Exchange Act misstatements as "nonactionable puffery and optimism." Proterra Mem. at 10-11. Their contrived effort to pluck isolated words out of context provides no defense. As outlined in Section II(C), puffery does not apply where, as here, "statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Quality Sys.*, 865 F.3d at 1143; *see also Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1054–55 (N.D. Cal. 2018). "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Hammer v. Frontier Fin. Corp.*, 2011 WL 13229260, at \*9 (W.D. Wash. Sept. 7, 2011). Contrary to Proterra Defendants' assertions, the presence of words like "strong," "healthy," "priority," and "significant" do not render a broader statement beyond the scope of securities laws, especially when they are used to describe specific areas of a business. *Id*. ("capital ratios remain strong" is actionable because it referred to a specific area of defendants' business and consumers were likely to rely on such a statement); *see also Rodriguez*, 325 F. Supp. 3d at 1054–55 ("healthy" is an actionable statement because, like here, it were made specifically about defendants' backlog); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 3058563, at \*8 (N.D. Cal. July 19, 2017) (distinguishing Proterra Defendants' authority, *In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010), and holding "top priority" actionable when viewed in context); *Mulligan*, 36 F. Supp. 3d at 967 (finding "significant" and other words highlighted by Proterra Defendants here, were not puffery because, in context, they referred to specific areas of defendants' business); *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 284–85 (E.D.N.Y. 2023) ("confident" not puffery because, in context, they provided specifics on an area of the business that investors would care about).

Here, for example, Proterra Defendants used terms like "healthy," "significant," and "strong" to describe specific areas of Proterra's business, tethered to concrete examples. *See*, *e.g.*, ¶249 ("Our backlog remains strong, bolstered by Miami Transit's $37 million order for 42 of our 40-foot 450-

24

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

kWh ZX5 electric transit buses (following its first order for 33 in 2019)”); ¶323 (“we believe we have positioned ourselves to be a central player in this industry with a strong balance sheet, healthy production capacity going into 2023, and a leading product platform with a well-positioned product strategy for the future”); ¶367 (“We have completed construction of [Greer] … while the first stages of the ramp have been slow in January and February, we have made significant progress over the last few weeks.”). When viewed *in context*, their tethered statements sharply contrast with the vague generalizations on display in the litany of cases they cite. *See*, *e.g.*, *Reckstin Fam. Tr. v. C3.ai, Inc.*, 2024 WL 734497, at *9 (N.D. Cal. Feb. 22, 2024) (“strategic vertical industry partner” was not susceptible to objective verification); *Kong v. Fluidigm Corp.*, 2021 WL 3409258, at *8 (N.D. Cal. Aug. 4, 2021) (“well positioned” vague and not tethered to specific aspects of defendants’ operations known to be doing poorly); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (“strong” demand not tied to a specific area of defendants’ business or time period); *cf. In re Harman Int’l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 109-10 (D.C. Cir. 2015) (distinguishing *Splash* and holding “strong” to be actionable when, like here, it was tied to an area of a business and time period). Other cited cases are equally inapposite. *See* Proterra Mem. at 10-11.

### 3.   The PSLRA’s Safe Harbor Does Not Apply

The PSLRA’s safe harbor does not apply to statements about present or historical fact, or even mixed statements that contain both forward-looking and current or historical components. *See, e.g.*, *Quality Sys.*, 865 F.3d at 1148. That is true even if some element relates to a future goal or event. *See, e.g.*, *id.* (safe harbor does not protect current misrepresentations of fact even if they relate to future revenues as a whole); *Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 774 (9th Cir. 2023) (similar). All challenged statements here are based in present or historical fact, thereby taking them outside the ambit of the safe harbor. *See* ¶237 (“We ***are investing*** in our Proterra Powered and Proterra Energy business units … As ***a result of the additional capital raised*** … ***With an unrestricted cash and short-term investment balance of $762 million***”); ¶¶239 (The Company ***has $761.5 million of cash and cash equivalents***), 273, 301, 325 (similar); ¶240 (We believe that our sources of ***existing cash and cash equivalents and short-term investments***), 274, 302, 326 (similar);

Plaintiffs’ Omnibus Memorandum in Opposition to Defendants’ Motions to Dismiss
Case No. 3:23-cv-03519-RFL

¶335 (we *remain focused* on operating with financial discipline towards sustainable growth); ¶365 (we *made tremendous progress* on our long-term business plan in 2022 … we believe *we have successfully leveraged our early leadership in electric transit buses*); ¶394 (We continue to expect a gross loss in the first half of 2023 and target positive gross margins in the second half of 2023, enabled by our expectations for *continued growth and higher operating efficiencies at [Greer]* … *with the ramp of [Greer] steadily progressing*).[14]

