ROPES & GRAY LLP
Amy Jane Longo (CA Bar No. 198304)
ROPES & GRAY LLP
10250 Constellation Boulevard, 21st Floor
Los Angeles, California  90067-6257
amy.longo@ropesgray.com

*Attorney for Defendants John Erhard, Daniel Revers,*
*Marco Gatti, Arno Harris, Ja-Chin Audrey Lee,*
*Brian Goncher, and Steven Berkenfeld*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JEREMY VILLANUEVA, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff*s,<br><br>    v.<br><br>GARETH T. JOYCE, KARINA FRANCO PADILLA, et al.,<br><br>*Defendants*. | Lead Case No. 23-cv-3519-RFL<br>Case No. 23-cv-4528-BLF<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE ACTC DIRECTORS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT**<br><br>Hearing Date: July 30, 2024<br>Time:  10:00 a.m.<br>Place:  Courtroom 15<br>Judge:  Hon. Rita F. Lin |

ACTC DIRECTORS' REPLY IN SUPPROT OF MOT. TO DISMISS CASE NO.:  23-CV-03519-RFL

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    PLAINTIFFS LACK STANDING TO ASSERT A SECTION 11 CLAIM ...................... 2

II.   PLAINTIFFS DO NOT ALLEGE ANY ACTIONABLE MISSTATEMENTS .............. 4

III.  THE DUE DILIGENCE DEFENSE APPLIES ............................................................... 9

IV.   PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM ............................................ 10

CONCLUSION ............................................................................................................................ 10

ACTC DIRECTORS' REPLY IN SUPPROT OF MOT. TO DISMISS CASE NO.:  23-CV-03519-RFL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berson* v. *Applied Signal Tech, Inc*.
    527 F.3d 982 (9th Cir. 2008) ...................................................................................................6

*Brody* v. *Trans. Hosp. Corp*.,
    280 F.3d 997 (9th Cir. 2002) ...............................................................................................6, 8

*In re Century Aluminum Co. Sec. Litig*.,
    729 F.3d 1104 (9th Cir. 2013) .........................................................................................1, 2, 4

*In re CytRx Corp. Sec. Litig*.,
    2015 WL 5031232 (C.D. Cal. July 13, 2015) ........................................................................10

*In re Dropbox Sec. Litig*.,
    2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ..........................................................................5

*Felipe* v. *Playstudios Inc*.,
    2024 WL 1380802 (D. Nev. Mar. 31, 2024) .............................................................................9

*Feyko* v. *Yuhe Int'l, Inc*.,
    2013 WL 3467067 (C.D. Cal. July 10, 2013) .........................................................................10

*Hedick* v. *Kraft Heinz Co*.,
    2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...........................................................................7

*Hoang* v. *ContextLogic, Inc*.,
    2023 WL 8879263 (N.D. Cal. Dec. 22, 2023) ..........................................................................9

*Irving Firemen's Relief & Ret. Fund* v. *Uber Techs*.,
    2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) ..........................................................................8

*Jui-Yang Hong* v. *Extreme Networks*,
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ..........................................................................5

*Katz* v. *Gerardi*,
    655 F.3d 1212 (10th Cir. 2011) ..........................................................................................3, 4

*Mehedi* v. *View*,
    2023 WL 3592098 (N.D. Cal. May 22, 2023) .......................................................................1, 4

*Michalski* v. *Weber Inc*.,
    2023 WL 6290491 (N.D. Ill. Sept. 27, 2023) ..........................................................................8

*Mulligan* v. *Impax Lab'ys, Inc*.,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) .......................................................................................7

-iii-

*Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175, 135 S. Ct. 1318 (2015)....................................................................................5, 7

*In re Riskified Ltd. Sec. Litig.*,
2023 WL 3691653 (S.D.N.Y. June 2, 2023) ...........................................................................8

*Schueneman* v. *Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ...................................................................................................6

*Thomas* v. *Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................................................................3

*Waswick* v. *Torrid Holdings, Inc.*,
2023 WL 9197563 (C.D. Cal. Dec. 1, 2023) ...........................................................................8

