**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: 650-815-4100

Victor L. Hou (Admitted *Pro Hac Vice*)
vhou@cgsh.com
Jared Gerber (Admitted *Pro Hac Vice*)
jgerber@cgsh.com
Sabrina Singer (Admitted *Pro Hac Vice*)
ssinger@cgsh.com
One Liberty Plaza
New York, NY 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JEREMY VILLANUEVA, Individually and On Behalf of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GARETH T. JOYCE, KARINA FRANCO PADILLA, AMY E. ARD, JOHN J. ALLEN, ANDREW J. CEDEROTH, JOHN F. ERHARD, BROOK F. PORTER, JOAN ROBINSON-BERRY, JEANNINE P. SARGENT, CONSTANCE E. SKIDMORE, MICHAEL D. SMITH, DANIEL R. REVERS, MARCO F. GATTI, ARNO HARRIS, JA-CHIN AUDREY LEE, BRIAN GONCHER, and STEVEN BERKENFELD,<br><br>Defendants. | Case No. 3:23-cv-03519-RFL<br><br>**PROTERRA DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br><br><br>Hearing: July 30, 2024<br>Time: 10:00 am<br>San Francisco, Courtroom 15<br>Before Hon. Rita F. Lin |

PROTERRA DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
Case No. 3:23-cv-03519-RFL

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

I.    THE OPPOSITION CONFIRMS THE SAC IS A PUZZLE
      PLEADING ............................................................................................................................. 1

II.   THE OPPOSITION DOES NOT SALVAGE THE EXCHANGE
      ACT CLAIMS ........................................................................................................................ 2

      A.    Plaintiffs Fail to Allege Any Misstatements or Omissions
            with Particularity ......................................................................................................... 2

      B.    The Opposition Does Not Establish Scienter ............................................................... 6

      C.    The Opposition Does Not Meaningfully Address the
            Proterra Defendants' Loss Causation Arguments ...................................................... 11

III.  THE OPPOSITION DOES NOT SAVE THE SECURITIES ACT
      CLAIMS ............................................................................................................................... 12

CONCLUSION .............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berson v. Applied Signal Tech, Inc.*,
527 F.3d 982 (9th Cir. 2008) ........................................................................................... 13

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ............................................................................ 7

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................................... 11

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
527 F. Supp. 3d 1151 (N.D. Cal. 2021) ....................................................................... 8, 11

*Espy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024) ..................................................................................... 3, 8, 12

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) .................................................................. 1, 5

*Gabelli Asset Fund v. Garrett Motion Inc.*,
2024 WL 1653451 (2d Cir. Apr. 17, 2024) ...................................................................... 9

*Hsingching Hsu v. Puma Biotech., Inc.*,
2017 WL 3205774 (C.D. Cal. July 25, 2017) ................................................................... 5

*In re Apple Computer, Inc., Sec. Litig.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002) ............................................................................ 7

*In re Aqua Metals, Inc. Sec. Litig.*,
2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) .................................................................. 2

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) .............................................................................. 1

*In re Cisco Sys. Inc. Sec. Litig.*,
2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) .................................................................. 1

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................................................ 1

*In re Eargo, Inc. Sec. Litig.*,
656 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................................ 9

*In re Extreme Networks, Inc. Sec. Litig.*,
2018 WL 1411128 (N.D. Cal. Mar 21, 2018) ..................................................................... 3

*In re Intuitive Surgical Sec. Litig.*,
65 F. Supp. 3d 821 (N.D. Cal. 2014) ................................................................................. 1

*In re Plantronics, Inc. Sec. Litig.*,
2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) .................................................................. 9

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ........................................................................................... 3

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ....................................................................... 1, 13

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ............................................................................... 9

*In re Velti PLC Sec. Litig.*,
2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) .................................................................... 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ......................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 3058563 (N.D. Cal. July 19, 2017) ................................................................... 5

*In re WageWorks, Inc., Sec. Litig.*,
2020 WL 2896547 (N.D. Cal. June 1, 2020) .................................................................... 9

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) .................................................................. 4

*Kang v. PayPal Holdings, Inc.*,
620 F. Supp. 3d 884 (N.D. Cal. 2022) .............................................................................. 8

*Killyoung Oh v. Hanmi Fin. Corp.*,
2021 WL 1566849 (C.D. Cal. Mar. 17, 2021) .................................................................. 2

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005) ................................................................................... 6–7

*Lattanzio v. Deloitte & Touche LLP,*
476 F.3d 147 (2d Cir. 2007)...................................................................................... 11–12

*Lipton v. Pathogenesis Corp.,*
284 F.3d 1027 (9th Cir. 2002)..................................................................................... 8, 15

*Macquarie Infrastructure Corp., v. Moab Partners, L.P.,*
601 U.S. 257 (2024) ................................................................................................... 4

*McGlinchy v. Shell Chem. Co.,*
845 F.2d 802 (9th Cir. 1988) ...................................................................................... 15

*Mehedi v. View, Inc.,*
2023 WL 3592098 (N.D. Cal. May 22, 2023) ............................................................ 13

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.,*
79 F.4th 1209 (10th Cir. 2023) ................................................................................... 7

