1  Adam M. Apton (SBN 316506)
   LEVI & KORSINSKY, LLP
2  1160 Battery Street East, Suite 100
3  San Francisco, CA 94111
   Telephone: (415) 373-1671
4  aapton@zlk.com

5  *Lead Counsel for Plaintiffs and the Class*

6  [Additional Counsel on Signature Block]

7

8              **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**
               **SAN JOSE COURTHOUSE**
10

11  JEREMY VILLANUEVA, Individually and On Behalf     No. 5:23-cv-03519-EKL
    of All Others Similarly Situated,
12
                    Plaintiff,
13        v.                                           CLASS ACTION

14  GARETH T. JOYCE, KARINA FRANCO PADILLA,            Hon. Eumi K. Lee
15  JOHN J. ALLEN, AMY E. ARD, JOHN F. ERHARD,         Courtroom: 7
    BROOK F. PORTER, JOAN ROBINSON-BERRY,              Date:  April 2, 2025
16  JEANNINE P. SARGENT, CONSTANCE E.                  Time: 10:00 a.m
    SKIDMORE, MICHAEL D. SMITH, DANIEL R.
17  REVERS, MARCO F. GATTI, ARNO HARRIS, JA-
    CHIN AUDREY LEE, BRIAN GONCHER, and
18  STEVEN BERKENFELD,

19

20                  Defendants.

21

22              **PLAINTIFFS' UNOPPOSED MOTION FOR**
23        **PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 2, 2025, or on such other date as they may be heard, Lead Plaintiff Cyress Jam and additional Plaintiffs Jeremy Villanueva, Tanya Tirado, Luong Du, William E. Zinn, and Raymond H. Quick (collectively, "Plaintiffs") will appear at Courtroom 7, United States District Court for the Northern District of California, San Jose Courthouse, 4th Floor, 280 South First Street, San Jose, CA 95113, or remotely via Zoom or telephone as the Court may direct, and will and hereby do move for an order pursuant to Federal Rule of Civil Procedure 23(e)(1): (1) preliminarily approving the proposed Settlement of this Action; (2) provisionally certifying a class for purposes of effectuating the Settlement; (3) authorizing the retention of A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator; (4) approving the form and manner of giving notice of the proposed Settlement to the Class; and (5) setting a hearing date for considering final approval of the Settlement ("Settlement Hearing"), as well as scheduling various deadlines in connection with the Settlement.[1]

**PLEASE TAKE FURTHER NOTICE THAT** this motion is unopposed by Defendants. Accordingly, Plaintiffs respectfully submit that the motion may properly be decided on the papers.

**PLEASE TAKE FURTHER NOTICE THAT** this motion is supported by the following memorandum of points and authorities in support thereof, the Stipulation and the exhibits thereto, the Declarations of Adam M. Apton, Eric Schachter, and Cyress Jam filed herewith, the previous filings and orders in this case, and any further representations as may be made by counsel at any hearing on this matter.

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning as defined in the Stipulation and Agreement of Settlement, dated as of January 3, 2025 (Stipulation submitted herewith).

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................... i

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ......................................................................................... iv

STATEMENT OF THE ISSUES TO BE DECIDED ......................................................1

I.    PRELIMINARY STATEMENT ...........................................................................2

II.   SUMMARY OF THE LITIGATION ....................................................................3

III.  THE SETTLEMENT TERMS ..............................................................................5

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER ...................7

    A.  Plaintiffs and Class Counsel Have Adequately Represented the Class .............8

    B.  The Proposed Settlement Is the Product of Arm's Length Negotiations By
       Informed Counsel........................................................................................9

    C.  The Settlement Provides Fair, Reasonable and Adequate Relief to the Class .................10

       1.  The Strength of Lead Plaintiff's Case and Risks of Further Litigation
          Support Preliminary Approval ..............................................................10

       2.  The Amount of the Settlement Favors Preliminary Approval ...................11

    D.  The Remaining *Churchill* and Rule 23(e)(2) Factors Support Approval .........13

       1.  Class Counsel Was Sufficiently Informed of the Strengths and Weaknesses
          of the Action when Evaluating the Settlement ..........................................13

       2.  The Experience and Views of Counsel Also Support Preliminary Approval..............14

       3.  The Terms of the Proposed Award of Attorney's Fees Are Reasonable ...................15

       4.  The Only Supplemental Agreement Has Been Identified............................16

       5.  The Proposed Settlement Does Not Unjustly Favor any Class Member, and the
          Proposed Plan of Allocation is Fair and Reasonable ....................................16

    E.  The Proposed Settlement and Related Submissions are Consistent with the
       Northern District of California Class Action Guidelines....................................17

V.    CERTIFICATION OF THE CLASS IS WARRANTED .........................................................20

    A.  The Class Meets the Requirements of Rule 23(a) ................................................20

    B.  The Class Meets the Requirements of Rule 23(b)(3).........................................22

VI.   The Notice and Plan for Notifying the Class Warrant Approval ............................................22

VII.  Proposed Schedule of Events ...............................................................................................25

VIII. CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........................................................................................10

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) .........................................................................................7

*Anders v. Cal. State Univ.*,
No. 23-15265, 2024 WL 177332 (9th Cir. Jan. 17, 2024).......................................21, 22

*Betorina v. Randstad US, L.P.*,
No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017)...........................10

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........................................................................................21

*Bright v. Dennis Garberg & Assocs., Inc.*,
Case No. 2:10-cv-7933-AHM (JCx), 2011 WL 13150437 (C.D. Cal. Aug. 24, 2011)...................14

*Carr v. Tadin, Inc.*,
51 F. Supp. 3d 970 (S.D. Cal. 2014)..............................................................................14

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir.2004) ...........................................................................................8

*Cooper v. Thoratec Corp.*,
Case No. 4:14-cv-00360-CW, ECF No. 137 (N.D. Cal. Jun. 25, 2019)....................15, 16

*Cotter v. Lyft, Inc.*,
176 F. Supp. 3d 930 (N.D. Cal. 2016) ......................................................................11, 12

*Cottle v. Plaid Inc.*,
340 F.R.D. 356 (N.D. Cal. 2021).........................................................................8, 13, 14

*Del. Cty. Emps. Ret. Sys. v. Adapthealth Corp.*,
No. 21-3382, 2024 U.S. Dist. LEXIS 120714 (E.D. Pa. July 10, 2024) ...........................9

*Dunakin v. Quigley*,
No. 2:14-cv-567-JLR, 2017 WL 123011 (W.D. Wash. Jan. 10, 2017) ...........................9

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)......................................................................................................16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)......................................................................................................22

*Fleming v. Impax Labs, Inc.*,
Case No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ...................................11

*Gonzales v. Arrow Fin. Servs. LLC*,
489 F. Supp. 2d 1140 (S.D. Cal. 2007).................................................................................................21

*Gonzales v. Arrow Fin. Servs. LLC*,
660 F.3d 1055 (9th Cir. 2011) ...............................................................................................................21

*Gragg v. Orange Cab Co.*,
No. C12-0576RSL, 2017 WL 785170 (W.D. Wash. Mar. 1, 2017) ...................................................9

*Hefler v. Wells Fargo & Co.*,
Case No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)........................................6

*Hefler v. Wells Fargo & Co.*,
Case No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...........................8, 9, 10

*Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) .........................................................................................................8

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ...........................................................................................................7, 17

*Hunt v. Bloom Energy*,
Case No. 19-cv-02935-HSG, 2023 WL 7167118 (N.D. Cal. Oct. 31, 2023) ...................................13

*IBEW Local 697 v. Int'l Game Tech.*,
No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...........................13

*Ikuseghan v. Multicare Health Sys.*,
No. 3:14-cv-5539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016)........................................11

*In re Alphabet, Inc. Sec. Litig.*,
No. 18-CV-06245-TLT, 2024 U.S. Dist. LEXIS 181673 (N.D. Cal. Sep. 30, 2024)......................15

*In re Aqua Metals, Inc. Sec. Litig.*,
Case No. 17-cv-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ......................................13

*In re Biolase, Inc. Sec. Litig.*,
Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)...........13, 17

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...............................................................................................7, 8, 9, 15

*In re Celera Corp. Sec. Litig.*,
Case No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ..............................11

*In re Charles Schwab Corp. Sec. Litig.*,
No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ............................................10

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) .....................................................................................................22

*In re Extreme Networks, Inc. Sec. Litig.*,
Case No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ..............................17, 25

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................................16

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ..............................................................................................................7

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............................................................................................19

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) ......................................................................................................22

*In re Lyft, Inc. Sec. Litig.*,
Case No. 19-cv-02690-HSG, 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ...............................13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................................14, 15, 16

*In re Oracle Sec. Litig.*,
No. C–90–0931–VRW, 1994 WL 502054 (N.D. Cal. June 16, 1994) ...............................................16

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .......................................23, 24

*In re Splunk Inc. Sec. Litig.*,
Case No. 20-cv-08600-JST, 2024 WL 923777 (N.D. Cal. Mar. 4, 2024) ........................................12

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018).......................................................................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
MDL No. 2672 CRB (JSC), 2018 WL 6198311 (N.D. Cal. Nov. 28, 2018)...........................6, 7, 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
MDL No. 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) ......................................8

*In re Zynga Inc. Sec. Litig.*,
Case No. 12-cv-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)....................................17

*Kendall v. Odonate Therapeutics, Inc.*,
Case No. 3:20-cv-01828-H-LL, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ..........................12, 13

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ...................................................................................................22, 23

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ...........................................................................................................21

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .........................................................................................................14

*Luna v. Marvell Tech. Grp.*,
No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)............................................11

*Martin, et al. v. Altisource Residential Corp., et al.*,
Civil No. 1:15-CV-00024 (D.V.I.).....................................................................................................18

*Nitsch v. DreamWorks Animation SKG Inc.*,
Case No. 14-cv-04062-LHK, 2017 WL 399221 (N.D. Cal. Jan. 19, 2017) .............................14, 15

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) .............................................................................................................8

*Padilla v. Community Health Systems, Inc. et al.*,
Case No. 3:19-cv-00461 (M.D. Tenn.).............................................................................................18

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ...........................................................................................................15

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
No. C 19-04744 WHA, 2021 WL 229310 (N.D. Cal. Jan. 21, 2021)...............................................21

*Razilov v. Nationwide Mut. Ins. Co.*,
No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006).....................................................19

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................................................7, 9, 11

*Salazar v. Midwest Servicing Grp., Inc.*,
Case No. 17-cv-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ...............................10

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ...........................................................................................................22

*Quiruz v. Specialty Commodities, Inc.*,
Case No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)....................................14

*Tirado v. Proterra Inc. et al*,
Docket No. 5:23-cv-04528 (N.D. Cal.)............................................................................3

*Todd v. STAAR Surgical Co.*,
No. CV14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ...............19

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*,
No. CV 12-5080 CRB, 2013 WL 3802807 (N.D. Cal. July 17, 2013)........................20, 21

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .....................................................................................15

*Wilson v. Tesla, Inc.*,
No. 17-cv-03763-JSC, 2019 WL 2929988 (N.D. Cal. July 8, 2019)...............................13

*Wojcik v. Omega Healthcare Inv'rs, Inc.*,
No. JKB-20-3491, 2024 U.S. Dist. LEXIS 142323 (D. Md. Aug. 8, 2024).......................9

*Young v. LG Chem Ltd.*,
783 F. App'x 727 (9th Cir. Sept. 4, 2019) .......................................................................7

**Rules**
Fed. R. Civ. P. 23(a) ................................................................................................20, 22

Fed. R. Civ. P. 23(a)(1).................................................................................................20

Fed. R. Civ. P. 23(b) .....................................................................................................22

Fed. R. Civ. P. 23(b)(3)..................................................................................................22

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................22, 24

Fed. R. Civ. P. 23(e) ...................................................................................................2, 7

Fed. R. Civ. P. 23(e)(1)...................................................................................................7

Fed. R. Civ. P. 23(e)(1)(B)....................................................................................7, 20, 22

Fed. R. Civ. P. 23(e)(2).....................................................................................7, 8, 13, 14

Fed. R. Civ. P. 23(e)(2)(A) .........................................................................................7, 8

Fed. R. Civ. P. 23(e)(2)(B) ..............................................................................................7

Fed. R. Civ. P. 23(e)(2)(C) ..............................................................................................7

Fed. R. Civ. P. 23(e)(2)(C)(i)........................................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(ii)................................................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..............................................................................................15

Fed. R. Civ. P. 23(e)(2)(C)(iv)...............................................................................................16

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................7, 16

Fed. R. Civ. P. 23(e)(3)...........................................................................................................16

Fed. R. Civ. P. 23(h)(1)...........................................................................................................23

**Statues and Regulations**

15 U.S.C. §§ 77z-1(a)(4)..........................................................................................................19

15 U.S.C. §§ 78u-4(a)(4) .....................................................................................................6, 19

Section 10(b) Securities Exchange Act of 1934 .........................................................3, 12, 21

Section 11 Securities Exchange Act of 1934 ......................................................8, 12, 16, 21

Private Securities Litigation Reform Act................................................................................23

## STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether the proposed $29,000,000 Settlement is within the range of fairness, reasonableness, and adequacy to warrant preliminary approval and the dissemination of notice to members of the proposed Settlement Class.

2.     Whether a Class should be preliminarily certified for purposes of effectuating the Settlement.

3.     Whether the proposed form of settlement notice and plan of dissemination to the Settlement Class should be approved.

4.     Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's anticipated motion for an award of attorneys' fees and litigation expenses, and compensatory awards to Plaintiffs.

## I.    PRELIMINARY STATEMENT

The proposed Settlement resolves all claims asserted against Defendants[2] in exchange for a non-reverting cash payment of $29,000,000.  Plaintiffs now request that the Court preliminarily approve the Settlement.

The Settlement was achieved only after nearly two years of hotly contested litigation in both this Court and in bankruptcy court, an arm's-length mediation session before an experienced mediator, David Murphy, and follow-up negotiations.  Although the mediation was not initially successful, the subsequent negotiations ultimately resulted in a mediator's proposal to settle all claims at the Settlement Amount, which both sides accepted.  If approved, the proposed Settlement will recover a substantially greater proportion of estimated damages for the Class than usually occurs in securities fraud class actions.  As set forth below, the Settlement is a strong result that falls well within the range of possible approval.