Moreover, context matters. For example, ¶319 contains the term "*remain* on track" which necessarily presupposes that Proterra had previously been on track and "contains representations of past and present facts[.]" *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 869 n.8 (W.D. Wash. 2022) (distinguishing "back on track" from the "on track" holding from *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021)); *see also Rodriguez*, 325 F. Supp. 3d at 1051 (collecting cases). Similarly, framing risks as potential and hypothetical when in fact they have already occurred is not forward-looking and is not protected. *See, e.g.*, *Zuora*, 2020 WL 2042244, at *9-10; *Hsingching Hsu v. Puma Biotechnology, Inc.*, 2017 WL 3205774, at *3 (C.D. Cal. July 25, 2017); *Sientra*, 2016 WL 3360676, at *10; *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 972 n.12 (N.D. Cal. 2009).[15]

Further, the safe harbor does not apply even to forward-looking statements because Proterra Defendants had actual knowledge of their falsity. Proterra Defendants knew from 2021 onward that Transit had significant supply chain and manufacturing issues, and that it was transitioning away from Transit to Powered, which did not have the performance or growth trajectory to support the Company's investments or strategic pivots, as well as of significant operational challenges at Greer – all of which prevented any progress on Proterra's business plan. *See* Section IV(A)(1).

---

[14] Moreover, Proterra Defendants also claim these are opinions because they use terms like "we believe." *See* ¶¶237, 239, 240, 273, 274, 301, 302, 325, 326, 365. But a statement of present opinion is not forward-looking and not protected by the safe harbor. *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *4–5 (N.D. Cal. July 26, 2017).

[15] That Proterra Defendants made their statements with actual knowledge of already-occurring problems distinguishes this Action from *In re Astra Space, Inc. Sec. Litig.*, 2023 WL 4983156, at *7 (N.D. Cal. Aug. 2, 2023); *In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *24–25 (N.D. Cal. Dec. 9, 2022); *Monachelli v. Hortonworks, Inc*, 225 F. Supp. 3d 1045, 1055–56 (N.D. Cal. 2016); and *In re Pac. Gateway Exch., Inc., Sec. Litig.*, 2002 WL 851066, at *12 n.8 (N.D. Cal. Apr. 30, 2002).

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

#### 4. The Alleged Misrepresentations Cannot Be Immunized As Opinions

Proterra Defendants mistakenly claim that their statements were opinions and therefore inactionable. But, as explained in Section II(C), a statement is not an opinion if it speaks in factual terms. Exchange Act misrepresentations addressed *facts* and spoke in factual terms about Proterra's cash and liquidity (¶¶232-41, 253-54, 265-66, 272-75, 292-95, 301-03, 317-18, 323-27, 369-70, 396-400), Proterra's backlog (¶¶249-52, 261-62, 269-71, 365-68, 374-76), Proterra's supply chain (¶¶230-33, 263-64, 267-68, 270-71), and Greer (¶¶267-71, 293-95, 317-20, 365-70, 380-81, 394-409).

Furthermore, even if opinions, they would still be actionable because they contain embedded false statements of fact and omitted known, material adverse information. *Forescout*, 63 F.4th at 779 (opinion actionable even if defendants honestly believed a merger would close because defendants omitted known, material adverse information that cast doubt on whether the merger would close). Even honestly held beliefs are actionable if they do not fairly align with the information in a defendant's possession. *See Omnicare,* 575 U.S. at 188-89. Here, for example, Joyce stated that Greer was on track to start production by the end of 2022, when the information in his possession showed that the facility was actually behind schedule by at least one quarter. ¶¶319-22. Similarly, Proterra's SEC filings spoke about "potential" risks when those risks had already materialized. ¶¶382-86, 408-14. Further, Joyce claimed that Proterra was "bullish" about its Transit division when he knew that Proterra was actively exploring options to sell or divest the Transit division. ¶¶372-73.

Here, unlike in Defendants' authority, the statements embedded false statements of current fact and were undermined by known adverse facts in Proterra Defendants' possession. Thus, the 10(b) misrepresentations have no similarity to those in *Wochos*, 985 F.3d at 1196; *Pivotal*, 2020 WL 4193384, at *11-14; or *Markette v. XOMA Corp.*, 2017 WL 4310759, at *6 (N.D. Cal. Sept. 28, 2017).

#### 5. The Alleged Misrepresentations Are Not Fraud by Hindsight

Like virtually all defendants, Proterra Defendants attempt to characterize the Exchange Act claims as "fraud by hindsight." That mantra does not apply. "Fraud is almost always detected after the fact, typically based on evidence developed subsequent to the allegedly fraudulent statements. Courts must of course be careful to distinguish between forward-looking statements later deemed to be unduly

27

optimistic, and statements of historical fact later shown to be *false* when made." *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809-10 (C.D. Cal. 2011). The Complaint alleges facts plausibly demonstrating that the statements were misleading and false *at the time they were made*. Specifically, the Complaint alleges that there were known material risks at the time the statements were made but were not disclosed to investors, including, *inter alia*, known problems affecting Transit at the time of the merger (¶¶145-72), known problems and risks with Proterra's decision to starve Transit and shift resources to Powered (¶¶216-28), Joyce and Padilla's knowledge of Powered's unprofitable, underpriced battery contracts (¶¶306-12), and Greer's production and operational issues (¶¶72-74, 323-29, 338-56). That the full implications of these known, then-existing conditions culminated in 2023 does not make the allegations fraud-by-hindsight. *See In re Nuvelo, Inc. Sec. Litig.*, 668 F.Supp.2d 1217, 1230 (N.D. Cal. 2009) (failure to disclose then-existing risk does not constitute fraud-by-hindsight); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 2016 WL 6609210, at *8 (C.D. Cal. May 10, 2016) (same). That is simply not what that term means.