*West* v. *Ehealth, Inc.*,
2016 WL 948116 (N.D. Cal. Mar. 14, 2016)............................................................................5

*Weston Fam. P'ship LLP* v. *Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ...................................................................................................8

*In re Wilmington Trust Co. Sec. Litig.*,
852 F. Supp. 2d 477 (D. Del. 2012)........................................................................................5

**INTRODUCTION**

Plaintiffs' Opposition (ECF No. 100 ("Opp.")) does not overcome any of the multiple, independent deficiencies in the Amended Consolidated Complaint (ECF No. 83 ("ACC")) identified in the ACTC Directors' Motion to Dismiss (ECF No. 93 ("Mot.")).

*First*, the Opposition confirms that Plaintiffs have no Section 11 standing because they cannot "plead and prove"—as they must—that their purchases are traceable to the challenged de-SPAC Registration Statement rather than to other registration statements that are not challenged. The Ninth Circuit in *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) made clear that plaintiffs face an "often impossible" challenge with traceability when there are multiple registration statements at issue. The only case in this District applying this Ninth Circuit law to a de-SPAC transaction is *Mehedi* v. *View*, 2023 WL 3592098 (N.D. Cal. May 22, 2023). *Mehedi* is on-point and when properly applied compels dismissal here. Plaintiffs' Opposition conspicuously avoids engaging with *Mehedi* but implies the case is distinguishable on the basis of certain supposedly unique but unspecified transaction mechanics. This does not change the fact that the ACC's conclusory allegations as to traceability in this case are substantively identical to those in *Mehedi*, which means the Court should dismiss the Section 11 claims. The dismissal should be with prejudice because Plaintiffs have already had an opportunity to amend to address traceability (*see* ECF No. 77; Mot. at 8) and because their Opposition does not identify any facts that could cure this defect.

*Second*, even if Plaintiffs had standing (they do not), they fail to state a claim because none of the challenged statements is false or misleading. Plaintiffs' arguments to the contrary depend on their self-serving distortions of the challenged statements: Plaintiffs claim that the statements say something they do not, and then claim that their invented interpretation is "false." The Opposition also confirms that Plaintiffs' "misrepresentations by omissions" theory—relied upon for almost all of the challenged statements—depends on Plaintiffs' expansive interpretation of the challenged statements in order to allow Plaintiffs to then claim that any tangentially related claimed issue was misleadingly omitted from the discussion. That is inconsistent with securities

disclosure requirements and the body of case law interpreting them. The Item 105 and 303 claims fail for the same reason.

*Finally*, based on the extensive due diligence detailed in the ACC, the due diligence defense applies as a matter of law.

## ARGUMENT

## I.     PLAINTIFFS LACK STANDING TO ASSERT A SECTION 11 CLAIM

The Opposition confirms that none of the Section 11 named Plaintiffs (Tirado, Zinn, and Quick) has standing to assert such a claim because none can trace their purchases to the challenged Registration Statement. "[W]hen a company has issued shares under more than one registration statement, the plaintiff must prove that her shares were issued under the allegedly false or misleading registration statement, rather than some other registration statement." *In re Century Aluminum*, 729 F.3d at 1106. Here, shares were issued under at least three different registration statements: (i) The SPAC Registration Statement, which registered the initial offering of the SPAC's shares when it went public, (ii) the de-SPAC Registration Statement, which cancelled any ACTC shares that were not redeemed prior to the merger and exchanged them for Proterra shares, and (iii) the Public Investment in Private Equity ("PIPE") Registration Statement, which registered additional PIPE shares. (*See* ACC ¶¶ 99, 115-22; Opp. at 9.) Plaintiffs' Section 11 claim is based solely on the de-SPAC Registration Statement. (ACC ¶ 1.) They must therefore "prove that the shares they purchased came from the pool of shares issued in [that] offering, rather than from the pool of previously issued shares." *See In re Century Aluminum*, 729 F.3d at 1106. Tracing shares in this fashion is "often impossible," and conclusory allegations that purchases are traceable will not suffice. *Id.* at 1107. Plaintiffs "must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation"—they must instead "allege[ ] facts which, accepted as true, tend[ ] to exclude the possibility that the defendants'" competing explanation is correct. *Id*. at 1105.