*Mendoza v. HF Foods Grp. Inc.,*
2021 WL 3772850 (C.D. Cal. Aug. 25, 2021)............................................................. 2

*Motul S.A. v. USA Wholesale Lubricant, Inc.,*
686 F. Supp. 3d 900 (N.D. Cal. 2023) ........................................................................ 12–13

*Mulligan v. Impax Lab'ys, Inc.,*
36 F. Supp. 3d 942 (N.D. Cal. 2014) .......................................................................... 5, 14

*Nat'l Elevator Indus. Pension Fund v. Flex Ltd.,*
2021 WL 6101391 (9th Cir. Dec. 21, 2021) ............................................................... 7

*Ng v. Berkeley Lights, Inc.,*
2024 WL 695699 (N.D. Cal. Feb. 20, 2024) .............................................................. 10

*Nguyen v. Endologix, Inc.,*
962 F.3d 405 (9th Cir. 2020)....................................................................................... 2

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.,*
2018 WL 3126393 (N.D. Cal. June 26, 2018) ............................................................ 10

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First
Solar Inc.,*
2023 WL 4161355 (D. Ariz. June 23, 2023) .............................................................. 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,*
759 F.3d 1051 (9th Cir. 2014)..................................................................................... 4, 10

*Roberts v. Zuora*,
2020 WL 204224 (N.D. Cal. Apr. 28, 2020) ........................................................................... 6

*Scheller v. Nutanix, Inc.*,
2020 WL 5500422 (N.D. Cal. Sept. 11, 2020) ........................................................................ 8

*Schueneman v. Arena Pharms, Inc.*,
840 F.3d 698, 707 (9th Cir. 2016).................................................................................... 13–14

*Sgarlata v. PayPal Holdings, Inc.*,
409 F. Supp. 3d 846 (N.D. Cal. 2019) ................................................................................... 7

*Shnayder v. Allbirds, Inc.*,
2024 WL 2125598 (N.D. Cal. May 10, 2024) .................................................................... 1–2

*Steinberg v. Schmitt Indus., Inc.*,
2024 WL 1007879 (D. Or. Feb. 2, 2024)............................................................................... 10

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
2024 WL 863709 (D. Ariz. Feb. 29, 2024)............................................................................. 2

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018)................................................................................................... 11

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021)................................................................................................. 5

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)................................................................................................... 8

**PRELIMINARY STATEMENT**

Plaintiffs' 40-page Opposition and 93-page accompanying chart are a rehashing of the repetitive and conclusory allegations in the 567-paragraph SAC and suffer the same fatal flaws.[1] Rather than responding to the numerous deficiencies identified in the Proterra Defendants' Motion to Dismiss, Plaintiffs double-down on their bare-bones allegations, impermissibly relying on the benefit of hindsight to challenge seemingly every statement the Proterra Defendants made about the Company in the years prior to its bankruptcy filing. The Opposition demonstrates that Plaintiffs are woefully unable to plead their claims with the particularity required under the securities laws, instead resorting to generic conclusions and confused "puzzle pleading" in an attempt to convince the Court of a fraud that does not exist. The SAC should therefore be dismissed with prejudice.

**ARGUMENT**

**I.    THE OPPOSITION CONFIRMS THE SAC IS A PUZZLE PLEADING.**

The Opposition does nothing to defeat the Proterra Defendants' showing that the SAC is an improper puzzle pleading. MTD at 5–6. Plaintiffs claim that the SAC's length alone does not render it a puzzle pleading, Opp'n at 29, but Plaintiffs' nearly 200-page SAC is almost double the size of those addressed in the cases Plaintiffs cite, *id.*,[2] and significantly longer than puzzle-pled complaints in other cases that have been rejected as "exceedingly difficult to discern." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (dismissing 124-page complaint).[3] Nor does Plaintiffs' liberal use of bold and italics solve this problem as the Opposition contends, Opp'n at 29, given that the SAC often never explains why certain language is emphasized and/or alleges that unemphasized language is false. *See Shnayder v. Allbirds, Inc.*, 2024 WL

---

[1] The "Opposition" refers to Pls.' Omnibus Resp. in Opp. to Defs.' Mot. to Dismiss (May 20, 2024), ECF No. 100. The "Motion to Dismiss" refers to Proterra Defs.' Notice of Mot. and Mot. to Dismiss (Apr. 5, 2024), ECF No. 94. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

[2] *See In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014) (referring to complaint as "indisputably cumbersome, surpassing one hundred pages in length"); *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1080–81 (N.D. Cal. 2005) (101-page complaint); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *9 (C.D. Cal. June 9, 2016) (distinguishing complaint from a 209-page complaint dismissed in another case).

[3] *See In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *5–6 (N.D. Cal. Mar. 29, 2013) (124 pages); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000) (51 pages).