Plaintiffs also request that the Court certify a Class for settlement purposes and approve the form and substance of the Notice, Proof of Claim, Summary Notice, and Postcard Notice appended as Exhibits A-1, A-2, A-3, and A-4, respectively, to the Stipulation. Plaintiffs further seek the Court's approval of A.B. Data as Settlement Administrator and the means and methods for disseminating notice of the Settlement, which satisfies due process, the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995.

The Settlement meets the standards for preliminary approval because it is likely that this Court will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e). By granting preliminary approval, Plaintiffs will be able to notify the Class and solicit claims, requests for exclusion, and objections, at which point the Court will be able to consider whether to finally approve the Settlement.

---

[2] "Defendants" refers to Gareth T. Joyce, Karina Franco Padilla, Amy E. Ard, John J. Allen, Andrew J. Cederoth, John F. Erhard, Brook F. Porter, Joan Robinson-Berry, Jeannine P. Sargent, Constance E. Skidmore, Michael D. Smith, Daniel R. Revers, Marco F. Gatti, Arno Harris, Ja-Chin Audrey Lee, Brian Goncher and Steven Berkenfeld (together with Plaintiffs, the "Parties" and each a "Party").

## II.    SUMMARY OF THE LITIGATION

On July 14, 2023, Plaintiff Jeremy Villanueva filed the initial complaint in this Action, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") against Proterra, Inc. ("Proterra"), its Chairman and CEO, Gareth T. Joyce, and its CFO, Karina Franco Padilla, for misrepresentations allegedly made during a Class Period stemming from August 2, 2022 to March 15, 2023. ECF No. 1. Soon thereafter, on August 7, 2023, Proterra filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Delaware.

On September 1, 2023, a second action was filed under the name *Tirado v. Proterra Inc. et al*, Docket No. 5:23-cv-04528 (N.D. Cal.). The *Tirado* action asserted similar claims and added Amy E. Ard as a defendant. Thereafter, multiple movants sought consolidation and appointment as lead plaintiff.

On October 23, 2023, the Hon. Beth Labson Freeman entered an order consolidating the *Villanueva* and *Tirado* actions, appointing Cyress Jam as Lead Plaintiff, and approving his selection of counsel, Levi & Korsinsky, LLP. ECF No. 57. On November 27, 2023, the Action was reassigned to the Hon. Rita F. Lin. ECF No. 68. Lead Counsel and Additional Plaintiff Counsel (collectively, "Class Counsel") began to thoroughly investigate additional facts and witnesses for citation in an amended pleading, including a thorough review of Proterra's public filings and statements, a sweeping private investigation, and examination of bankruptcy claims and filings.

Class Counsel also protected the rights of Class Members from threats in Proterra's bankruptcy. They promptly retained bankruptcy counsel and engaged in several conferences attempting to ensure that the bankruptcy court was not used as a backdoor to extinguish liability for the remaining claims against individual Defendants in this Action. *See* Declaration of Adam M. Apton ("Apton Decl."), filed herewith, at ¶¶11-12. In particular, Class Counsel sought to protect Class Members from an incredibly broad (and arguably unlawful) third-party release that Proterra raised in the bankruptcy. *Id.* The improper third-party release would have eliminated Class Members' ability to recover in this Action by releasing individual Defendants from liability for any of their acts while executives or directors of Proterra, including the securities violations alleged in the Amended Complaint here. *Id.* When those informal efforts failed, Class Counsel prepared, filed and litigated

1    an objection to the scope, procedures and disclosure of the third-party release. *Id.* at ¶8. Lead Counsel

2    argued this objection before the bankruptcy court. *Id.* As a result of this briefing and argument, the

3    bankruptcy court rejected the third-party release as proposed, and instead permitted only a neutered

4    version that did not require Class Members to release any of their claims in this Action. *Id.*

5    Concurrently, Class Counsel prepared on behalf of Plaintiffs a much more expansive and

6    thorough 193-page Amended Complaint for this Action. ECF No. 73. The Amended Complaint, filed

7    on January 30, 2024: (a) traced Defendants' misrepresentations back to the Proxy/Registration

8    Statement that Proterra used to go public (via merging with SPAC ArcLight Clean Transition Corp.,

9    or "ArcLight"); (b) added valuable claims under Sections 11 and 15 of the Securities Act of 1933

10   ("Securities Act"); (c) added large amounts of detail and supporting evidence, including from *sixteen*

11   confidential witnesses unearthed during Class Counsel's investigation; (d) expanded the Exchange

12   Act class period to run from August 11, 2021 to March 15, 2023, more than doubling its length; (e)

13   added Defendants John F. Erhard, Brook F. Porter, Joan Robinson-Berry, Jeannine P. Sargent,

14   Constance E. Skidmore, Michael D. Smith, Daniel R. Revers, Marco F. Gatti, Arno Harris, Ja-Chin

15   Audrey Lee, Brian Goncher, Steven Berkenfeld, and John J. Allen; (f) dropped claims against Proterra

16   due to its bankruptcy; and (g) added additional plaintiffs Jeremy Villanueva, Tonya Tirado, Luong

17   Du, and William Zinn. *Id.* Another plaintiff, Raymond Quick, was added shortly thereafter. ECF

18   No. 83.

19   The detailed factual allegations, additional claims and expanded Class Period set forth in the

20   Amended Complaint substantially increased the value of this Action for Class Members. And, the

21   additional plaintiffs protected the Class from argument that named plaintiffs had not purchased during

22   certain relevant periods, or that certain purchases might not be traceable to the Proxy/Registration

23   Statement for purposes of the Securities Act claims.

24   On April 5, 2024, Defendants filed multiple motions to dismiss the Amended Complaint. ECF

25   Nos. 93-96. After thoroughly researching applicable legal arguments, Plaintiffs filed an omnibus

26   opposition, demonstrating why Plaintiffs' claims should be sustained as against all Defendants. ECF

27   No. 100. After Defendants filed reply briefs, *see* ECF Nos. 101-102, the Parties agreed to mediate.

28

At the Parties' joint request, Judge Lin ordered the fully-briefed motion held in abeyance pending the mediation.  ECF No. 104.  On August 21, 2024, the Action was reassigned to Your Honor.

On September 26, 2024, the Parties engaged in an all-day, in-person mediation session before an experienced mediator familiar with securities class actions, David Murphy, Esq. of Phillips ADR. At the time, Plaintiffs and Class Counsel were well-informed about the strengths and weaknesses of their positions in the Action, and the risks of continued litigation, due to: (a) extensive investigation including interviews of more than sixteen former employees; (b) thoroughly researching the law and facts; (c) assessing the risks involved in the bankruptcy proceeding and litigating the most threatening of those risks, the third-party release; (d) consulting with an econometric expert on damages; and (e) preparing and exchanging mediation briefs.  Although this mediation session did not result in an immediate resolution, after subsequent negotiation, Mr. Murphy issued a mediator's proposal on a double-blind basis which both sides accepted, resulting in the Settlement.