Nor is this a situation where a rogue CW simply has a different opinion, as this is not a case about mismanagement. *Supra* at Section IV(A)(1). Instead, numerous CWs establish that problems and risks undermining Exchange Act misrepresentations to investors ***existed at the time the statements were made***.[16] *Id*. For this reason, cases that lack such allegations have no bearing. *See Pirani v. Netflix, Inc.*, 2024 WL 69069, at *9-10 (N.D. Cal. Jan. 5, 2024); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012). *In re Enovix Corp. Sec. Litig.*, 2024 WL 349269, at *13-14 (N.D. Cal. Jan. 30, 2024) is also distinguishable, as those plaintiffs neither alleged the risk disclosures contained material misstatements or alleged that the risks began to materialize

---

[16] Proterra Defendants' authority is distinguishable. In *Cho v. UCBH Holdings, Inc.*, there were only generalized allegations about senior management, which was insufficient, and an FDIC review did not establish a defendant's scienter because the review did not make any conclusions about the defendant. 2011 WL 3809903, at *12 (N.D. Cal. May 17, 2011). Because the CWs *do* make specific allegations about the Individual Defendants, *Cho* is not persuasive. *See*, *e.g.*, ¶¶244, 260, 308-09, 337, 353, 425-31. In *In re Downey Sec. Litig.*, the CWs not only contradicted each other, unlike here where the sixteen CWs corroborate each other, but also the CWs failed to establish that contradictory facts existed at the company and were provided to defendants. 2009 WL 2767670, at *10-11 (C.D. Cal. Aug. 21, 2009). This is starkly different from the CWs here, where the CWs establish conditions at Proterra that that Proterra Defendants withheld from investors. *Supra* at Section IV(A)(1).

28

until after the statements were made – both of which Plaintiffs allege here.

### 6.    The Complaint is Not a Puzzle Pleading

Proterra Defendants miscategorized the Complaint as "confusing puzzle pleading." Proterra Mem. at 5. That is the exact opposite of what the term means. "A 'puzzle pleading' is a complaint that forces the defendants and/or court to sort out the alleged statements and match them with the corresponding adverse facts in order to solve the puzzle of interpreting Plaintiff's claims." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014). Where, as here, a complaint "detailed each problematic statement, alleged that each statement is false and misleading, and alleged the reasons as to why each statement was false or misleading[,]" the complaint is not a "puzzle pleading," Rule 8 is satisfied, and Defendants are on notice of the true substance of the claims against them. *Intuitive Surgical*, 65 F. Supp. 3d at 831; *see also Sientra*, 2016 WL 3360676, at \*9-10 (rejecting a similar argument and holding that where a complaint outlines what statements are false, with the specific phrases bolded and italicized, any puzzle pleading argument is unavailing). That a complaint is long does not render it puzzle pleading. *Id.*; *see also In re Cornerstone Propane Partners, L.P.,* 355 F.Supp.2d 1069, 1081 (N.D. Cal. 2005). Here, the length of which Defendants complain is simply a function of the fact that they made so many misrepresentations and so many CWs stepped forward to tell the truth that Defendants withheld. Plaintiffs were required to, and did, allege each materially false and misleading statement with the particularity mandated by the PSLRA.

Furthermore, the organization of the Complaint is a far cry from that of the cases Proterra Defendants cite, where the alleged statements were not highlighted or accompanied by specific descriptions about why each was false and misleading. *See In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at \*7 (N.D. Cal. Aug. 14, 2019); *Irving*, 2018 WL 4181954, at \*6; *In re Zynga Inc. Sec. Litig.*, 2014 WL 721948, at \*2 (N.D. Cal. Feb. 25, 2014); *Primo v. Pac. Biosciences of California, Inc.*, 940 F. Supp. 2d 1105, 1111-13 (N.D. Cal. 2013); *McCasland v. FormFactor Inc.*, 2008 WL 2951275, at \*7 (N.D. Cal. July 25, 2008).

### B.    The Complaint Pleads a Strong Inference of Scienter

The allegations that the Complaint structurally separates and pleads only with respect to

29

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

Section 10(b) also support a strong inference of scienter. Scienter is "a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *Schueneman*, 840 F.3d at 705. A "strong inference" "need not be irrefutable … or even the most plausible," and no "smoking-gun" is required. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324–326 (2007). The test is simply an inquiry into "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter," and is satisfied so long as a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 322-324 (emphasis in original). The Complaint readily satisfies this standard.