Following the de-SPAC transaction on June 15, 2021, there were 207.3 million shares of common stock outstanding, disaggregated as follows: 123.8 million shares held by Legacy Proterra

-2-

investors, 27.7 million ArcLight shares that were converted to Proterra shares during the transaction, 41.5 million Public Investment in Private Equity ("PIPE") shares, and 6.9 million sponsor shares. (ECF No. 96-2 at 123.)  Plaintiffs Zinn and Tirado purchased their only shares on July 14 and August 23, 2021 respectively—*after* the 41.5 million PIPE shares were registered by the PIPE Registration Statement, which is *not* alleged to be defective.  (*See* ACC ¶¶ 19-20; ECF No. 1-2 at 1; ECF No. 73-1 at 3.)  Plaintiffs' conclusory assertions that Tirado and Zinn "purchased and/or acquired Proterra common stock pursuant and/or traceable to the Defective Registration Statement" (ACC ¶¶ 19-20) are thus deficient (*see* Mot. at 6-8 (citing *In re Century Aluminum*)) because the "obvious alternative explanation is that [Plaintiffs' shares] could instead have come from the pool of previously issued shares" and their allegations are nothing more than "merely consistent with" their shares being traceable to the de-SPAC Registration Statement.  *Thomas* v. *Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1055 (N.D. Cal. 2016).  Standing under the Securities Act requires more.  (*See* Mot. at 6-8 (collecting cases).)

The third and final Section 11 Plaintiff, Plaintiff Quick, (i) purchased five shares on June 15, 2021; (ii) "acquired" though an "exchange" 1600 shares on June 16, 2021; and (iii) purchased an additional 6389 shares at later dates.  (ECF No. 83-1 at 2-3; ACC ¶¶ 21; Opp. at 9.)  None of these transactions is sufficient to confer standing.  As a threshold matter, the final tranche of 6389 shares at later dates suffers from the same issue that deprive Tirado and Zinn of Section 11 standing:  Quick has not—and cannot—adequately plead that those shares were issued pursuant to the challenged de-SPAC Registration Statement rather than from the 41.5 million PIPE shares registered pursuant to the July 9 PIPE Registration Statement that Plaintiffs do not allege was defective.  The first two tranches fare no better.  With respect to the 1600 shares that Quick "acquired" on June 16, Plaintiffs ignore the important distinction between shares *purchased* pursuant to one registration statement and shares that are merely *exchanged* or *converted* following their initial registration pursuant to an earlier registration statement.  The Tenth Circuit in *Katz* v. *Gerardi*, 655 F.3d 1212, 1220-21 (10th Cir. 2011) held that this distinction is critical for purposes of Section 11 standing because "[t]he scope of the Securities Act of 1933 is limited . . . its investor-

protection reach extends only to purchasers (and not sellers) of securities." *Id.* at 1220. In such situations, an investor who elects to convert his shares is properly thought of as a "seller, not a purchaser," and because "[i]t is clear only purchasers of securities may assert claims under §§ 11 and 12(a)(2) of the 1933 Act," such an investor "lacks standing to bring his claims under the 1933 Act." *Id.* at 1220. For the same reason, the five shares Plaintiff Quick purchased on June 15 are incapable of being traced to a purchase pursuant to the challenged Registration Statement rather than simply to a "conversion" of already-issued and outstanding shares prior to the de-SPAC Registration Statement.

As explained in the ACTC Directors' Motion, this Court recently dismissed Section 11 claims in a de-SPAC transaction under circumstances almost identical to those presented here. (*See* Mot. at 6-8.) Rather than meaningfully engage with the *Mehedi* decision, Plaintiffs simply announce that it is distinguishable without explaining why. (*See* Opp. at 9-10.) The Court should dismiss Plaintiffs' Section 11 claims consistent with *Mehedi*, the only case in this District to have addressed this issue and to apply *In re Century Aluminum* to the context of a SPAC and de-SPAC transaction. (*See* Mot. at 7-8.)