---

2125598, at *1 (N.D. Cal. May 10, 2024) (dismissing complaint as puzzle pleading and declining to "guess as to which instances of bold and italicized font Plaintiffs intend to denote the statements (or portions of statements) they claim are false and misleading"). For example, Plaintiffs quote five paragraphs of the Q4 2022 Letter, bolding and italicizing large sections of text in each paragraph that address different aspects of Proterra's business, but only generically assert that Proterra's "existing capital, revenue growth, and gross margins were insufficient to [meet] its then cash needs" and that Proterra "failed to disclose and misrepresented" a slew of unrelated business points rather than explaining how each emphasized statement is false. SAC ¶¶ 365–66. The Court should not be required to sift through extensive block quotations with randomly bolded text and repetitive lists of reasons why those statements are false in order to piece together a claim.[4]

## II.    THE OPPOSITION DOES NOT SALVAGE THE EXCHANGE ACT CLAIMS.

### A.    Plaintiffs Fail to Allege Any Misstatements or Omissions with Particularity.

Plaintiffs attempt to water down the pleading obligations imposed by Rule 9(b) and the PSLRA by claiming that dismissal is "appropriate only where the complaint lacks a cognizable legal theory," Opp'n at 20, without regard to the "exacting" requirement that a plaintiff "state with particularity the circumstances constituting fraud." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). In reality, stating a claim under Section 10(b) of the Exchange Act "presents no small hurdle." *Id.* For the reasons below, Plaintiffs do not sufficiently plead their claims.

**Fraud By Hindsight.** The Opposition offers no facts indicating that any of the Proterra Defendants' statements were false when made, as is required for liability. MTD at 6–7. Rather than identifying specific contemporaneous allegations describing the scope and scale of the purported "problems" that existed at the time of the challenged statements, the Opposition merely asserts in a conclusory fashion that there were undisclosed problems and cites a litany of paragraphs in the SAC that impermissibly rely on Proterra's subsequent failure and the benefit of hindsight in an

---

[4] *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at *7–8 (N.D. Cal. Aug. 14, 2019); *Killyoung Oh v. Hanmi Fin. Corp.*, 2021 WL 1566849, at *7–8 (C.D. Cal. Mar. 17, 2021); *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *12 (C.D. Cal. Aug. 25, 2021); *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2024 WL 863709, at *7–8 (D. Ariz. Feb. 29, 2024).

attempt to plead falsity. Opp'n at 20 (citing to nearly 200 paragraphs of the SAC). But as discussed in the Motion to Dismiss, after-the-fact criticism of a company's business judgment is not a basis for liability under the securities laws. MTD at 6–8; *see also Espy v. J2 Global, Inc.*, 99 F.4th 527, 533 (9th Cir. 2024) ("Dissatisfaction with a company's strategy, management, and approach to accounting, coupled with a stock drop, make for interesting reading but not an actionable securities fraud claim."). Yet this is exactly what the Opposition seeks to do here: asserting that the Proterra Defendants' statements about whether the Company's resources would be sufficient to meet its needs over time (or statements about Proterra's operations, production capabilities, and strategy) were false based solely on the fact that Proterra ultimately filed for bankruptcy months or years after those statements were made, without making any attempt to explain how or why that outcome was certain at the time of the earlier challenged statements. *Id*. This approach fails to state a claim. *See* MTD at 6–7.

**CWs.** Plaintiffs' attempt to plead falsity through CW accounts, Opp'n at 23, also fails, as those allegations, at most, describe internal disagreements about Proterra's business strategy and challenges faced by the Company, overwhelmingly attributed to low-level employees who lacked a company-wide view of the issues they raised, and many of which were disclosed in any event. MTD at 7–8. For example, Plaintiffs argue that the "CWs' accounts of Proterra's inner workings diverged dramatically from what was told to investors," Opp'n at 23, by ignoring that the Proterra Defendants disclosed the challenges the Company faced in the run-up to its bankruptcy filing and the steps taken to mitigate these challenges, including a workforce reduction and facility closure. MTD at 16, 22. This is in stark contrast to the cases cited in the Opposition, Opp'n at 23, in which CWs identified specific interactions with the defendants that contradicted their public statements.[5]

**No Duty to Disclose**. The Opposition fails to engage with the Proterra Defendants' showing that the Company's accurate disclosure of its financials or generically optimistic statements did not

---

[5] *See, e.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (CWs showed defendants' statements were false by pointing to conflicting internal statements made by those defendants); *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411128, at *3, 5 (N.D. Cal. Mar 21, 2018) (CWs had "direct interactions" with defendant officer about the complete lack of a salesforce integration plan, which directly contradicted public statements).

give rise to a duty to disclose negative characterizations about the Company or granular details about its business. MTD at 12–14. Courts repeatedly reject arguments that a defendant must disclose a "laundry list" of information that is "unconnected to the actual challenged statements." *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *5 (N.D. Cal. Aug. 31, 2018). As such, in order to plead that a statement gives rise to a duty to disclose further information on a given topic, a plaintiff must adequately allege that the statement "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014). Indeed, the Supreme Court recently rejected a similar attempt to plead an Exchange Act claim by alleging the "pure omission" of information unconnected to any affirmatively misleading statement (without pleading any statements rendered misleading by that omission), noting that the securities laws "do not create an affirmative duty to disclose any and all material information." *Macquarie Infrastructure Corp., v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024). Plaintiffs make no attempt to satisfy this standard, and instead only routinely assert that Proterra Defendants were required to disclose granular negative information about specific topics whenever they made any generic statements on tangentially related topics.[6] That is not the law. *See, e.g.*, *Intuitive Surgical*, 759 F.3d at 1061 (declining to "require a rule of completeness" for securities disclosures because "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not").