## III.    THE SETTLEMENT TERMS

The Settlement requires Defendants to pay, or cause to be paid, $29,000,000 into the Escrow Account, which amount, plus interest, comprises the Settlement Fund. Stipulation, Section II.A. Notice to the Class and the cost of settlement administration ("Settlement Administration Costs") will be funded by the Settlement Fund. *Id.* at Section IV.A-C.  Plaintiffs propose that a nationally recognized class action settlement administrator, A.B. Data, be retained subject to the Court's approval.  A.B. Data was chosen following a competitive bidding process and careful review of proposals from several reputable settlement administrators. After reviewing each bid, Class Counsel concluded that because of its experience, the merits of the bid, and the quality of its work in prior engagements involving Class Counsel, A.B. Data is best suited to administer the Settlement in this Action. Class Counsel respectfully requests that the Court approve their selection.  Further information regarding A.B. Data and its processes is provided in the Declaration of Eric Schachter, a Senior Vice President ("Schachter Decl."), attached as Exhibit 1 to the Apton Decl.

The proposed notice plan and plan for claims processing is discussed below in §§IV and VI below, as well as in the Apton Decl. The Notice and Summary Notice provide that Lead Counsel will

move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount of no more than 25% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action not to exceed $275,000; (c) interest on such fees and expenses at the same rate and for the same period as is earned by the Settlement Fund; and (d) an award to Lead Plaintiff and the additional named Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) for their time and expenses incurred in representing the Class. The Notice explains that such fees and expenses shall be paid from the Settlement Fund.

Once Settlement Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $20.00. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Class Members equitably based on the timing and amount of their transactions in Proterra common stock.

The Settling Parties have entered into a Supplemental Agreement, which provides that if prior to the Settlement Hearing, requests for exclusion from the Class by Persons who would otherwise be Class Members exceeds a certain threshold, Defendants shall have the option (but not the obligation) to terminate the Settlement. Stipulation, Section X.G. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018).

In exchange for the Settlement consideration, Class Members will release all known or unknown claims that (i) were asserted in the Amended Complaint or a prior complaint; (ii) could have been asserted in the Amended Complaint; or (iii) relate to the sale or purchase of Proterra shares during the time period at issue, or the Proxy/Registration Statement at issue, in the Amended Complaint. Because the scope of the release "is limited to claims that relate to both the complaint's factual allegations and to the purchase or ownership of" the Proterra securities in question, it "ensure[s] that 'the released claim[s] [are] based on the identical factual predicate as that underlying the claims in the

settled class action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") (alterations in original) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Lastly, under the terms of the Stipulation, there is no clear sailing agreement or reversion to Defendants.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER

The Ninth Circuit has repeatedly noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal citation and quotation omitted); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (recognizing that public policy strongly favors settlements to resolve disputes, "particularly where complex class action litigation is concerned"); *Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. Sept. 4, 2019) (unpublished) (same). Moreover, courts "ha[ve] long deferred to the private consensual decision of the parties" to settle cases like this one. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Federal Rule of Civil Procedure 23(e) requires judicial approval for settlement of claims brought as a class action. Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this assessment, the Court must consider whether Plaintiffs and Class Counsel: (i) "have adequately represented the class;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for the class is adequate;" and (iv) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In addition, the Ninth Circuit uses the following "*Churchill* factors" for preliminary approval, several of which overlap with Rule 23(e)(2):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)).  "The relative degree of importance to be attached to any particular factor will depend upon the unique facts and circumstances presented by each individual case."  *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 372 (N.D. Cal. 2021) (internal alterations omitted) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)) (discussing both the *Churchill* factors and Rule 23(e)(2) requirements).

Here, there is no government participant and class members have yet to be notified of the proposed settlement, so the final two factors are inapplicable to the analysis.  The remaining factors, however, support a finding that the Settlement is likely to be approved after a final fairness hearing.

**A.  Plaintiffs and Class Counsel Have Adequately Represented the Class**

Rule 23(e)(2)'s first two factors look "to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) Advisory Committee notes to 2018 amendment. This Settlement bears all the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

Rule 23(e)(2)(A) asks whether the plaintiff and his counsel have adequately represented the class. As explained above, Plaintiffs and Class Counsel satisfy this factor as they have diligently prosecuted since inception.  *See supra*, §§I-II.  They successfully investigated the underlying claims, including interviews with numerous former employees, expanded liability by adding Section 11 claims to this Action, researched and opposed Defendants' motion to dismiss, and gathered favorable evidence of liability.  Given Plaintiffs' and Class Counsel's demonstrated prosecution of the Action and their defense of the rights of the Class in bankruptcy court, it is without question that they have adequately represented the Class.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (unpublished) (granting final approval and stating that at preliminary

approval "the Court found that Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel 'possessed "sufficient information to make an informed decision about settlement"'").

### B.  The Proposed Settlement Is the Product of Arm's Length Negotiations By Informed Counsel

The proposed settlement is the result of arm's-length negotiations facilitated by an experienced mediator, David Murphy, after nearly two years of vigorous litigation, proceedings in bankruptcy court, and an extensive investigation involving interviews of more than sixteen former employees.  "A presumption of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations by experienced class counsel after meaningful discovery." *Dunakin v. Quigley*, No. 2:14-cv-567-JLR, 2017 WL 123011, at *2 (W.D. Wash. Jan. 10, 2017); *see also Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). That the negotiations were aided by the "participation of an experienced mediator" also matters. *Gragg v. Orange Cab Co.*, No. C12-0576RSL, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (granting preliminary approval where settlement "[a]greement resulted from extensive arm's-length negotiations, with participation of an experienced mediator").  As another court recently noted, Mr. Murphy has "experience in securities class actions," and his involvement as mediator "demonstrates that these negotiations were conducted at arm's length."  *Del. Cty. Emps. Ret. Sys. v. Adapthealth Corp.*, No. 21-3382, 2024 U.S. Dist. LEXIS 120714, at *8 (E.D. Pa. July 10, 2024).  *See also Wojcik v. Omega Healthcare Inv'rs, Inc.*, No. JKB-20-3491, 2024 U.S. Dist. LEXIS 142323, at *11 (D. Md. Aug. 8, 2024) (Mr. Murphy's involvement as an experienced, neutral mediator "weigh[ed] in favor of settlement approval").

Here, the parties reached a settlement only after a mediator's proposal was evaluated and ultimately accepted by the parties after additional arm's length negotiation.  None of the indicia of collusion were present.  *See In re Bluetooth*, 654 F.3d at 947.  Only a standard benchmark fee will be sought; the Class will receive the majority of the Settlement Amount as a monetary distribution; no *cy pres* is anticipated; there is no "clear sailing" arrangement; any remaining funds, for example from

uncashed checks, will not revert to defendants; and the Plan of Allocation calls for the Net Settlement Fund to be allocated to Plaintiffs and other Class Members pursuant to the same *pro rata* formula.  In short, the Settlement is fair, reasonable, adequate, and a product of arm's-length negotiations, lacks signs of collusion and lacks signs of any other deficiency.

### C.  The Settlement Provides Fair, Reasonable and Adequate Relief to the Class

#### 1.    The Strength of Lead Plaintiff's Case and Risks of Further Litigation Support Preliminary Approval

Rule 23(e)(2)(C)(i) and the first three *Churchill* factors concern the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and the specific risks related to class certification.  These factors are often considered together.  *Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017).   Here, they unquestionably support preliminary approval.   Securities cases, like the present one, "are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain." *Hefler*, 2018 WL 6619983, at *13.  "[P]rosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery."  *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation).  This case is no different.