### 1.   CW Accounts Confirm Actual Knowledge

The reliable, interlocking CW statements alleged here show Proterra Defendants' contemporaneous knowledge of adverse facts sufficient to support a strong inference of scienter. *See, e.g.*, *Zuora*, 2020 WL 2042244, at *10–11. The individual reliability of each CW's account of the relevant contemporaneous facts is further bolstered by so many current and former employees providing the same or similar testimony. *See, e.g.*, *Extreme Networks*, 2018 WL 1411129, at *27 (finding CWs' accounts indicative of scienter as "the CWs corroborate each other with respect to what was going on internally at [the company], which further supports the reliability of their statements"); *In re Zillow Grp., Inc. Sec. Litig.,* 2019 WL 1755293, at *5 (W.D. Wash. Apr. 19, 2019) (same). Alike, that CWs were employed in various departments throughout the Company corroborates Defendants' contemporaneous knowledge contradicting their public statements. *See, e.g., Berson*, 527 F.3d at 985.

Here, Proterra Defendants' scienter is established by the accounts of CWs who not only confirmed the existence of the concealed deficiencies related to Transit, Powered, and the Company's liquidity, but that this adverse information was known throughout the Company and provided to Proterra Defendants. For example, nine different CWs (CW1, CW2, CW3, CW6, CW8, CW10, CW13, CW14, CW15) confirm the known problems at Transit before the merger. ¶¶146-72. Six CWs (CW2, CW7, CW11, CW12, CW13, CW16) confirm that Greer was not only far behind schedule, but had significant undisclosed operational and production problems. ¶¶388-56. CW5 and CW12 corroborated each other's accounts that the Company only grouped Energy and Powered to mask

30

Powered's flaws, and starved Transit of resources to fund Powered. ¶¶223-25. CW1, CW2, and CW3 all confirm that the Company developed and then scrapped cost-saving programs for Transit that were never disclosed to investors. ¶¶286-90. Also, CW2, CW8, and CW13 affirmed that Proterra engaged in cash-cutting efforts in late 2022 in direct response to an internally-known cash-crunch. ¶¶330-34.

Indeed, while the prevalence of these issues throughout the Company alone can establish scienter, several CWs interacted directly with Proterra's upper management, including Proterra Defendants, and confirmed they discussed or were informed of the adverse facts hidden from investors. *See, e.g.*, ¶¶308-11 (CW3 was personally pressured by Joyce and Padilla to lower the costs of goods sold for batteries produced at Greer); ¶¶65, 244 (CW4 interacted numerous times with Ard and Padilla, and learned of conflicts between Ard and Allen about Proterra spending that resulted in Ard leaving the Company); ¶337 (CW5 attended meetings with Proterra's executive team where the Company determined to sell Transit); ¶429 (CW7 attended meetings twice a day with Proterra management, including Joyce, where production line issues were discussed); ¶425 (CW9 attended quarterly "all-hands meetings" with Proterra's executive team, including Ard, where the Company's spending issues were discussed). Moreover, CW2 confirmed that meetings occurred where Proterra Defendants had access to *and were provided with* information about the problems at Proterra, and in those meetings, approved the projects and strategies hidden from investors. ¶¶423-29. This solidifies scienter. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1187 (N.D. Cal. 2021) (scienter established by CW reports of meetings where defendants received regular briefing of topics identified in misstatements and where defendants approved of actions hidden from investors); *Scheller v. Nutanix, Inc.*, 2020 WL 5500422, at *9 (N.D. Cal. Sept. 11, 2020) (similar); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1260–61 (D. Nev. 2019) (similar).[17]

Proterra Defendants' attempt to explain away this damning evidence fails. First, they urge that certain CWs be disregarded even at the pleading stage because they did not all report directly to named

---

[17] Notably, Proterra Defendants do not contest or even address CW2's accounts, conceding that they *were* routinely provided with contrary information at executive meetings. *See*, *generally*, Proterra Mem. This alone establishes scienter. *See Forescout*, 63 F.4th at 773 (CW's account that defendant regularly attended meetings where contradictory information was provided established scienter).

31

defendants. Proterra Mem. at 14-15. This imagined requirement has been rejected by the Ninth Circuit. In *Quality Sys.*, the Ninth Circuit credited the accounts of numerous lower-level sales representatives who provided fewer specific details than the CWs here and had no contact with the individual defendants. 865 F.3d at 1144. Earlier cited opinions are inapplicable both because of the clear holding in *Quality Sys.* and because their facts are inapposite. Unlike the sixteen CWs here, *Intuitive Surgical* involved "a single statement by a lone [low-level] witness … who worked for [defendant] for three months" and provided only a vague statement about the business. 759 F.3d at 1063. In *Bao v. Solarcity Corp.*, 2016 WL 54133, at *5-6 (N.D. Cal. Jan. 5, 2016) and *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *11-12 (N.D. Cal. Mar. 29, 2013), most CWs did not work for defendants during the class period and offered only conclusory statements that tangentially touched upon the subjects of the alleged misrepresentations. Finally, in *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1078-79 (N.D. Cal. 2010) most CWs did not offer any information concerning the defendants and the two that did failed to provide any information that showed defendants' knowledge or access to adverse information. The extensive CW allegations here provide this detail.