## II.    PLAINTIFFS DO NOT ALLEGE ANY ACTIONABLE MISSTATEMENTS

Whether under Rule 8 or Rule 9(b), Plaintiffs fail to plausibly allege any actionable misstatements.

***Statements 1-3 (Proterra's Bus Body Design and Manufacturing Processes) Are Inactionable***. Plaintiffs complain that Statements 1-3 were (i) false, because Proterra's use of a solid, composite bus body design was not a "competitive strength," and (ii) misleading, because the statements did not disclose a laundry list of risks and uncertainties that Plaintiffs claim, with the benefit of hindsight, should have been disclosed. (Opp. at 14-15; ACC ¶¶ 189, 191, 201.) Neither assertion is accurate. Statements 1 and 2 did not falsely claim that Proterra's bus body design was a "competitive strength"—they made no such claim at all. The Statements simply described Proterra's bus body design with reference to the designs used by "other manufacturers," *see* ACC ¶ 189 ("While other manufacturers use a modified steel body and frame . . . we have

-4-

partnered with a supplier to architect a lighter weight bus body with advanced materials"), and explained to investors why that design choice was made ("[to] optimize[] mass, stiffness, and durability"). Plaintiffs do not allege that either of those statements was objectively false, and their distorted self-serving interpretation should be rejected. *See Jui-Yang Hong* v. *Extreme Networks*, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017) (rejecting falsity allegations where "the reasons Plaintiffs offer[ed] as to why the statements [we]re false or misleading b[o]re no connection to the substance of the statements themselves"); *see also West* v. *Ehealth, Inc.,* No. 3:15-CV-00360-JD, 2016 WL 948116, at *5 (N.D. Cal. Mar. 14, 2016) ("The Court will not accept interpretations of the statements that are taken out of context and are not plausible on its face.")

The remainder of Plaintiffs' arguments with respect to Statements 1-3 are based on a "misrepresentation by omission" theory that ignores and is inconsistent with the relevant case law. "For Plaintiffs to state an omission-based Section 11 claim, it is not enough that the Registration Statement omitted relevant or material facts. . . . Instead an omission must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *In re Dropbox Sec. Litig.*, No. 19-CV-06348-BLF, 2020 WL 6161502, at *6 (N.D. Cal. Oct. 21, 2020). On their face, Statements 1-3 did no such thing: Statement 1 accurately reported Proterra's approach to its bus body design relative to those employed by other manufacturers; Statement 2 explained why that design choice was made; and Statement 3 warned investors of the specific defects Proterra was then experiencing and which may in the future "materially impact[]" Proterra's business. (ACC ¶¶ 189, 191, 201.) That Statements 1-3 did not also describe Plaintiffs' scattershot collection of tangentially related issues (Opp. at 14-15) does not provide a basis for Section 11 liability. *See, e.g.*, *In re Wilmington Trust Co. Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012) (rejecting Section 11 claim where complaint did not "specifically identif[y] the reason or reasons why each statement is false or misleading [and] [i]nstead . . . direct[ed] the court to a laundry list of reasons why a statement could be untrue.").[1]

---

[1]     *See also Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186, 194, 135 S. Ct. 1318, 1327, 1332 (2015) (Section 11 has "no[] [] general disclosure