**Puffery.** Plaintiffs' argument that the challenged statements included in the SAC are not puffery, Opp'n at 24, is unavailing. Plaintiffs assert that descriptors like "'strong,' 'healthy,' 'priority,' and 'significant' do not render a broader statement beyond the scope of the securities laws," but cite cases where such generic language was tied to other more specific statements alleged to be false. *Id*. Here, however, the SAC frequently challenges statements about Proterra's "strong"

---

[6] For example, Plaintiffs allege the Proterra Defendants "failed to inform investors that Joyce and Padilla intentionally changed the battery pricing model for a major supply contract to yield positive margins," Opp'n at 22, but make no attempt to identify a misrepresentation related to battery pricing in the more than 50 paragraphs they cite or otherwise explain why Defendants had a duty to inform investors about the Company's pricing decisions.

balance sheet, "leading" products, and "significant" progress in constructing the Greer Facility, among others, which are routinely rejected as puffery, MTD at 10–11, without identifying any surrounding factual context that is adequately alleged to be false. Opp'n at 24.[7]

**PSLRA's Safe Harbor.** Plaintiffs' argument that the challenged statements "are based in present or historical fact, thereby taking them outside the ambit of the [PSLRA] safe harbor," Opp'n at 25, again fails to identify any present or historical facts embedded in such statements that were false at the time they were made. For example, Plaintiffs assert that statements by the Proterra Defendants about the adequacy of the Company's cash balance are not forward-looking because they address Proterra's cash balance at the time, which is purportedly a present fact. Opp'n at 25. But Plaintiffs make no claim—nor can they—that Proterra did not then possess the disclosed cash balance; rather, Plaintiffs only challenge the forward-looking statement that the amount of that cash balance would be sufficient in the future. Including an unchallenged representation of present fact in a statement does not bring the challenged forward-looking statement outside the protection of the PSLRA safe harbor. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (non-forward looking "aspect of [a] statement" regarding a company's operations did not make the entire statement actionable where plaintiff did not plead past or present fact was false). Plaintiffs' other arguments about the safe harbor, Opp'n at 25–26, similarly fail. Again, Plaintiffs make only a conclusory assertion that the Proterra Defendants mischaracterized risks as "potential," but fail to point to any particularized facts about the scope and severity of those alleged problems at the time of the challenged statements. As such, the cases Plaintiffs cite where the plaintiffs did provide such specific contemporaneous allegations contradicting the defendants disclosures, *id.* at 26, fall flat.[8]

---

[7] The cases Plaintiffs cite are inapposite. In *Mulligan v. Impax Lab'ys, Inc.*, references to "significant" manufacturing improvements were not puffery because they "contain[ed] factual representations" that defendants had instituted changes in response to an FDA letter, when in reality they had not. 36 F. Supp. 3d 942, 946, 967 (N.D. Cal. 2014). In *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, the court noted that the defendant's statement about its "top priority" for research and development included specific, "concrete terms" about a material issue. 2017 WL 3058563, at *8 (N.D. Cal. July 19, 2017). Neither scenario is applicable here.

[8] *See Hsingching Hsu v. Puma Biotech., Inc.*, 2017 WL 3205774, at *3 (C.D. Cal. July 25, 2017) (statements about "anticipated" results of a drug trial were actionable where defendants had the results from the trial at the time); *Flynn*, 2016 WL 3360676, at *11 (disclosure of possible risks

**Statements of Opinion.** Plaintiffs assert that any challenged statements of opinion are actionable because they purportedly contain "embedded false statements of current fact and were undermined by known adverse facts in Proterra Defendants' possession." Opp'n at 27. However, many challenged opinions clearly contained no such embedded facts. For example, Plaintiffs challenge generic, optimistic statements about the Proterra Defendants' "belie[fs]" that Proterra had the technology, products, competitive positioning, and balance sheet to "ride out potential economic turbulence," "emerge as a central player" in the EV market, and establish itself "as a unique brand that is well positioned to provide commercial vehicle manufacturers and fleet operators with solutions to their future needs" that contain no embedded facts at all. SAC ¶¶ 292–293, 365. Similarly, Plaintiffs do not adequately allege that the Proterra Defendants lacked any reasonable basis for holding their stated beliefs at the time. For example, Plaintiffs challenge Joyce's statement on the Q3 2022 Earnings Call that Proterra was on track to start production at the Greer Facility in 2022 by claiming that the Company was "at least a quarter behind schedule on its production start-up" at the facility based on statements from two low-level CWs about alleged holdups in production at the facility, SAC ¶¶ 321–322, but fail to adequately allege that Joyce himself had information about production issues at the Greer Facility that would preclude him from having any reasonable basis to believe that the facility could begin production in 2022.

### B.    The Opposition Does Not Establish Scienter.

The Opposition does not demonstrate that the SAC's stray allegations raise any inference—let alone a strong inference—of the Proterra Defendants' scienter.