Plaintiffs are confident that their Amended Complaint would be sustained, and believe their claims are meritorious.  However, they recognize that the ability to ultimately prove the alleged claims, at summary judgment and trial is always a risky proposition. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, Case No. 17-cv-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval"). To start, Defendants have vigorously argued that neither the Proxy/Registration Statement nor their subsequent statements contained any misrepresentations, that they did not act with scienter, and that the stock price declines that caused investor losses were the result of other, unrelated factors.  Risks

to proving falsity, scienter, and loss causations pose significant obstacles here. *See, e.g.*, *In re Celera Corp. Sec. Litig.*, Case No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial…. Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial). Here, those risks are particularly acute. Defendants would likely argue, and the jury might be convinced, that the subject matter of this case involved mismanagement, not fraud. Moreover, Defendants might be able to show that the risks that materialized in 2023 were not significant at the time the Proxy/Registration Statement was issued. Apton Decl. ¶¶30-34 (discussing various risks to litigation). If Defendants prevailed on any of these arguments, damages would be substantially reduced or eliminated.

Further, even if Plaintiffs won at trial, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966; *see also Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-5539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay. The Settlement avoids these challenges . . . . Absent the proposed Settlement, Class Members would likely not obtain relief, if any, for a period of years.").

The third *Churchill* factor, concerning the risk of maintaining class certification, also favors approval. Plaintiffs believe they could satisfy the requirements for class certification. However, even if a class was initially certified, Defendants could have moved to decertify or shorten the Class Period. *See, e.g.*, *Fleming v. Impax Labs, Inc.*, Case No. 16-cv-06557-HSG, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages defenses."). Accordingly, this factor supports preliminary approval.

### 2. The Amount of the Settlement Favors Preliminary Approval

Courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft, Inc.*, 176 F. Supp.

3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted).  Here, the proposed Settlement provides for a certain and immediate all-cash Settlement Fund of $29,000,000, which represents a meaningful recovery for the Class and warrants preliminary approval.

While the total amount of damages is complex and disputed by the Parties, the proposed Settlement provides an above-average recovery and easily falls within a range that is readily approved. After consulting with their damages expert, Plaintiffs estimate that the likely recoverable damages on all claims, should they prevail at trial, would be approximately $150 million.[3]  Defendants have argued, and will likely continue to argue, that all or part of the declines underpinning the Section 10(b) claims should be apportioned to causes other than the alleged misrepresentations.  Plaintiffs believe that proving the causation of such losses would present a substantial risk at summary judgment and trial.  For Section 11, Plaintiffs believe that Defendants would present a negative causation defense at trial, which could also substantially reduce damages.

Accordingly, the Settlement represents a recovery approximately 19.3% of likely recoverable damages, which is an excellent recovery for members of the Class, especially given the real risk of a smaller recovery (if any) at trial and is in line with settlement amounts in similar cases.  This recovery vastly exceeds the 1.8% median settlement value in 2023 for all securities class actions.  *See* NERA, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review at p. 24 (Jan. 23, 2024),[4] In this Circuit, the 19.3% recovery is not only within, but at the very high end, of the range that courts have deemed "fair and reasonable."  *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, Case No. 20-cv-08600-JST, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) (settlement amount "between approximately 5% and 20.5% of the realistic maximum damages" for a securities class action and "fair and reasonable"); *Kendall v. Odonate Therapeutics, Inc.*, Case No. 3:20-cv-01828-H-LL, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (approving settlement of securities class claims that

---

[3] Theoretically, Plaintiffs estimate that damages for the Section 10(b) claims could be as high as $320.1 million if the jury attributed 100% of each decline to the misrepresented material, and that overlapping Section 11 damages could reach $91.47 million on the same basis.  However, Plaintiffs do not believe that to be a likely outcome.

[4] *See* Apton Decl., Exhibit 1 (copy of NERA report).

represented "approximately 3.49% of the maximum estimate damages, which is higher than the 2021 median recovery in securities class actions"); *In re Aqua Metals, Inc. Sec. Litig.*, Case No. 17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) (settlement that "constitutes 7.3% of the most likely recoverable damages" was "is in line with comparable class action settlements"); *In re Biolase, Inc. Sec. Litig.*, Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement of "approximately 8%" of damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697 v. Int'l Game Tech.*, No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement that represented "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered"); *In re Lyft, Inc. Sec. Litig.*, Case No. 19-cv-02690-HSG, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (settlement representing 3.2% to 4.7% of estimated maximum damages was "well within the range of possible approval"); *see also Hunt v. Bloom Energy*, Case No. 19-cv-02935-HSG, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (approving 5.2% of maximum estimated recovery).  By any measure, the Settlement provides an extraordinary benefit to the Class.

### D.  The Remaining *Churchill* and Rule 23(e)(2) Factors Support Approval

#### 1.    Class Counsel Was Sufficiently Informed of the Strengths and Weaknesses of the Action when Evaluating the Settlement

While this Settlement was reached prior to *formal* discovery, Plaintiffs and Class Counsel were well aware of the strengths and weaknesses of their case.  Class Counsel had conducted an extensive private investigation involving interviews with more than sixteen former employees, reviewed thousands of pages of Securities and Exchange Act filings, consulted with a damages expert, and reviewed thousands of pages from the record in Proterra's bankruptcy.  *See* Apton Decl., ¶¶9-10. Plaintiffs were equally familiar with the strengths and weaknesses of their legal positions, having researched and briefed the law in connection with their omnibus opposition to Defendants' motions to dismiss.  *Id.*  As several courts in this District have noted, "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Cottle*, 340 F.R.D. at 375 (quoting *Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) and

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976 (S.D. Cal. 2014) (granting final approval where no formal discovery occurred but where "Class Counsel had significant information going into the settlement negotiations").

Here, Plaintiffs and Class Counsel had more than adequate information to "reasonably evaluate their . . . positions" in mediation. *Bright v. Dennis Garberg & Assocs., Inc.*, Case No. 2:10-cv-7933-AHM (JCx), 2011 WL 13150437, at *2 (C.D. Cal. Aug. 24, 2011) (granting preliminarily approval). Accordingly, this *Churchill* factor also weighs in favor of preliminary approval.

### 2.    The Experience and Views of Counsel Also Support Preliminary Approval

It is well-settled that courts grant "considerable weight" to the opinion of experienced counsel supporting settlement after legitimate, arm's-length negotiation. *See Quiruz v. Specialty Commodities, Inc.*, Case No. 17-cv-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020). "[I]ndeed a presumption of fairness is usually appropriate if class counsel recommends the settlement after arm's-length bargaining." *Volkswagen I*, 2018 WL 6198311, at *5. Here, Plaintiffs are represented by experienced counsel that focus their practices on securities litigation, who have negotiated numerous other substantial class action settlements nationwide. *See* Firm Resumes, attached to Apton Decl. as Exhibits 2 and 3. At the time of the mediation, Class Counsel had a firm understanding of the legal and factual strengths and weaknesses of the claims. *Supra* §§IV(B), IV(D)(1). In this case, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).[5] Throughout the Action and settlement negotiations, Defendants were zealously represented by experienced counsel at Cleary Gottlieb Steen & Hamilton LLP and Ropes & Gray LLP. Such representation dispels any suggestion that a settlement process was infected with collusion or was otherwise procedurally defective. *See Nitsch v. DreamWorks Animation SKG Inc.*, Case No. 14-cv-04062-LHK, 2017 WL 399221, at *2 (N.D. Cal. Jan. 19, 2017) (granting approval where there were arm's length negotiations among

---

[5] This analysis is consistent with the first two factors listed in Rule 23(e)(2), which examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Advisory Committee Notes to 2018 Rule 23(e) amendments.