Second, Proterra Defendants attempt to mischaracterize the CW accounts as mere "disagreement" with Proterra's business judgment. Proterra Mem. at 15-16. Not so. The CW accounts here do not describe an internal debate, but rather adverse ***facts*** widely known within the Company but concealed from investors. *See Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *12-13 (C.D. Cal. Jan. 17, 2020) (rejecting a similarly conclusory claim that CWs merely disagreed with higher management as an improper factual attack at the pleading stage); *see also In re Allied Nevada Gold Corp. Sec. Litig.*, 743 F. App'x 887, 888 (9th Cir. 2018) (reversing dismissal where district court minimized allegations as nothing but a shared opinion amongst CWs); *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 691 (5th Cir. 2014) (overruling conclusion that CW accounts were a mere disagreement with management because the CWs spoke in factual terms).[18]

---

[18] Defendants' cited authority is unavailing. In *Jui-Yang Hong v. Extreme Networks, Inc.*, the court drew a distinction between what plaintiffs promised – that, like here, the CW could establish known internal issues that could establish scienter – and what was actually pled, which was a disagreement about how employees were being treated. 2017 WL 1508991, at *20 (N.D. Cal. Apr. 27, 2017). *Pivotal*

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

Finally, Proterra Defendants erroneously submit that CW4's allegations must be discounted because CW4 did not report directly to Joyce, but rather to Ard and Padilla, and therefore could not know about Joyce's efforts to smooth over revenue. Proterra Mem. at 15-16. But the Complaint clearly alleges that CW4 reported indirectly to Joyce through Padilla, and that CW4's job duties encompassed "corporate financial planning and analysis," assisting with the Company's balance sheet forecasting, and assisting with the Company's financial statements that Joyce signed off on. ¶¶64-65, 260. Thus, unlike in *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1053-55 (N.D. Cal. 2019), the Complaint adequately describes CW4's responsibilities and how CW4 was in position to have the knowledge they profess. Further, Proterra Defendants' complaint about specificity is a red herring because unlike in *Nguyen*, where a recanting CW described risks as "urgent" without anything more, CW4 outlines Joyce's specific actions each quarter with respect to revenue smoothing, as well as specifics about Proterra's bus prices, which fluctuated due to the customizable nature of the buses leading to unpredictable margins for those buses, and Ard's departure, caused by an internal disagreement over the Company's cash burn. *Compare Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020) *with* ¶¶154, 244, 260.

### 2. Proterra Defendants Held Themselves Out as Knowledgeable

The Ninth Circuit has repeatedly found that a defendant's professions of knowledge and authority on a topic are sufficient to infer scienter. *See, e.g., E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 939-40, 942 (9th Cir. 2023); *Forescout*, 63 F.4th at 773; *Quality Sys.*, 865 F.3d at 1145; *Reese v. Malone*, 747 F.3d 557, 571-72, 576-77 (9th Cir. 2014). Here, Proterra Defendants consistently spoke to investors and analysts about the misrepresented subjects, including the impact of COVID-19 (¶232), quality and efficiency of the Transit division (¶¶234, 249, 251, 270, 294, 299), Proterra's supply chain (¶¶263), Greer (¶¶267, 270, 319), and the Company's liquidity (¶¶253, 265, 272, 293, 317), thereby demonstrating a familiarity with those aspects of its business. *See also* ¶¶432-

CWs were used to argue that defendants there pursued an unwise sales strategy, while here, CW5 describes not a disagreement with strategy but internally-known facts *at the time* about the status of Proterra. *Compare* 2020 WL 4193384, at *17 *with* ¶337.

33

38. Even less detailed discussions of a business have been deemed sufficient to plead a defendants' scienter. *See Zillow*, 2019 WL 1755293, at *20; *In re Questcor Sec. Litig.,* 2013 WL 5486762, at *19 (C.D. Cal. Oct. 1, 2013).[19]

### 3.  Post-10(b) Class Period Events Support a Strong Inference of Scienter

In Proterra's bankruptcy filings, Joyce admitted the existence of many of the operational challenges that Proterra Defendants hid from investors during the 10(b) Class Period, including: (i) that the Company had known, unmitigated operational challenges and production inefficiencies adversely impacting Transit manufacturing and deliveries; (ii) that Transit's near-term contracts were disadvantageous and often had negative gross margins; (iii) that the Company was trying to sell-off Transit long before filing for bankruptcy; (iv) that Proterra made the "strategic" decision to focus on Powered and Energy rather than address known problems affecting Transit; and (v) that the Company's liquidity was overstated. Notably, this is not, as was the case in Proterra Defendants' cited authority, of an admission of lower earnings or that projections were ultimately inaccurate. ¶¶439-48; *Cf. Ronconi v. Larkin*, 253 F.3d 423, 432-33 (9th Cir. 2001); *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020). Instead, the bankruptcy filing was a fulsome explanation of how Proterra ended up in bankruptcy, detailing the multitude of problems ***that existed during the Class Period***. Where bankruptcy filings provide such information, they can help support scienter by showing conditions known during the class period. *See Setzer v. Omega Healthcare Invrs, Inc.*, 968 F.3d 204, 214 n.13 (2d Cir. 2020) (scienter was adequately pled, in part, based on post-class period admissions made in a bankruptcy filing). Plaintiffs allege that the facts Joyce describes in bankruptcy existed, but were hidden from investors, throughout the Class Period. ¶¶439-48. That Joyce agreed that these conditions existed and were internally known bolsters an already strong inference of scienter.