ACTC DIRECTORS' REPLY IN SUPPORT OF MOT. TO DISMISS CASE NO.:  23-CV-03519-RFL

Plaintiffs' reliance on the Ninth Circuit's decision in *Schueneman* (Opp. at 10, 13-14) is misplaced.  In that case, a pharmaceutical company made statements to investors that it was confident a drug it was then developing would receive regulatory approval and that the drug's long-term safety and efficacy (and thus likelihood of approval) had been "demonstrated" through "long-term studies," even though the drug had already been flagged by the FDA for enhanced scrutiny and despite negative testing results that revealed serious safety concerns.  *Schueneman* v. *Arena Pharms., Inc*., 840 F.3d 698, 701-04 (9th Cir. 2016).  *Schueneman* thus involved an affirmative representation that omitted directly contradictory facts about the very core of the challenged statement.  Even there, though, the Ninth Circuit acknowledged that the defendants there "may not have had a duty to disclose the [negative test results] had they not been representing that . . . studies supported [the drug's] safety and therefore its likelihood of being approved." *Schueneman*, 840 F.3d at 707.  That is precisely the situation here.  Plaintiffs allege nothing more than allegedly omitted facts that are untethered to the subject matter the challenged statements actually address.  (*See* Opp. at 14-16.)[2]  Proterra thus had no duty to disclose that its modular bus body design resulted in higher production costs, required more labor hours, placed the company at risk of delays, or exposed it to increased warranty and repair costs, because the statements did not make any representations about those alleged issues.  *See Brody* v. *Trans. Hosp. Corp*., 280 F.3d 997, 1006 (9th Cir. 2002) (press release not misleading where it "neither stated nor implied anything" about the allegedly omitted information).

***Statements 4-5 (Supply Chain) Are Inactionable***.  As explained in the ACTC Directors' Motion (pp. 11-12), Statements 4 and 5 are inactionable statements of opinion because they refer to Proterra's  "belie[f]" that it "obtain[s] systems, components, raw materials, parts, manufacturing equipment, and other supplies from suppliers that [Proterra] believes to be reputable and reliable"

---

requirement" and "affords a cause of action only when an issuer's failure to include a material fact has rendered a published statement misleading.").

[2]    *Berson* v. *Applied Signal Tech, Inc*. 527 F.3d 982, 985 (9th Cir. 2008) (Opp. at 11-13) is even further afield.  Unlike in *Berson*, where the defendant company included as part of its "backlog" certain work that was actually indefinitely halted, Plaintiffs here have pled no particularized facts to plausibly identify a misrepresentation of the sort involved in *Berson*.

-6-

(ACC ¶ 192) and to Proterra's "belie[f]" that it "will be able to secure additional or alternate sources or develop [its] own replacements for many of [its] components [if necessary]" (*id.*).

None of the cases Plaintiffs rely on in their Opposition is applicable. First, *Hedick* is a Northern District of Illinois case which undermines Plaintiffs' own argument (Opp. at 17) because the Court there explicitly recognized that certain of the alleged opinion statements were not "expressions of subjective belief" because they "lack[ed] anything like the characteristic phrasing, such as 'I think' or 'We believe.'" *Hedick* v. *Kraft Heinz Co.*, No. 19-CV-1339, 2021 WL 3566602, at *9 (N.D. Ill. Aug. 11, 2021). Here, by contrast, the alleged misstatements were prefaced by exactly those "characteristic phras[es]" that courts routinely find to be inactionable statements of opinion. *See Omnicare*, 575 U.S. at 188. Second, in *Mulligan*, also cited by Plaintiffs, the purported opinion statements were actually alleged to be affirmative misrepresentations claiming that defendants had responded to an FDA Warning Letter by instituting various changes to their internal processes ("We . . . have already begun to implement changes and establish procedures that address the observations cited during the inspection . . . Many commitments in our responses are nearing completion as a result of our work since we received the [FDA warning]"). *Mulligan* v. *Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014). Those are nothing like the explicit opinion statements Proterra made concerning its "beliefs" about its supply chain and manufacturing sourcing. Finally, Plaintiffs ignore entirely the Supreme Court's guidance in *Omnicare* explaining that a plaintiff fails to contest that a challenged "opinion was honestly held" when—as here—Plaintiffs allege that their Section 11 claims are not "based on any knowing or deliberately reckless misconduct," do not "sound in fraud," and "expressly disclaim" any "allegations of fraud or intentional misconduct in connection with these non-fraud claims" (ACC ¶ 176). (*See* Mot. at 11 (citing *Omnicare*, 575 U.S. at 186, 135 S.Ct. at 1327).)