**CW Allegations.** The Opposition asserts that CW accounts of problems at Proterra "show Proterra Defendants' contemporaneous knowledge of adverse facts sufficient to support a strong inference of scienter." Opp'n at 30. Not so. Plaintiffs must "allege the required state of mind as to each Defendant who made an allegedly misleading statement." *Knollenberg v. Harmonic, Inc.*, 152

---

were actionable where "serious regulatory issues had already transpired"); *Roberts v. Zuora,* 2020 WL 204224, at *10 (N.D. Cal. Apr. 28, 2020) (defendants "did not have a reasonable basis to believe" their forward-looking statements that the company's integration platform would "work 'seamlessly'" when they were aware of undisclosed fundamental issues with the platform).

F. App'x 674, 681–82 (9th Cir. 2005).[9] Plaintiffs' reliance on vague claims of "known problems" at the Company, Opp'n at 30, largely asserted by low-level employees[10] who were in no position to know the scope or severity of those problems at a company-wide level, let alone what each of the individual Defendants knew about them, are insufficient to raise an inference of scienter. *See Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021) ("allegations about 'serious operational problems' in a new business 'do not meet the level of specificity required by the PSLRA and our caselaw interpreting it'" nor do CW allegations of "unexpected problems and delays" make false "public projections on profitability"); *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 851, 858 (N.D. Cal. 2019) (CW allegations that executive knew of "*some* [data] breach" were insufficient to demonstrate executive's "knowledge of the magnitude of the breach" and that the executive "used that knowledge (or recklessly disregarded it) to deceive the market"). Nor is the fact that the SAC purports to cite 16 CWs enough to raise an inference of scienter, Opp'n at 30, as courts routinely reject complaints with even more CWs where (as here) they fail to raise a strong inference of scienter. *See, e.g.*, *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1110, 1118 (N.D. Cal. 2009) (22 CWs did not allege scienter); *In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1017, 1026 (N.D. Cal. 2002) (same).

Moreover, even the few CWs that were allegedly more senior or claim to have had interactions with certain individual Defendants, Opp'n at 31, are insufficient given that they at best indicate that purported issues were raised with those Defendants, not that those Defendants agreed with the negative characterizations advanced by those CWs (let alone that those Defendants sought to mislead investors about those issues). MTD at 14–16; *see also Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1223, 1227, 1242 n.6 (10th Cir. 2023) (rejecting as conclusory allegation that "analyses were 'presented to [] executive leadership'" and determining allegation that former employee who "discussed her concerns with" an individual

[9] The Opposition doesn't identify any meaningful scienter allegations about Defendants Ard, Cederoth, and Allen, which is unsurprising given that they all left the Company almost two years before the bankruptcy. SAC ¶¶ 22, 51-54.

[10] Even CW5, who is claimed to be a member of "Proterra's executive team," SAC ¶ 66, is at most alleged to have disagreed with the Proterra Defendants' business strategy. MTD at 16.

defendant did not plead scienter because "the complaint doesn't suggest that [the defendant] had agreed with" her). Indeed, the Ninth Circuit has frequently rejected similarly generic allegations that purportedly "adverse information" was discussed with executives at internal meetings, Opp'n at 30, in the absence of "at least some specifics" that those executives "had actual or constructive knowledge . . . that would cause their optimistic representations to the contrary to be consciously misleading." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002).[11] Not surprisingly, Plaintiffs' case citations finding these types of interactions "solidif[ied] scienter," Opp'n at 31, all involved more detailed accompanying allegations than those present here.[12]

**Stock Sales and Employee Departures.** Although Plaintiffs concede that only two of the ten Proterra Defendants are alleged to have made any stock sales during the class period, Opp'n at 34–35, their assertion that "Defendants Joyce and Padilla sold Proterra securities for a significant profit," *id.*, entirely ignores Defendants' arguments and distorts the alleged facts. Plaintiffs disregard that much of the supposed "profit" they identify was not actually profit at all, and instead reflected the exercise of options or vesting of stock, which Defendants are not alleged to have sold prior to the bankruptcy, suffering the same losses on those shares alleged by Plaintiffs. MTD at 17–19. Plaintiffs cite no case—nor could they—that increasing shareholdings in this way without selling those shares for a profit somehow contributes to an inference of scienter. *Id.*; *see also Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 901 (N.D. Cal. 2022) ("Individual Defendants' stock sales are not suspicious because [they] increased their overall holdings over the Class Period through vested options."). Plaintiffs likewise ignore that the limited sales they identify were not

---

[11] *See also Espy*, 99 F.4th at 539 (allegations that CWs "provided [defendant] with weekly reports of performance results for businesses he oversaw" and that defendant "received a daily report on [the company's] financial condition" showed only defendants' "general awareness" of company finances and were insufficient for an inference of scienter); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 999–1000 (9th Cir. 2009) ("[A]llegations that senior management . . . closely reviewed the accounting numbers . . . and that top executives had several meetings in which they discussed quarterly inventory numbers" were insufficient to establish scienter).

[12] *See, e.g., Scheller v. Nutanix, Inc.*, 2020 WL 5500422 (N.D. Cal. Sept. 11, 2020) ("hands-on CEO" present at meetings also had his executive bonus tied to narrowly-missed sales targets); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1162–64 (N.D. Cal. 2021) (CWs directly told executives about problems and then attended meetings where executives pushed unscrupulous sales tactics after being informed product was unpopular and not selling).

actually directed by Joyce or Padilla but were made on their behalf to satisfy tax withholding obligations, which courts routinely hold are not indicative of scienter. *See* MTD at 17–18. Thus, Plaintiffs have alleged no unusual stock sales.