1    experienced counsel "on both sides").

2          **3.    The Terms of the Proposed Award of Attorney's Fees Are Reasonable**

3          Although no fee request has yet been submitted, the Notice informs Class Members that Class

4    Counsel plans to file a fee request seeking up to a "benchmark" fee of 25% of the Settlement Amount,

5    which has been recognized as the standard rate in this Circuit.  *See Paul, Johnson, Alston & Hunt v.*

6    *Graulty*, 886 F.2d 268, 273 (9th Cir. 1989).  Rule 23(e)(2)(c)(iii) recognizes that a proposed fee request

7    will be relevant to ascertaining the fairness of the Settlement.  Where, as here, "a settlement produces

8    a common fund for the benefit of the entire class," the Ninth Circuit permits courts to "calculate 25%

9    of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record

10   for any special circumstances justifying a departure."  *In re Bluetooth*, 654 F.3d at 942 (internal

11   quotation marks omitted).  This amount is also in line with counsel's lodestar.  While Class Counsel's

12   work is ongoing and a more detailed lodestar calculation will be provided at final approval consistent

13   with the District's Procedural Guidance for Class Action Settlements, they anticipate reporting a

14   lodestar of approximately $2.5 million, representing thousands of hours of work and resulting in a

15   multiplier under 3.  *See* Apton Decl., ¶55. That lodestar multiplier is well within the range regularly

16   approved in this Circuit.  *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, No. 18-CV-06245-TLT, 2024 U.S.

17   Dist. LEXIS 181673, at *22-23 (N.D. Cal. Sep. 30, 2024) (finding multiplier of 4.58 to be

18   "reasonable"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002) (affirming a

19   3.65 multiplier and noting that multipliers from 1.00 to 4.00 were commonly approved).  The lodestar

20   will modestly grow and the multiplier modestly diminish as Settlement work continues.

21         In addition, the Notice informs Class Members that Class Counsel plans to seek reimbursement

22   of litigation expenses not to exceed $275,000.  These expenses will be itemized in its Fee and Expense

23   Application.  The amount of these expenses are in line with those commonly approved in this District,

24   and the expenses relate to commonly-reimbursed items such as expert costs, investigative costs, and

25   mediation fees.  *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1049 (approving litigation costs of

26   $560,489.90, plus interest, from settlement amount of $13,750,000); *see also Cooper v. Thoratec*

27   *Corp.*, Case No. 4:14-cv-00360-CW, ECF No. 137 (N.D. Cal. Jun. 25, 2019) (awarding litigation

28

---

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**
Case No. 5:23-cv-03519-EKL                    15

expenses of $392,445.81, plus interest, from settlement amount of $11,900,000).

### 4.    The Only Supplemental Agreement Has Been Identified

Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) require identification of any other agreement made in connection with the proposed Settlement.  Here, the only such agreement is a standard agreement pertaining to opt outs, that is identified.  *See supra* at 6.

### 5.    The Proposed Settlement Does Not Unjustly Favor any Class Member, and the Proposed Plan of Allocation is Fair and Reasonable.

In addition to the settlement amount, the Court must assess whether a proposed settlement "treats class members equitably relative to each other" under Rule 23(e)(2)(D), and whether the proposed methods for distributing "relief" to class members will be "effective" under Rule 23(e)(2)(C)(ii).  Put another way, the Court must determine whether the Plan of Allocation satisfies the applicable requirements.  "Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate."  *Omnivision*, 559 F. Supp. 2d at 1045 (internal alterations omitted) (citing *In re Oracle Sec. Litig.*, No. C–90–0931–VRW, 1994 WL 502054, at *1–2 (N.D. Cal. June 16, 1994)).  A plan of allocation "need only have a reasonable, rational basis" to be deemed fair, reasonable, and adequate under this standard.  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

The proposed Plan of Allocation meets this standard.  It was formulated in close consultation with Plaintiffs' damages experts and treats all Class members equitably.  It provides for recovery for shares purchased between August 11, 2021 and August 7, 2023, inclusive, on a *pro rata* basis based on the Class Member's recognized loss, and is consistent with the PSLRA's 90-day lookback period, the advice of Plaintiffs' experts, and the principles of economic loss articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  The Plan of Allocation calculates Section 11 damages based on the statutory formula.  It does not require an election of remedies because Plaintiffs understand the damages to be cumulative, not overlapping.  Overall, the Plan of Allocation provides for customary *pro rata* distribution of the Net Settlement Fund among all eligible Class

Members who have submitted a valid Proof of Claim.[6]  These features are standard in securities class action plans of allocation, and plans with these elements are routinely held to be fair and reasonable. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, Case No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019); *In re Zynga Inc. Sec. Litig.*, Case No. 12-cv-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5.

### E.  The Proposed Settlement and Related Submissions are Consistent with the Northern District of California Class Action Guidelines

Plaintiffs have complied with the Northern District of California's Procedural Guidance for Class Action Settlements in documenting the Stipulation and Notice, and in preparing these moving papers. Specific considerations are discussed in the Apton Declaration at Paragraphs 43 to 63 and summarized below.

**There is no difference between the Class and the classes identified in the Operative Complaint**

As explained in more detail in §V below, the Class covered in the proposed Settlement is consistent with the class and claims identified in the operative Amended Complaint.

**The scope of the releases is consistent with the Complaint**

The Stipulation provides for Plaintiffs and Class Members to release "Released Plaintiffs' Claims" as against "Released Defendants' Parties."  *See* Stipulation, Section I.AA; Section XIII.K. The Released Plaintiffs' Claims include claims: "(i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or any previous complaint in the Action."  Stipulation, Section I.BB.  This release is therefore no broader than the factual predicate of the underlying claims, and consistent with this Circuit's precedent.  *See, e.g.*, *Hesse*, 598 F.3d at 590 ("we have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement.").

---

[6] It is necessary and usual in securities class actions for Class Members to submit claims because the transactional information of each Class Member cannot otherwise be reasonably obtained in a manner that would permit claimless administration.

**Class recovery relative to potential recovery for each claim**

The recovery of $29,000,000 compares favorably with Plaintiffs' estimation of the aggregate likely recovery of damages of $150 million.   This is a substantially higher percentage recovery than most securities fraud class action settlements. *See* §IV(C)(2), *supra*.

**No other cases will be affected by the settlement**

Plaintiffs do not believe any other case will be affected by the Settlement.