### 4.  Suspiciously Timed Insider Sales Bolster Scienter

During the 10(b) Class Period, Defendants Joyce and Padilla sold Proterra securities for a

---

[19] Notably, the only authority Proterra Defendants cite on this issue does not address scienter established by a defendant holding herself out as knowledgeable, but rather allegations limited to an executive's position, which is not the case here. *See In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000).

34

significant profit, with Joyce profiting $4,235,742 and Padilla profiting $2,150,432, on their first sales of Proterra stock. ¶¶485-92. This, combined with the fact that other Proterra executives made similarly unusual stock sales (¶¶493-503), supports a strong inference of scienter. *See*, *e.g.*, *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 885–86 (N.D. Cal. 2023) (holding that scienter was supported when, like here, defendants made unusual stock sales for millions of dollars); *Lamartina v. VMware, Inc.*, 2023 WL 2763541, at *15 (N.D. Cal. Mar. 31, 2023) (that some defendants sold for the first time within the class period supported an inference of scienter). Plaintiffs' allegations about the suspicious nature of Defendants' stock sales distinguish this case from their cited authority. *See Browning v. Amyris, Inc.*, 2014 WL 1285175, at *17 (N.D. Cal. Mar. 24, 2014) ("the plaintiffs do not allege facts, however, to show that any sales were 'unusual' or 'suspicious.'"); *In re Dura Pharms., Inc. Sec. Litig.*, 2000 WL 33176043, at *10 (S.D. Cal. July 11, 2000) (same); *Pugh v. Trib. Co.*, 521 F.3d 686, 695 (7th Cir. 2008) (same). That some other defendants did not engage in similar sales is immaterial. "Scienter can be established even if the officers who made the misleading statements did not sell stock during the class period." *Mulderrig*, 492 F. Supp. 3d at 1030; *see also Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016) (holding that scienter was bolstered even when some defendants did not sell stock during the class period); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *14–15 (C.D. Cal. July 1, 2008) (same).[20]

### 5.   Proterra Defendants' Certification of Company Statements Bolsters Scienter

The already strong inference of scienter is further supported by Defendants Ard, Allen, Cederoth, Joyce, and Padilla's signing of certifications in connection with Proterra's 10-Ks and 10-Qs filed with the SEC. ¶¶504-511. These certifications avowed that Defendants Ard, Allen, Cederoth, Joyce, and Padilla had familiarized themselves with the filings and the underlying operations of Proterra, and the "financial statements, and other financial information included in [the financial statements] fairly present in all material respects the financial condition, results of operations and cash flows of" Proterra. *Id*. Proterra Defendants' "Sarbanes-Oxley Act certifications filed with the SEC support their scienter, because those certifications required them to access sufficient reporting

---

[20] *In re Eargo Sec. Litig.* is without force, because unlike here, *all* sales there were non-discretionary. 2023 WL 5663154, at *1–2 (N.D. Cal. Aug. 31, 2023).

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov*, 2017 WL 3168522, at *7 (N.D. Cal. July 26, 2017); *see also Thomas*, 167 F. Supp. 3d at 1043 (similar); *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1191 (D. Nev. 2009) (similar). "For these certifications to have any substance, signatories to the certifications must be held accountable for the statements." *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189-90 (C.D. Cal. 2007). Proterra Defendants provide only a single perfunctory sentence on this issue, citing a case that has since been clarified by more recent authority holding that certifications "may be part of a totality giving rise to a compelling inference of scienter." *See Mulderrig*, 492 F. Supp. 3d at 1028 n.22.

### 6.    The Core Operations Doctrine Further Supports Scienter

Scienter is also supported by the core operations inference. Proterra's *sole* business was developing and manufacturing EV buses, EV battery systems, and EV charging solutions. ¶¶512-13; *see Azar v. Yelp, Inc.*, 2018 WL 6182756, at *20–21 (N.D. Cal. Nov. 27, 2018) (invoking the core operations inference when more than 50% of total revenue was derived from a local advertising program); *Robb v. Fitbit Inc.*, 2017 WL 219673, at *4–5 (N.D. Cal. Jan. 19, 2017) (applying the core operations inference when the product constituted 80% of total revenue). Given the pivotal importance of Transit and Powered, "the idea that defendants would be unaware of" problems within both divisions is absurd. *Mulligan*, 36 F. Supp. 3d at 970.

Proterra Defendants ignore these facts and instead make only a cursory reference to a single core operations case, *Steven Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at *9 (N.D. Cal. Mar. 18, 2024). But, unlike *Ardelyx*, the Complaint here (i) provides specific facts (including multiple CW accounts) showing that Proterra Defendants had access to the concealed information about Proterra's business, (ii) provides other allegations supporting scienter, and (iii) explains the revenue and liquidity significance of the concealed information. ¶¶423-513; *cf. Berson*, 527 F.3d at 989 (it would be "absurd to suggest" that top management was unaware of facts that had a devastating effect on revenue).