**Statement 6 (Manufacturing Facilities) Is Inactionable**. Statement 6 is inactionable for the same reasons as Statements 1-3. Plaintiffs allege that Statement 6 was misleading because it failed to disclose alleged cost or production inefficiencies relative to Proterra's other facilities. As explained in the ACTC Directors' Motion (pp. 12-13) and above, that claim fails because

-7-

Statement 6 has nothing to do with labor or production costs or inefficiencies, nor with Proterra's Greenville facility, and therefore could not have "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists" because it did not mention those topics. *Brody* v. *Trans. Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (press release not misleading where it "neither stated nor implied anything" about the allegedly omitted information); *see Weston Fam. P'ship LLP* v. *Twitter, Inc.*, 29 F.4th 611, 615 (9th Cir. 2022) (the securities laws "do not require . . . complete disclosure of all material information whenever a company speaks on a particular topic.").

***Statement 7 (COVID-19) Is Inactionable***. Plaintiffs allege that Statement 7 was misleading because it "factually misstated that COVID-19 had a 'limited' impact on Proterrra's business, when it had at the time caused known supply chain constraints and inflationary pressures that impacted the Company's gross margins." (Opp. at 17.) But as explained in the ACTC Directors' Motion, that argument ignores that Proterra provided extensive risk warnings on these very same issues (ACC ¶¶ 196, 199), and courts in this Circuit and elsewhere have rejected claims arising out of similar statements concerning the pandemic. *E.g.*, *Waswick* v. *Torrid Holdings, Inc.*, 2023 WL 9197563, at *8 (C.D. Cal. Dec. 1, 2023) (statement that company "has shown resiliency during COVID . . . [and] demonstrated an agile response to COVID" found inactionable).[3]

---

[3]     *See also In re Riskified Ltd. Sec. Litig.*, No. 22-CV-3545, 2023 WL 3691653 at *11 (S.D.N.Y. June 2, 2023) (challenged statement inactionable where it noted that "despite the growth opportunity caused by the shift to eCommerce brought on by COVID-19, certain sectors, including travel, from which Riskified had traditionally derived significant revenue, [were] hurt by the pandemic, and the recovery of those sectors was uncertain" because "when read in context, a reasonable investor would not have interpreted the statements about COVID-19 in the Registration Statement to imply that easing COVID-19 restrictions would have only a positive impact on Riskified's business"); *Michalski* v. *Weber Inc.*, No. 1:22-cv-3966, 2023 WL 6290491 (N.D. Ill. Sept. 27, 2023) (pandemic-related statement that "laid out how both the opportunities and [] challenges of the [] pandemic had affected the company's . . . results and made clear that the post-pandemic market . . . was uncertain" held inactionable); *Irving Firemen's Relief & Ret. Fund* v. *Uber Techs.*, No. 17-cv-05558, 2018 WL 4181954, at *5 (N.D. Cal. Aug. 31, 2018) (holding statement "our business remains healthy and resilient" is "not objectively verifiable" and therefore inactionable).

ACTC DIRECTORS' REPLY IN SUPPORT OF MOT. TO DISMISS CASE NO.:  23-CV-03519-RFL

***The Registration Statement Did Not Violate Regulation S-K***. Plaintiffs' Item 105 and 303 claims fail because the relevant complained-of risks and uncertainties were in fact disclosed (*see* Mot. at 10-12, 14) and because their reliance on a smattering of CW statements (all from Proterra rather than ACTC employees) does not change the fact that they still fail to allege any persistent trend that existed prior to the de-SPAC. (Mot. at 14.) Plaintiffs' authorities are all distinguishable. *Felipe* involved a video game company that made optimistic statements about its forthcoming release of a new game only to then wildly miss its projections shortly thereafter. Those projections were allegedly based on financial information known at the time of the challenged statements and thus had at that point already materialized. *Felipe* v. *Playstudios Inc.*, 2024 WL 1380802, at *13 (D. Nev. Mar. 31, 2024). Plaintiffs' scattershot collection of CW statements here are nowhere near as particularized. In *Hoang*, the Court found that the complaint adequately alleged an Item 105 claim where defendants allegedly failed to adequately disclose that their reduced advertising spend and efforts to acquire users in emerging markets could cause a material adverse impact to the company's performance where, at the time of the disclosure, the company had actively shifted resources away from those efforts and thus knew that that decision would negatively impact performance. *See Hoang* v. *ContextLogic, Inc.*, No. 21-CV-03930-BLF, 2023 WL 8879263, at *15 (N.D. Cal. Dec. 22, 2023). Here, by contrast, and as explained in the ACTC Directors' Motion (pp. 14-15), the challenged Registration Statement contained robust disclosures, including about Proterra's reliance on single-source suppliers, its highly specialized bus body design, supply chain constraints, and the potential impact of COVID-19.