Similarly, Plaintiffs repeatedly assert that certain Proterra executives made "suspicious" exits, Opp'n at 36–37, yet fail to explain how or why these departures were suspicious. Unlike their cited cases, Plaintiffs nowhere allege that these departures were the result of terminations following investigations or prosecutions resulting from the discovery of fraud, which might indicate scienter.[13] Instead, Plaintiffs merely attach the legal conclusion "suspicious" to unremarkable departures, which does not raise any inference of scienter. MTD at 16–17.

**Additional Allegations.** Plaintiffs' remaining theories of scienter are unpersuasive. *First*, Plaintiffs assert that Defendant Joyce "admitted" to various operational challenges at Proterra in the Company's bankruptcy filing, Opp'n at 34, but that post-class period filing does not contain *any* statement that Proterra's problems were known to the Proterra Defendants at the time of the challenged statements or that the Proterra Defendants attempted to mislead the market. These filings therefore do not raise any inference of scienter. *See Gabelli Asset Fund v. Garrett Motion Inc.*, 2024 WL 1653451, at *3 (2d Cir. Apr. 17, 2024) (declaration from bankruptcy filing was not indicative of scienter but rather "an impermissible attempt to 'plead fraud by hindsight'").

*Second*, Plaintiffs' attempt to invoke the core operations doctrine by alleging problems across multiple Proterra business units, Opp'n at 36, misunderstands the doctrine, which only permits an inference of scienter "if the fraud is based on facts 'critical to a business's core operations.'" *In re Eargo, Inc. Sec. Litig.*, 656 F. Supp. 3d 928, 948 (N.D. Cal. 2023). In other words, Plaintiffs cannot invoke the core operations doctrine by broadly alleging fraud across all businesses at a company, rather than just the company's single core operation. Moreover, unlike

---

[13] *See, e.g.*, *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) (executives departed just before audit committee investigation); *In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547 (N.D. Cal. June 1, 2020) (departures at same time independent investigation recommended); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) (almost all management replaced and company pledged to prosecute those involved in cheating scandal); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 974 (N.D. Cal. 2009) (executives terminated at same time as internal and SEC investigations).

in the cases cited by Plaintiffs, Opp'n at 36, the SAC makes no attempt to plead the Proterra Defendants' "detailed involvement in the minutia of a company's operations," which is required to successfully invoke the doctrine. *Intuitive Surgical*, 759 F.3d at 1062–63; *see also Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *9 (N.D. Cal. June 26, 2018) (even where the misrepresentations concerned the "central cornerstone" of business, plaintiffs failed to allege "specific involvement of the [d]efendants in the details of the purported misrepresentations").

*Third*, Plaintiffs' assertion that some Proterra Defendants' signing of the Sarbanes-Oxley certifications "bolsters" scienter, Opp'n at 35, would be true in every case and falls particularly flat here where there are no allegations of misstated financials that are covered by those certifications. *See Steinberg v. Schmitt Indus., Inc.*, 2024 WL 1007879 (D. Or. Feb. 2, 2024) ("[B]ecause Plaintiffs have made no factual allegations regarding glaring 'accounting irregularities' or 'red flags,' the Sarbanes-Oxley certifications signed . . . do not support an inference of scienter.").

*Finally*, Plaintiffs' contention that the Proterra Defendants "consistently spoke to investors and analysts about the misrepresented subjects," Opp'n at 33, would mean every public-facing executive would have scienter regarding every topic of which they spoke—which is not the law. *See* MTD at 19; *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *13 (N.D. Cal. Feb. 20, 2024) (an allegation of management's "general awareness of day-to-day workings of the company's business does not establish scienter—at least absent some additional allegations of specific information conveyed to management and related to the fraud.").

**Competing Innocent Inference**. Plaintiffs wrongly claim the Proterra Defendants "offer no competing inference," Opp'n at 37, entirely ignoring that the Proterra Defendants provided a far more likely inference than the picture of fraud Plaintiffs have advanced—that they remained optimistic about Proterra's business prospects over time, while continuously cautioning investors of increasing risks, until eventually the Company was unable to weather strong macroeconomic headwinds. *See* MTD at 20. Plaintiffs allege that "akin to *City of Sunrise*," the Proterra Defendants "misled investors about known problems" "all in an effort to buy themselves more time to improve their flagging business," Opp'n at 37, but in that case, executives were alleged to have engaged in

coercive sales of products that customers did not want, and then misrepresented the popularity of those products to investors. *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1185 (N.D. Cal. 2021). In contrast, there is no allegation that Proterra faced a demand problem, or that their products were unpopular, such that executives sought to hide their overall business strategy in order to "buy themselves more time." Rather, the Proterra Defendants communicated their business plan clearly to investors, including the associated risks. MTD at 3–4. As Plaintiffs recognize through their silence, the competing inference of honestly held optimism that Proterra was ultimately unable to achieve is more persuasive and Plaintiffs therefore fail to raise a strong inference of scienter. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (even where CWs alleged executives "knew that [the company] was generally unprofitable, that they were hands-on managers . . ., and that they had reason to suspect that the company's internal [] controls were imperfect," finding "[a]t best" the complaint "paint[ed] a picture of a mismanaged organization in need of closer financial oversight . . . at a critical stage in its development").