**The claim form and anticipated claim rate**

Based on prior experience in comparable securities class action cases in which Class Counsel have utilized the proposed Settlement Administrator, Plaintiffs anticipate that approximately 15% to 20% of potential Class Members who are provided notice will submit a claim form.  For example, in *Martin, et al. v. Altisource Residential Corp., et al.*, No. 1:15-CV-00024 (D.V.I.), a case selected because it was also a securities fraud class action settlement administered by A.B. Data, and because one of Class Counsel, Levi & Korsinsky, LLP, was involved in that action, 34,373 potential class members were mailed notice, summary notice was published and electronic notice was also provided in a plan of notice similar to that proposed here.  Ultimately, 6,746 claims were submitted (of which 2,404 were determined to be valid and the remainder invalid either because the purchases were outside the class period, the claimants had no recognized loss, or the claims were deficient).  Similarly, in *Padilla v. Community Health Services, Inc.*, No. 3:19-cv-00461 (M.D. Tenn.), a case selected because it was also a securities fraud class action settlement administered by A.B. Data, and because Additional Plaintiffs' Counsel was involved in that action,   35,465 potential class members were mailed or emailed notice, summary notice was published and electronic notice was also provided in a plan of notice similar to that proposed here.  Ultimately, 5,495 claims were submitted (of which 2,374 were determined to be valid and the remainder invalid either because the purchases were outside of the class period or they had no recognized loss). *See* Apton Decl., ¶45.

**Reversion and *Cy Pres***

Once final, the Stipulation provides that the proposed Settlement will not revert to Defendants. Class Counsel anticipate the Net Settlement Fund will be distributed (and any remaining amounts, for

1  example from unclaimed checks, redistributed if feasible) to Class Members, and do not expect to

2  request any *cy pres* award.

3  **Class Counsel's anticipated attorneys' fee request is reasonable**

4  As set forth in §IV(D)(3), *supra*, Class Counsel anticipate seeking only a benchmark 25% fee,

5  and reimbursement of standard litigation expenses, together with any interest accrued on such amounts

6  while in the Settlement Fund.

7  **Plaintiffs' anticipated service award requests are reasonable**

8  Pursuant to the PSLRA (15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4)), Class Counsel will seek an

9  award on behalf of Lead Plaintiff and other named Plaintiffs to recover unreimbursed costs (including

10  the cost of time spent) for the work performed on behalf of the Settlement Class. The Notice informs

11  Class Members this request will not exceed $10,000 for the Lead Plaintiff and $5,000 for each named

12  Plaintiff.   Lead Plaintiff and other named Plaintiffs have devoted extensive time and effort on behalf

13  of the Class, including: (i) reviewing the original complaint and the Amended Complaint, and

14  providing feedback to counsel; (ii) regularly communicating with counsel regarding case strategy; (iii)

15  reviewing and discussing motion papers with counsel; (iv) discussing matters related to Proterra's

16  parallel bankruptcy with counsel; (v) review and discussing Court orders with counsel; (vi) discussing

17  with counsel the damages estimated by experts; (vii) discussing mediation strategy with counsel; and

18  (viii) advising counsel regarding various settlement proposals, including the mediator's proposal

19  resulting in the Settlement.   The amounts requested are consistent with reimbursement awards in

20  similar complex cases. *See, e.g., Todd v. STAAR Surgical Co.*, No. CV14-5263 MWF (GJSx), 2017

21  WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award); *In re Immune Response Sec. Litig.*,

22  497 F. Supp. 2d 1166, 1173–74 (S.D. Cal. 2007) ($40,000 reimbursement to lead plaintiff); *Razilov v.*

23  *Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006)

24  ($10,000 incentive awards to class representatives).

25  **The Settlement is supported by comparable outcomes**

26  Consistent with the Procedural Guidance, the Apton Decl. contains a comparable case analysis.

27  *See* Apton Decl., ¶63.

28

1   **The Notice contains the information required by Procedural Guidance.**

2       *See infra* at Section VI.

3   **V.      CERTIFICATION OF THE CLASS IS WARRANTED**

4       As detailed below, the Court should certify the Class for settlement purposes, appoint Plaintiffs

5   as class representatives and appoint their counsel as Class Counsel.  Further, Plaintiffs note that, at

6   this time, the Court need only determine whether it "will likely be able to" grant certification at final

7   approval after the Fairness Hearing.  Fed. R. Civ. P. 23(e)(1)(B).

8       The proposed Class embraces both classes referenced in the operative Amended Complaint,

9   and thus includes:

10       (1) all persons or entities who purchased or otherwise acquired public shares in
       Proterra (including by exchange of publicly-listed ArcLight shares) pursuant and/or
11      traceable to the proxy/registration statement filed with the SEC on Form S-4 on
       February 2, 2021, and thereafter amended on Form S-4/A and filed on April 7,
12      2021, and May 7, 2021, and the body of which was incorporated into the final
       prospectus on Form 424(b)(3) filed on May 14, 2021, as amended; and (2) all
13      persons who purchased or otherwise acquired Proterra common stock between
       August 11, 2021 and August 7, 2023, inclusive.
14

15   *See* Stipulation, Section I.I.  The proposed Class also excludes the same categories of persons and

16   entities as set forth in the Amended Complaint: (a) Defendants and their immediate families; (b)

17   current and former directors or officers of Proterra or ArcLight and their immediate families; (c) any

18   entity that has entered into a stockholder agreement or co-venture agreement with Proterra, or was a

19   Private Investment in Public Equities ("PIPE") investor in Proterra; (d) and each of the foregoing

20   persons' legal representatives, heirs, successors or assigns, and any entity controlled, majority-owned

21   or wholly owned, or affiliated with any of the above all persons who purchased or otherwise acquired

22   Proterra common stock between August 11, 2021 and August 7, 2023.  All persons or entities who or

23   which submit a request for exclusion from the Class that is accepted by the Court will also be excluded.

24   **A.  The Class Meets the Requirements of Rule 23(a)**

25       **Numerosity**:  Rule 23(a)(1) requires that the class be so numerous that joinder of all class

26   members is impracticable. Classes that consist of 40 or more members usually satisfy numerosity.  *See*

27   *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807, at *2-3

28

(N.D. Cal. July 17, 2013).  Given Plaintiffs estimate that there were 25 million shares of ArcLight that were eligible for redemption in the de-SPAC that forms the basis of the Section 11 claims, and that Proterra was heavily traded during the Class Period, numerosity is easily satisfied.  *See, e.g., Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2021 WL 229310, at *4 (N.D. Cal. Jan. 21, 2021) (heavy volume and several million shares outstanding supported numerosity).

**Commonality**:  Commonality exists even if there are varying fact situations among class members so long as the claims of the plaintiffs and other class members are based on the same liability theory.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  Here, there are several common questions of fact and law, including: (i) whether Defendants made false or misleading statements or omissions; (ii) whether Section 10(b) Defendants acted with scienter during the Section 10(b) Class Period; (iii) whether Defendants' misrepresentations and omissions caused the Class Members' losses; (iv) whether the members of the Class sustained damages; and (v) the proper amount of their damages.

**Typicality**:  Typicality is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018).  Typicality exists "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."  *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011).

Here, Plaintiffs' claims arise from the same events and course of conduct underlying the claims of all Class Members.  All are based on the same legal theory: that Defendants misrepresented Proterra's strategy, supply chain constraints, and manufacturing problems in the Proxy/Registration Statement, and in subsequent common representations to the market.

**Adequacy**:  Adequacy is satisfied where the proposed class representatives have no interests antagonistic to Class Members, and have selected qualified, experienced counsel.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *see Anders v. Cal. State Univ.*, No.