### 7.    Suspicious Timing of Departures and Incentive Awards Bolsters Scienter

Uncharacteristic resignations of high-level executives can support an inference of scienter in

36

combination with other facts. *See, e.g., Plantronics*, 2022 WL 3653333, at \*19 (holding that defendants' suspicious departures added to their scienter); *In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at \*6–7 (N.D. Cal. June 1, 2020) (holding that defendants' uncharacteristic and suspiciously-timed resignations established scienter); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281, at \*14–15 (N.D. Cal. Jan. 4, 2017) (holding that suspicious resignations were strongly indicative of scienter); *In re UTStarcom*, 617 F. Supp. 2d at 976 (holding that defendants' suspiciously-timed resignations were "one more piece to the scienter puzzle"). Here, multiple executives, including Defendant Ard, Joshua P. Ensign, Defendant Allen, Ryan C. Popple, JoAnn Covington, and Defendant Padilla, all abruptly resigned at suspicious times even though they had significant financial incentives to stay with Proterra. ¶¶449-63. Accordingly, these resignations help bolster the already-strong allegations of scienter.

Proterra Defendants' citation to *Zucco Partners, LLC v. Digimarc Corp.* is misplaced. There, the plaintiffs failed to plead any facts to show that resignations were uncharacteristic or suspicious. 552 F.3d 981, 1001–02 (9th Cir. 2009). Conversely, the Complaint alleges in detail how numerous Proterra executives suspiciously resigned either right after losing an internal argument about concealed costs (with executives who stayed and were rewarded handsomely) or as Proterra's fraud became known to investors. ¶¶449-84.

### 8. Proterra Defendants Offer No Plausible Competing Inference

Proterra Defendants offer no competing inference that could innocently explain either their concealment of adverse facts from investors, especially as problems worsened. ¶¶145-72, 216-414. Their citation of *Nguyen* is misplaced, as *Nguyen*'s holding is not only extremely limited, *see In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at \*12-13 (N.D. Cal. Nov. 4, 2020), but inapplicable because Plaintiffs do not allege that Proterra Defendants always knew their post-merger strategy was doomed, and were simply running out the clock. *Cf. Nguyen*, 962 F.3d at 415 (theory that defendants always knew product was "unapprovable" implausible). Instead, akin to *City of Sunrise*, Plaintiffs allege that Proterra Defendants misled investors about known problems and poor business conditions due to their strategic decisions, all in an effort to buy themselves more time to improve their flagging business.

37

527 F. Supp. 3d at 1185; *cf. Ardelyx*, 2024 WL 1160900, at *7 n.3 (defendants simply expressed "corporate optimism" about business prospects, while fully disclosing known risks, while turned out to be misguided); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 862 (N.D. Cal. 2014) (similar).

### C.   The Complaint Sufficiently Pleads Loss Causation

Loss causation is sufficiently alleged if a disclosure reveals new facts that render some aspect of a defendant's prior statements false or misleading. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). A disclosure is deemed corrective even if some information was previously public if it brings to light new implications of the previously disclosed information that investors were not aware of. *See Gilead*, 536 F.3d at 1058. The Complaint easily meets these tests. ¶¶514-31.

"In a fraud-on-the-market case like this one, loss causation begins with the allegation that the defendant's misstatements (or other fraudulent conduct) artificially inflated the price at which the plaintiff purchased [their] shares. Next, a plaintiff must allege that the truth became known. Finally, a plaintiff must allege that the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1183 (9th Cir. 2024). It need not be shown that "that a misrepresentation was the *sole* reason for a price decline, but rather that it was one substantial cause." *Id*. Plaintiffs "need only show a causal connection between the fraud and the loss, and they can do so even when the alleged fraud is not necessarily revealed prior to the economic loss." *Id*. Importantly, a corrective disclosure need not "precisely mirror" the misrepresentation but instead "[i]t is enough if the disclosure reveals new facts that, taken as true, render some aspect of the defendant's prior statement false or misleading." *Id.* at *7; *see also In re BofI Holding*, 977 F.3d at 790. The Ninth Circuit takes "a flexible approach" in evaluating loss causation, and considers where an alleged revelation "contains enough information to significantly undermine the allegedly false misrepresentation." *Genius*, 97 F.4th at 1184.