## III.    THE DUE DILIGENCE DEFENSE APPLIES

Plaintiffs blithely announce that the ACTC Directors' due diligence defense (*see* Mot. at 15) is "implausible on its face" because "if these Defendants were even remotely diligent, they never would have signed off on the false and misleading statements in the Registration Statement." (Opp. at 19; *see also* ACC ¶ 549 (making similar claim).)[4] That circular statement ignores the extensive

---

[4]    The Opposition also misleadingly claims that the ACC "does not concede adequate due diligence, but instead cites the Registration Statement's ***false*** assertion of due diligence." (Opp. at 19 (emphasis in original).) That is simply not true: Plaintiffs' 200-page ACC nowhere alleges

-9-

due diligence detailed in the ACC, and Plaintiffs' authorities (Opp. at 19) are easily distinguishable for the same reason because they stand solely for the proposition that "reli[ance] on management's assurances . . . is insufficient to establish a due diligence."  *In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *16-17 (C.D. Cal. July 13, 2015); *see also Feyko* v. *Yuhe Int'l, Inc.*, 2013 WL 3467067, at *4 (C.D. Cal. July 10, 2013) (similar).  Here, as Plaintiffs themselves admit, the ACTC Directors relied not only on "management's assurances" but also on their own extensive due diligence (ACC ¶¶ 179-81, 183, 185-86) as well as that of Proterra's financial advisors (ACC ¶¶ 182, 185) and the independent technological consultant the Directors retained to investigate Proterra's battery design, reliability, and supplier qualifications (ACC ¶ 185).  (*See also* Mot. at 15.)

## IV.   PLAINTIFFS FAIL TO STATE A SECTION 15 CLAIM

Plaintiffs' Section 15 claim should also be dismissed because they fail to adequately plead a violation of Section 11.  (*See* Mot. at 15 (citing *Golubowski*, 2023 WL 1927616, at *10).)

## CONCLUSION

For the reasons set forth herein and in the ACTC's Directors' Motion, Plaintiffs' Section 11 and Section 15 claims should be dismissed with prejudice.

---

that the extensive due diligence undertaken by the ACTC Directors was false (*see* ACC ¶¶ 178-87).  Only one of its nearly 600 paragraphs of allegations offers the formulaic assertion that "[i]n the exercise of reasonable care, [the ACTC Directors] should have known of the material misstatements and omissions" alleged in the Complaint (ACC ¶ 549; *see also id.* ¶¶ 176, 187).  That cannot be enough.

-10-

Dated:  June 20, 2024

/s/ *Amy Jane Longo*

Amy Jane Longo
ROPES & GRAY LLP
10250 Constellation Boulevard, 21st Floor
Los Angeles, California  90067
Telephone:  (310) 975-3300
Facsimile:  (310) 975-3400
amy.longo@ropesgray.com

Matthew L. McGinnis (*pro hac vice*)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts  02199
Telephone:  (617) 951-7000
Facsimile:  (617) 951-7050
matthew.mcginnis@ropesgray.com

*Attorneys for Defendants John Erhard, Daniel Revers, Marco Gatti, Arno Harris, Ja-Chin Audrey Lee, Brian Goncher, and Steven Berkenfeld*

ACTC DIRECTORS' REPLY IN SUPPORT OF MOT. TO DISMISS CASE NO.:  23-CV-03519-RFL