### C. The Opposition Does Not Meaningfully Address the Proterra Defendants' Loss Causation Arguments.

The Opposition also does nothing to address the SAC's failure to plead a causal connection between the alleged misrepresentations and Plaintiffs' asserted loss. Plaintiffs wholly ignore the Proterra Defendants' showing that neither the later August 7, 2023 bankruptcy filing nor the earlier March 15, 2023 "going concern" qualification were legally valid corrective disclosures, because the issues underlying those announcements had been previously disclosed to the market. MTD at 21–22.[14] Indeed, announcing a company's "going concern" is indicative of severe financial distress, including bankruptcy, which courts have held defeats loss causation in connection with a later

---

[14] Plaintiffs wrongly contend that this loss causation argument represents a truth-on-the-market defense that cannot be decided on a motion to dismiss. Opp'n at 39. A truth-on-the-market defense addresses the element of materiality—not loss causation—and is present where a defendant claims "they failed to make required disclosures but should be excused because other sources have already made the same information available." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 n.6 (N.D. Cal. 2012). It has no relevance to the separate loss causation element, where courts routinely consider (even at the pleading stage) whether the allegedly corrective information was previously disclosed.

bankruptcy as a matter of law. *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (dismissing complaint because a "going concern" warning made it "'unambiguously apparent' that [the company] was in need of desperate measures and faced a risk of bankruptcy"). And, contrary to Plaintiffs' assertion, Opp'n at 40, courts consistently dismiss securities fraud lawsuits on loss causation grounds on a motion to dismiss. *See, e.g.*, *Espy*, 99 F.4th at 542 (affirming dismissal of complaint without leave to amend on loss causation grounds where relevant information was already known to the market based on "a careful reading of public documents, including [the company's] investor presentations, press releases, . . . public corporate records, and SEC filings"); *Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *7 (D. Ariz. June 23, 2023) (dismissing complaint without leave to amend for failure to plead loss causation where company had already disclosed missed targets so purported corrective disclosure only confirmed information known to the market).[15]

## III. THE OPPOSITION DOES NOT SAVE THE SECURITIES ACT CLAIMS.

The Opposition also does not resolve the SAC's deficient pleading of Section 11 claims.[16]

**Statutory Standing.** In the Opposition, Plaintiffs set forth a theory that the shares purchased by Plaintiffs Tirado, Zinn, and Quick were traceable to the Registration Statements because "any ArcLight shares that were not redeemed prior to the merger were canceled and exchanged for newly issued Proterra shares registered under the Registration Statement." Opp'n at 9. As an initial matter, Plaintiffs did not clearly assert this standing argument in the SAC—which only contains the generic standing allegation that Plaintiffs' shares were traceable to the offering, SAC ¶¶ 19–21 and makes the separate cancellation point almost one hundred paragraphs later in generally describing the offering, *id.* ¶115—and should not be permitted to amend the SAC to assert this theory through their Opposition. *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 912 (N.D. Cal. 2023) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may

---

[15] Because the SAC does not plead an underlying violation of Section 10(b), its control person claim under Section 20(a) must also be dismissed. *See* MTD at 23.

[16] The Proterra Defendants adopt and incorporate by reference the arguments made in the Reply Mem. in Supp. of ACTC Directors' Mot. to Dismiss.

not look beyond the complaint to the plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074–75 (N.D. Cal. 2001) ("neither the Court nor opposing counsel should be required to expend time and effort searching . . . in order to discover whether the essentials of claims asserted can be found in such a melange"). In any event, Plaintiffs provide no caselaw support for this argument, which has not been accepted in any prior case involving similar SPAC transactions. *See, e.g.*, *Mehedi v. View, Inc.*, 2023 WL 3592098, at *6 (N.D. Cal. May 22, 2023) ("Courts have long noted that tracing shares [in the aftermarket] is 'often impossible,' because 'most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares,' and 'many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position.'").

**Misstatements.** As with Plaintiffs' Exchange Act claims, the Opposition offers no contemporaneous facts indicating that statements in the Registration Statements were false when made, and instead merely cites to the broad, conclusory claims in the SAC. Opp'n at 10–11. Plaintiffs' Section 11 claims similarly rely on the benefit of hindsight, assuming that because Proterra ultimately filed for bankruptcy, the statements in the Registration Statements—from years earlier—must have been false when made. This is insufficient. MTD at 24.

Also unconvincing is Plaintiffs' argument that the Proterra Defendants "concealed adverse conditions" in a way that gave investors the "impression of a state of affairs that differs in a material way from one that actually exists." Opp'n at 11–12 (citing *Berson v. Applied Signal Tech, Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)). Unlike *Berson*, in which the company counted certain work that had been indefinitely halted as part of its "backlog," 527 F.3d at 985–86, Plaintiffs fail to plead sufficient facts to plausibly allege how the Proterra Defendants misrepresented any conditions at Proterra at the time of the challenged statements. Nor is this case like *Schueneman v. Arena Pharms, Inc.*, in which the complaint contained well-pled factual allegations that a pharmaceutical company failed to disclose a study that showed that rats receiving a particular drug were getting cancer, when the company had specifically "been representing that animal studies supported [the drug's] safety

and therefore its likelihood of being approved." 840 F.3d 698, 707 (9th Cir. 2016).