23-15265, 2024 WL 177332, at *1-2 (9th Cir. Jan. 17, 2024) (unpublished).  Here, Plaintiffs have identical interests to Class Members—maximizing the overall recovery for the Class.  They have retained counsel highly experienced in securities class action litigation who have successfully prosecuted many securities class actions.  And, they have proved their adequacy by zealously advancing the interests of the Class throughout this litigation.

**B. The Class Meets the Requirements of Rule 23(b)(3)**

In addition to satisfying each of the requirements of Rule 23(a), the Class satisfies the predominance and superiority requirements of Rule 23(b)(3).  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (explaining standard); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525-26 (N.D. Cal. 2009) (same).

As courts have repeatedly recognized, "[t]he common questions of whether misrepresentations were made and whether [d]efendants had the requisite scienter predominate over any individual questions of reliance and damages." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009).  Further, "[t]he canonical elements" of securities claims are "falsehood in connection with the purchase or sale of securities, scienter, materiality, reliance, causation, and loss," and their proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 681-82, 687 (7th Cir. 2010).  Additionally, a class action is "superior" to individual actions here because individual class member's claims are geographically dispersed and too small to justify separate, individual actions.

In sum, the requirements of Rules 23(a) and 23(b) are satisfied, and there are no issues that would prevent the Court from certifying this Class, appointing Plaintiffs as class representatives, and appointing their counsel as Class Counsel.

**VI.    The Notice and Plan for Notifying the Class Warrant Approval**

The Federal Rules require "the best notice that is practicable under the circumstances," and that such notice be directed "in a reasonable manner to all class members who would be bound by the [settlement]." Fed. R. Civ. P. Rule 23(c)(2)(B), (e)(1)(B).  Notices "must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal alterations omitted).

In this case, the Notice includes all information required by the Federal Rules of Civil Procedure, the PSLRA, and the Northern District of California's Procedural Guidance for Class Action Settlements. In particular, the Notice describes in plain English the proposed Settlement's terms, as well as: (i) the purpose of the Notice; (ii) a summary of the claims resolved by the Notice; (iii) a statement of the recovery for the Class; (iv) an estimate of the average recovery per share; (v) a statement of the potential outcome of the case if litigation were to continue; (vi) reasons for settlement; (vii) an estimate of the maximum amount of attorneys' fees and expenses that Class Counsel will seek; (viii) a summary of Class Members legal rights and options related to the Settlement; (ix) the terms of the Plan of Allocation; (x) the date, time, and location of the Fairness Hearing; and (xi) additional frequently asked questions and answers related to the Settlement. Importantly, the Notice also sets forth the Class Members' rights to: (i) request exclusion from the Class, and how to do so; (ii) object to the Settlement, Plan of Allocation, and/or Fee and Expense Application, or any aspects thereof, and how to do so; and (iii) submit a Proof of Claim to participate in the Settlement, and instructions on how to complete and submit a Proof of Claim. The Notice also provides contact information for Class Counsel.

Consistent with Rule 23(h)(1), the Notice also informs Class Members that Class Counsel will apply to the Court for attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of expenses of not more than $275,000 from the Settlement Fund, as well as a modest awards of $10,000 and $5,000 to compensate Lead Plaintiff and each additional named Plaintiff, respectively, for the time spent working with counsel throughout the litigation. The Settlement Administrator will post copies of all Notices and Settlement-related motions on the case website, www.ProterraSecuritiesSettlement.com, along with supporting documents. That website will go live at the same time Notice is disseminated.

Plaintiffs' proposed methods for disseminating notice to the Class—email, mail, publication and website—satisfy all applicable standards. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-

5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) ("notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)."). Plaintiffs propose a comprehensive plan of overlapping notice that is standard practice in securities fraud class action settlements and easily satisfies due process. These practices assure that notice is provided in the best manner practicable both to the small number of shareholders who hold shares in their own name, which would be reflected on Proterra's transfer records, and to the overwhelming majority who hold shares beneficially through a broker. The proposed Settlement Administrator, A.B. Data, will mail or email Postcard Notice (Exhibit A-4 to the Stipulation, providing key information and directing recipients to the Settlement Website for the full Notice, Exhibit A-1 to the Stipulation) to all shareholders that can be identified from company transfer records and also to a comprehensive list of brokers and other nominees, who provide contact information for the Settlement Administrator to mail or email notice to beneficial owners. Alternately, the brokers and other nominees can request materials from the Settlement Administrator to mail or email notice to beneficial holders themselves. Such brokers and other nominees will be reasonably reimbursed for these services at the rates specified in the Notice and proposed Preliminary Approval Order.

Summary Notice will also be published over a national newswire with broad distribution. Finally, a settlement website will be established that will contain all of the Notices, all other settlement-related documents, and a claim form that can either be printed out or submitted electronically. The claim form is necessary because neither Class Counsel nor Defendants possess the transactional data from investors that is necessary to allocate the Settlement on a claims-free basis.

The proposed Settlement Administrator, A.B. Data, is a highly experienced class action claims administration firm and will carry out the robust plan of dissemination set forth in the [proposed] Preliminary Approval Order. A.B. Data was selected in a competitive bidding process over several other firms on the basis of the cost of the notice program, the cost of each processed Claim, its agreement to promptly process claims, its history of skillfully administering claims in other cases for Class Counsel, and its agreement to cap certain expenditures. In the past two years, Class Counsel have retained A.B. Data as Settlement Administrator for a minority of the settlements they reached,

each time after a competitive bidding process. These cases are identified in the Apton Declaration at Paragraphs 47 and 48.

As per the N.D. Cal. Guidance at ¶ 2, Class Counsel and A.B. Data estimate that Notice and administration costs here, which will be paid out of the Settlement Fund, will not exceed $300,000. These costs are needed to effectuate the Settlement and are reasonable relative to the value of the Settlement. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *2, *12 (approving $500,000 in administration costs from $7 million settlement fund). The Stipulation calls for Defendants to satisfy all CAFA Notice requirements, at their own cost. Stipulation, Section XII.E.

## VII.    Proposed Schedule of Events

Plaintiffs proposes the following schedule which includes deadlines conforming with this Court's individualized practice rules:

| Item | Proposed Deadline |
|------|-------------------|
| Notice Mailed to Class ("Notice Date") | Fourteen (14) calendar days after entry of the Preliminary Approval Order |
| Summary Notice Published | Fourteen (14) calendar days after Notice Date |
| Briefs in support of final approval, plan of allocation, and attorneys' fees and expenses | Sixty-three (63) calendar days prior to Settlement Hearing |
| Claims Filing Deadline | 110 calendar days after the Notice Date |
| Requests for exclusion from Class | Twenty-eight (28) calendar days prior to the Settlement Hearing |
| Objections to Settlement, Plan of Allocation, and/or Fee and Expense Application | Twenty-eight (28) calendar days prior to the Settlement Hearing |
| Reply papers to any requests for exclusion or objections | Fourteen (14) calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately ninety-five (95) calendar days after Notice Date, or at the Court's earliest convenience thereafter. |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion enter the proposed Preliminary Approval Order.

//

//

Dated: January 7, 2025

Respectfully submitted,

LEVI & KORSINSKY, LLP

By:    */s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com

*Lead Counsel for Plaintiffs*
*and the Class*

Joshua B. Silverman
Christopher P.T. Tourek
POMERANTZ LLP
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
ctourek@pomlaw.com

*Additional counsel for Plaintiffs*
*and the Class*