Here, the undisclosed risks and concealed truths concerning conditions at Proterra and their business strategy began to materialize on March 15, 2023, when Proterra announced that it not only experienced disappointing earnings for Q4 2022, but also that it planned to seek additional financing,

38

Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss
Case No. 3:23-cv-03519-RFL

thus starting to reveal the truth about Proterra's poor financial condition and the management missteps hidden from investors since 2021. ¶518. In response to this disclosure, Proterra's stock price dropped by nearly 53% of its value. ¶519. Then, after hours on August 7, 2023, Proterra announced bankruptcy, and in response, its stock price dropped more than 88%. ¶524. Market analysts covering the Company directly cited the risks and problems underlying the alleged misstatements that Proterra Defendants had previously kept hidden. ¶¶529-30. Similar disclosures, through the materialization of concealed risks and revelation of the impacts of problems concealed from investors, have been held to satisfy the liberal loss causation pleading standard. *See*, *e.g.*, *Livid Holdings Ltd.*, 416 F.3d at 949 (holding that the disclosure of a bankruptcy satisfied loss causation because it informed investors that liquidity was insufficient); *Poetic License Cap., Inc. v. Ebrahim*, 2024 WL 97370, at *7 (D. Mont. Jan. 9, 2024) (same); *Schechter v. Smith*, 2011 WL 13174954, at *24 (C.D. Cal. Dec. 6, 2011) (same); *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016) (similar).

Proterra Defendants concede that the Complaint alleges these price declines and identifies the alleged corrective disclosures. Proterra Mem. at 21-22. Thus, they cannot dispute that the Complaint provides them with "some indication of the loss and the causal connection that the plaintiff has in mind," which is all that is required. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Nevertheless, Proterra Defendants falsely claim that Proterra's March 15, 2023 and August 7, 2023 disclosures did not reveal any new information to the market. Proterra Mem. at 21-22. This "truth-on-the-market" defense is premature at the pleading stage, *In re Amgen Inc., Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008), and is also factually incorrect.

Proterra's March 15, 2023 announcement revealed, for the first time (i) a net loss of $81 million and increased expenses and cash burn – all the result of policies Proterra Defendants previously touted without informing investors of their risks; (ii) the unreliability of the Company's backlog as a metric for future growth – which they misrepresented to investors throughout the 10(b) Class Period; (iii) that the Company was already at risk of not being able to satisfy a minimum liquidity covenant, which would result in a default under its debt agreements, as well as being at risk of being in default under its Convertible Notes – all materializations of the risks that Proterra Defendants hid from investors.

¶¶357-63.[21] Likewise, Proterra's August 7, 2023 bankruptcy announcement tied the filing to many of the risks that Proterra Defendants previously concealed, including the unprofitable nature of Transit's production and customization processes, the structural unprofitability of long-term Transit contracts, the strain on Transit caused by the diversion of resources to Powered and Energy. ¶417.[22] In response to this disclosure, Proterra's stock price dropped precipitously. ¶¶364, 519, 524. "[T]hese subsequent stock drops after [Proterra's] disclosures of adverse facts [are] adequate to plead loss causation." *Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031, at \*7 (N.D. Cal. Mar. 25, 2021) (collecting cases); *see also In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at \*1 (9th Cir. June 23, 2010). Any further determination about whether loss causation is established "is better addressed at trial and not on a Rule 12(b)(6) motion to dismiss." *Garcia v. Hetong Guo*, 2016 WL 102213, at \*11 (C.D. Cal. Jan. 7, 2016).

## V.　　The Complaint Adequately Pleads Liability Under Section 20(a) of the Exchange Act

The Complaint adequately pleads the Proterra Defendants are secondarily liable under Section 20(a) of the Exchange Act for the primary 10(b) violations. *See Khoja*, 899 F.3d at 1018. Because the primary violation is adequately alleged, *see* Section IV, and Defendants challenge this claim only as to the underlying primary violation, *see* Proterra Mem. at 23, Plaintiffs' Section 20(a) claim must be sustained. They cannot now contest this point. *See Romm*, 455 F.3d at 997.

## CONCLUSION

For the above reasons, Defendants' motions to dismiss should be denied in their entirety. In the alternative, Plaintiffs respectfully request leave to amend. *See Osher v. JNI Corp.*, 183 Fed. App'x. 604, 605 (9th Cir. 2006).

---

[21] These revelations distinguish this Action from Proterra Defendants' cited cases. *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022) (failure of one drug trial did not reveal fraud about statements made about a different drug trial); *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 773 (N.D. Cal. 2020) (no substantiated allegations that press release revealed fraudulent misstatements); *Rok v. Identiv, Inc.*, 2017 WL 35496, at \*18 (N.D. Cal. Jan. 4, 2017) (applying the incorrect *Metzler* standard, no prior fraud revealed by disclosure).

[22] This stands in stark contrast to Proterra Defendants' authority, where poor financial results did not reveal any information from which the fraud could be inferred. *See Loos v. Immersion Corp.*, 762 F.3d 880, 888 (9th Cir. 2014); *D.E.&J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1001 (6th Cir. 2005).

40

Dated:  May 20, 2024

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By /s/ *Adam M. Apton*
Adam M. Apton (SBN 316506)
Devyn R. Glass (*pro hac vice* forthcoming)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com
        dglass@zlk.com

*Lead Counsel for Plaintiffs and the Class*

**POMERANTZ LLP**
Joshua Silverman
(admitted *pro hac vice*)
Christopher Tourek
(admitted *pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Emails: jbsilverman@pomlaw.com
        ctourek@pomlaw.com

*Additional Counsel for Plaintiffs*

41