Perhaps recognizing the weakness of their claims, Plaintiffs argue that the Proterra Defendants' Motion to Dismiss is "seek[ing] to usurp the province of the jury"—claiming that the question of whether a public statement is misleading is for the jury. Opp'n at 12. But Plaintiffs cannot use this argument to shirk their pleading requirements even under Rule 8, and courts routinely dismiss Securities Act claims for inadequately pleading falsity. *See In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *16 (N.D. Cal. Oct. 1, 2015).

Plaintiffs' Section 11 claims also fail because the challenged statements in the Registration Statements are nonactionable puffery or forward-looking statements. *First*, Plaintiffs argue that challenged statements about Proterra's solid composite bus bodies, its use of suppliers, and the effects of COVID-19 on the business cannot be dismissed as puffery because they are "tethered to facts about specific areas of Proterra's business." Opp'n at 14–15. But the fact that the Registration Statements contained statements about specific areas of the Company is of no moment because those statements were not "anchored in 'misrepresentations of existing fact[,]'" as is required for liability. *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014). The Opposition's recitation of generic allegations about supposedly "known problems" with Proterra's bus bodies, production efficiency, and suppliers do not sufficiently allege any misrepresentations of then-existing fact. Opp'n at 14–15.

*Second*, Plaintiffs' argument that the "bespeaks caution" doctrine is inapplicable and the Proterra Defendants' risk warnings were insufficient, *see id*., similarly fails. Plaintiffs argue that these defenses do not apply because the "potential risks" included in the Registration Statements had already materialized at the time of its issuance. *Id*. But aside from their conclusory allegation that Proterra faced these supposed issues "leading up to and following the merger," SAC ¶ 162, Plaintiffs offer no support for their claim that various risks had already materialized at the time of the Registration Statements, let alone to a material degree impacting the company as a whole. Opp'n at 16. Attempting to point to at least one concrete example, Plaintiffs argue that the risk language about Proterra's composite bus bodies in the Registration Statements inaccurately framed such risks

as merely hypothetical, when "problems with Proterra's composite bus bodies and their impact on customer relations had already surfaced[.]" *Id*. at 16. Conveniently, Plaintiffs omit the language in the Registration Statements that *expressly* acknowledges these prior issues. SAC ¶ 201 ("We have experienced defects in some bus bodies and have had to make repairs. For example, in October 2018 we discovered cracking in the wheel wells on some of our buses which required us to repair these defects under our warranty and will increase our field and customer service costs. In addition, in 2020 and 2021, we repaired cracking near a door frame of a customer bus, and learned that customers removed buses with surface cracks in the bus bodies from revenue service.").

*Finally*, Plaintiffs do not successfully refute that statements in the Registration Statements are nonactionable opinions. MTD at 24. For example, Plaintiffs argue that the Registration Statements' statement that Proterra's suppliers were "reputable and reliable" was false because there was a "history of delays and quality issues with Proterra's sole supplier, TPI." Opp'n at 17. As support, Plaintiffs point to accounts from two CWs, who claimed there were issues with TPI's manufacturing of bus shells. SAC ¶¶ 152, 160–161. But an alleged issue with one supplier of one component is insufficient to allege that the Proterra Defendants had no reasonable basis to believe that their suppliers, in general, were "reputable and reliable." Indeed, the Registration Statements indicate that Proterra had relationships with "*several* key suppliers, *particularly* for lithium-ion cells, drivetrain components, charging systems, and bus bodies." *Id*. ¶ 192 (emphasis added). Moreover, Plaintiffs' claim is particularly weak in light of the fact that prior issues with the bus bodies were disclosed in the Registration Statement. *See* SAC ¶ 201.[17]

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against the Proterra Defendants with prejudice. The Court may do so notwithstanding Plaintiffs' passing request for leave to amend, Opp'n at 40, given that Plaintiffs have already amended their complaint twice, and have not explained how any further amendment would satisfy their pleading obligations. *See, e.g., Lipton*, 284 F.3d at 1039; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988).

---

[17] Because the SAC does not plead an underlying violation of Section 11, its control person claim under Section 15 must also be dismissed. *See* MTD at 25.

Dated:
June 20, 2024

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304

Victor L. Hou (Admitted *Pro Hac Vice*)
vhou@cgsh.com
Jared Gerber (Admitted *Pro Hac Vice*)
jgerber@cgsh.com
Sabrina Singer (Admitted *Pro Hac Vice*)
ssinger@cgsh.com
One Liberty Plaza
New York, NY 10006

*Attorneys for Defendants Gareth T. Joyce, Karina Franco Padilla, Amy E. Ard, John J. Allen, Andrew J. Cederoth, Brook F. Porter, Joan Robinson-Berry, Jeannine P. Sargent, Constance E. Skidmore, and Michael D. Smith*