Adam M. Apton (SBN 316506)
LEVI & KORSINSKY, LLP
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com

*Lead Counsel for Plaintiffs and the Class*

[Additional counsel appears on signature page.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JEREMY VILLANUEVA, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br>  v.<br><br>GARETH T. JOYCE, KARINA FRANCO PADILLA, JOHN J. ALLEN, AMY E. ARD, JOHN F. ERHARD, BROOK F. PORTER, JOAN ROBINSON-BERRY, JEANNINE P. SARGENT, CONSTANCE E. SKIDMORE, MICHAEL D. SMITH, DANIEL R. REVERS, MARCO F. GATTI, ARNO HARRIS, JA-CHIN AUDREY LEE, BRIAN GONCHER, and STEVEN BERKENFELD,<br><br>     Defendants. | No. 5:23-cv-03519-EKL<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 20, 2025<br>Time: 10:00 a.m.<br>Courtroom 7<br>Judge: Hon. Eumi K. Lee |

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION
Case No. 5:23-cv-03519-EKL

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.    INTRODUCTION ................................................................................. 2

II.   PROCEDURAL AND FACTUAL BACKGROUND ....................................... 3

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL ................................. 6

A.    Standards Governing Final Approval of Class Action Settlements ................. 6

B.    The Settlement Satisfies the Requirements of Rule 23(e)(2) .......................... 8

C.    The Remaining Ninth Circuit Factors Support Approval of the Settlement ................................................................................. 16

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ...................... 19

V.    NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS ............. 19

VI.   CONCLUSION .................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*Betorina v. Randstad US, L.P.*,

    2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ................................................................. 10

*Bright v. Dennis Garberg & Assocs., Inc.*,

    2011 WL 13150437 (C.D. Cal. Aug. 24, 2011) ........................................................... 18

*Campbell v. Facebook, Inc.*,

    951 F.3d 1106 (9th Cir. 2020) ....................................................................................... 6

*Carr v. Tadin, Inc.*,

    51 F. Supp. 3d 970 (S.D. Cal. 2014) ........................................................................... 18

*Cheng Jiangchen v. Rentech, Inc.*,

    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............................................................. 8

*Churchill Vill., L.L.C. v. Gen. Elec.*,

    361 F.3d 566 (9th Cir. 2004) .......................................................................... 7, 10, 18

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268 (9th Cir. 1992) ..................................................................................... 19

*Cottle v. Plaid Inc.*,

    340 F.R.D. 356 (N.D. Cal. 2021) ................................................................................ 17

*Destefano v. Zynga, Inc.*,

    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................... 11, 12, 16

*Dura Pharms., Inc. v. Broudo*,

    544 U.S. 336 (2005) ..................................................................................................... 10

*Fleming v. Impax Lab'ys Inc.*,

    2022 WL 2789496 (N.D. Cal. July 15, 2022) .......................................................... 8, 20

*Foster v. Adams & Assocs.*,

    2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ............................................................... 19

*Garner v. State Farm Mut. Auto. Ins. Co.*,

2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................................................................... 7

*Hampton v. Aqua Metals, Inc.*,

2021 WL 4553578 (N.D. Cal. Oct. 5, 2021).......................................................................... 15

*Hayes v. MagnaChip Semiconductor Corp.*,

2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ...................................................................... 20

*Hefler v. Wells Fargo & Co.*,

2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................................... 10

*Hildes v. Arthur Andersen LLP*,

734 F.3d 854 (9th Cir. 2013) ............................................................................................... 10

*Hsu v. Puma Biotechnology, Inc.*,

No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) ........................................... 12

*Hunt v. Bloom Energy*,

2023 WL 7167118 (N.D. Cal. Oct. 31, 2023)........................................................................ 13

*In re Aqua Metals, Inc. Sec. Litig.*,

2022 WL 612804 (N.D. Cal. Mar. 3, 2022)........................................................................... 13

*In re Banc of Cal. Sec. Litig.*,

2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ......................................................................... 9

*In re Biolase, Inc. Sec. Litig.*,

2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)...................................................................... 13

*In re BofI Holding, Inc. Sec. Litig.*,

2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ....................................................................... 16

*In re Celera Corp. Sec. Litig.*,

2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ...................................................................... 11

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,

2019 WL 2554232 (N.D. Cal. May 3, 2019)......................................................................... 8

*In re Extreme Networks, Inc. Sec. Litig.*,

2019 WL 3290770 (N.D. Cal. July 22, 2019)........................................................................ 9

*In re Google LLC St. View Elec. Commc'ns Litig.*,

   611 F. Supp. 3d 872 (N.D. Cal. 2020) ................................................................... 18

*In re Google Location History Litig.*,

   2024 WL 1975462 (N.D. Cal. May 3, 2024) .......................................................... 16

*In re Hyundai & Kia Fuel Econ. Litig.*,

   926 F.3d 539 (9th Cir. 2019) .................................................................................. 8

*In re LinkedIn User Priv. Litig.*,

   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................... 13

*In re Lyft, Inc. Sec. Litig.*,

   2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ................................................. 13, 15

*In re Mego Fin. Corp. Sec. Litig.*,

   213 F.3d 454 (9th Cir. 2000) .................................................................................. 17

*In re Netflix Privacy Litig.*,

   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ......................................................... 9

*In re Omnivision Techs., Inc.*,

   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................... 13, 15, 18

*In re Online DVD-Rental Antitrust Litig.*,

   779 F.3d 934 (9th Cir. 2015) .................................................................................. 15

*In re Portal Software, Inc. Sec. Litig.*,

   2007 WL 1991529 (N.D. Cal. June 30, 2007) ......................................................... 9

*In re Splunk Inc. Sec. Litig.*,

   2024 WL 923777 (N.D. Cal. Mar. 4, 2024) ............................................................ 12

*In re Stable Road Acquisition Corp.*,

   2014 WL 3643393 (N.D. Cal. Apr. 23, 2024) .......................................................... 8

*In re Veritas Software Corp. Sec. Litig.*,

   496 F.3d 962 (9th Cir. 2007) .................................................................................. 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,

895 F.3d 597 (9th Cir. 2018) ............................................................................................... 6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
2020 WL 4212811 (N.D. Cal. July 22, 2020) ..................................................................... 12

*Kastler v. Oh My Green, Inc.,*
2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) ...................................................................... 6

*Kendall v. Odonate Therapeutics, Inc.,*
2022 WL 1997530 (S.D. Cal. June 6, 2022) ....................................................................... 13

*Kuraica v. Dropbox, Inc.,*
2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ....................................................................... 19

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234 (9th Cir. 1998) ............................................................................................ 17

*Longo v. OSI Sys., Inc.,*
2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022) ........................................... 10, 16

*Mauss v. NuVasive, Inc.,*
2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ....................................................................... 19

*Mendoza v. Hyundai Motor Co.,*
2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ......................................................................... 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................................... 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.,*
688 F.2d 615 (9th Cir. 1982) .................................................................................. 6, 10, 12

*Redwen v. Sino Clean Energy, Inc.,*
2013 WL 12303367 (C.D. Cal. July 9, 2013) ..................................................................... 10

*Rodriguez v. Nike Retail Servs., Inc.,*
2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ....................................................................... 18

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ............................................................................ 9, 12, 18, 20

*Satchell v. Fed. Express Corp.*,

2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................................................ 9

*Torrisi v. Tucson Elec. Power Co.*,

8 F.3d 1370 (9th Cir. 1993) ..................................................................................................... 13

*Vataj v. Johnson*,

2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .......................................................................... 19

*Vataj v. Johnson*,

2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ........................................................................... 13

*Vinh Nguyen v. Radient Pharms. Corp.*,

2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................................... 11

*Wilson v. Tesla, Inc.*,

2019 WL 2929988 (N.D. Cal. July 8, 2019)............................................................................. 17

**STATUTES**

15 U.S.C. § 78u-4 ................................................................................................................... 16

Fed. R. Civ. P. 23 ........................................................................................................... 6, 9, 19

## NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on August 20, 2025, in Courtroom 7, the courtroom of the Honorable Eumi K. Lee, at the United States District Court for the Northern District of California, San Jose Courthouse, 4th Floor, 280 South First Street, San Jose, CA 95113, or remotely via Zoom or telephone as the Court may direct, Lead Plaintiff Cyress Jam and additional Plaintiffs Jeremy Villanueva, Tanya Tirado, Luong Du, William E. Zinn, and Raymond H. Quick (collectively, "Plaintiffs"), will and hereby do respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the Settlement and entry of an order granting approval of the Plan of Allocation.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Adam M. Apton in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Apton Declaration" or "Apton Decl.") and the exhibits attached thereto, all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation is being submitted herewith.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should grant final approval of the Settlement.

2.    Whether the Court should approve the Plan of Allocation.

3.    Whether the Notice program satisfies Rule 23 and due process.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The $29,000,000 all-cash Settlement, after nearly two years of hard-fought litigation, is a tremendous result for the Class.[1] The Settlement, which represents approximately 19.3% of estimated aggregate damages, is many times greater than the median 1.8% recovery obtained in similar securities class action cases. Plaintiffs respectfully submit that the Settlement is an exceptional result, especially in light of the substantial risks that Plaintiffs faced in proving the securities claims at issue at summary judgment and trial including, *inter alia*, the elements of falsity, scienter, and loss causation under Section 10(b) of the Exchange Act and the elements of falsity and statutory standing under Section 11 of the Securities Act as well as defeating affirmative defenses of negative causation. As described herein, the Settlement provides a substantial, certain, and prompt recovery for the Class while avoiding the significant risks of continued litigation, including the risk that the Class could recover less than the Settlement amount (or nothing at all) after years of continued litigation and inevitable appeals.

The Settlement is the product of extended arm's length negotiations between experienced and well-informed counsel, including a full-day mediation session and several subsequent negotiations before an experienced mediator, David M. Murphy, Esq., which ultimately resulted in a "mediator's proposal," accepted by the parties. As a result of extensive litigation and settlement efforts, including, among other things, conducting a thorough investigation, drafting several complaints, consulting with a damages expert, reviewing thousands of pages from the record in Proterra's bankruptcy, incorporating facts from those documents and other facts into detailed amended complaints, researching and briefing an omnibus opposition to Defendants' motions to dismiss, and preparing a detailed mediation statement, Plaintiffs and Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted and the propriety of the Settlement.

---

[1] The terms of the Settlement are set forth in the Stipulation of Settlement dated January 7, 2025 (ECF No. 113) (the "Stipulation"). All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation and in Plaintiffs' Notice of Unopposed Motion and Motion for Preliminary Approval of Proposed Settlement and Memorandum of Points and Authorities in Support Thereof (ECF No. 114) ("Preliminary Approval Motion").

The Class's reaction to date similarly reflects approval of the Settlement. In addition to publication and website notice, an estimated 20,147 Postcard Notices were provided to potential Class Members in accordance with the Preliminary Approval Order. *See* Declaration of Adam D. Walter Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Walter Decl."), ¶11. While the deadline for objections has not yet passed, despite this widespread publication of the Settlement, to date **no objections** have been received. *See* Apton Decl., ¶¶43, 72.[2]

Plaintiffs also request that the Court approve the Plan of Allocation, which was detailed in the Notice of Pendency and Proposed Settlement of Class Actions ("Notice"). The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation is based on the analysis of Plaintiffs' damages expert and subjects all Class Members to the same formulas for calculating out-of-pocket damages, *i.e.*, the difference between what Class Members paid for their Proterra securities during the relevant time period and what they would have paid had the alleged misstatements and omissions not been made.

In sum, Plaintiffs respectfully submit that the $29 million all-cash Settlement is an exceptional result for the Class and, together with the Plan of Allocation, is adequate, fair, and reasonable.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

On July 14, 2023, Plaintiff Jeremy Villanueva filed the initial complaint in this Action for violations of Sections 10(b) and 20(a) of the Exchange Act against Proterra, Inc. ("Proterra"), its Chairman and CEO, Gareth T. Joyce, and its CFO, Karina Franco Padilla, alleging defendants made material misrepresentations and omissions between August 2, 2022 to March 15, 2023, inclusive. ECF No. 1. Soon thereafter, on August 7, 2023, Proterra filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Delaware. On September 1, 2023, a second action was filed under the name *Tirado v. Proterra Inc. et al*, Docket No. 5:23-cv-04528 (N.D. Cal.). The *Tirado* action asserted similar claims and added Amy E. Ard as a defendant. Thereafter, multiple class

---

[2] Pursuant to the Court's Preliminary Approval Order (ECF No. 120), the deadline for the filing of objections is July 1, 2025. Should any objections be filed, Plaintiffs will address them in their reply papers due on July 15, 2025.

members sought consolidation of the related actions and appointment as lead plaintiff. On October 23, 2023, the Hon. Beth Labson Freeman entered an order consolidating the actions, appointing Cyress Jam as Lead Plaintiff, and approving his selection of counsel, Levi & Korsinsky, LLP, as Lead Counsel for the class. ECF No. 57. On November 27, 2023, the Action was reassigned to the Hon. Rita F. Lin. ECF No. 68. Lead Counsel and additional Plaintiffs' counsel, Pomerantz LLP (collectively, "Class Counsel") began to thoroughly investigate additional facts and witnesses for citation in an amended pleading, including a thorough review of Proterra's public filings and statements, a sweeping private investigation, and examination of Proterra's bankruptcy claims and filings.

Class Counsel also protected the rights of Class Members from threats in Proterra's bankruptcy. They promptly retained bankruptcy counsel and engaged in several conferences attempting to ensure that the bankruptcy court was not used as a backdoor to extinguish liability for the remaining claims against individual Defendants in this Action. *See* Apton Decl., ¶¶15-16. In particular, Class Counsel sought to protect Class Members from an incredibly broad (and arguably unlawful) third-party release that Proterra raised in the bankruptcy. *Id.* The improper third-party release would have eliminated Class Members' ability to recover in this Action by releasing individual Defendants from liability for any of their acts while executives or directors of Proterra, including the securities violations alleged in the Amended Complaint here. *Id*. When those informal efforts failed, Class Counsel prepared, filed, and litigated an objection to the scope, procedures, and disclosure of the third-party release. *Id*. Lead Counsel argued this objection before the bankruptcy court. *Id*. As a result of this briefing and argument, the bankruptcy court rejected the third-party release as proposed, and instead permitted only a neutered version that did not require Class Members to release any of their claims in this Action. *Id.*

Concurrently, Class Counsel, on behalf of Plaintiffs, prepared a much more expansive and thorough 193-page Amended Complaint for this Action. ECF No. 73. The Amended Complaint, filed on January 30, 2024: (a) traced Defendants' misrepresentations back to the Proxy/Registration Statement that Proterra used to go public (via merging with SPAC ArcLight Clean Transition Corp., or "ArcLight"); (b) added valuable claims under Sections 11 and 15 of the Securities Act; (c) added

large amounts of detail and supporting evidence, including from *sixteen* confidential witnesses unearthed during Class Counsel's investigation; (d) expanded the Exchange Act class period to run from August 11, 2021 to March 15, 2023, more than doubling its length; (e) added Defendants John F. Erhard, Brook F. Porter, Joan Robinson-Berry, Jeannine P. Sargent, Constance E. Skidmore, Michael D. Smith, Daniel R. Revers, Marco F. Gatti, Arno Harris, Ja-Chin Audrey Lee, Brian Goncher, Steven Berkenfeld, and John J. Allen; (f) dropped claims against Proterra due to its bankruptcy; and (g) added additional plaintiffs Jeremy Villanueva, Tonya Tirado, Luong Du, and William Zinn. *Id.* Another plaintiff, Raymond Quick, was added shortly thereafter. ECF No. 83. The detailed factual allegations, additional claims, and expanded 10(b) Class Period set forth in the Amended Complaint substantially increased the value of this Action for Class Members. And, the additional plaintiffs protected the Class from argument that named plaintiffs had not purchased during certain relevant periods, or that certain purchases might not be traceable to the Proxy/Registration Statement for purposes of the Securities Act claims.

On April 5, 2024, Defendants filed multiple motions to dismiss the Amended Complaint. ECF Nos. 93-96. After thoroughly researching applicable legal arguments, Plaintiffs filed an omnibus opposition, demonstrating why Plaintiffs' claims should be sustained as against all Defendants. ECF No. 100. After Defendants filed their reply briefs, *see* ECF Nos. 101-102, the parties agreed to mediate. At the parties' joint request, Judge Lin ordered the fully-briefed motion held in abeyance pending the mediation. ECF No. 104. On August 21, 2024, the Action was reassigned to Your Honor.

On September 26, 2024, the parties engaged in an all-day, in-person mediation session before an experienced mediator familiar with securities class actions, David Murphy, Esq. of Phillips ADR. To facilitate meaningful consideration of the parties' positions, Defendants produced pertinent insurance information on a confidential basis to Plaintiffs. The parties also exchanged mediation statements detailing their evidence and arguments on the claims and defenses in the Action. At the time, Plaintiffs and Class Counsel were well-informed about the strengths and weaknesses of their positions in the Action, and the risks of continued litigation, due to: (a) extensive investigation including interviews of more than sixteen former employees; (b) thoroughly researching the law and

facts; (c) assessing the risks involved in the bankruptcy proceeding and litigating the most threatening of those risks, the third-party release; (d) consulting with an econometric expert on damages; and (e) preparing and exchanging mediation briefs. Although this mediation session did not result in an immediate resolution, after subsequent negotiations, Mr. Murphy issued a mediator's proposal on a double-blind basis which both sides accepted, resulting in the $29 million all-cash Settlement.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Standards Governing Final Approval of Class Action Settlements

The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). "Deciding whether a settlement is fair is . . . best left to the district judge." *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). Courts, however, should not convert settlement approval into an inquiry into the merits, as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19, 2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action and provides "the court may approve [a proposed settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) and any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*

In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[3] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

Securities class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. The settlement of complex cases also promotes the efficient utilization of scarce judicial resources and the speedy resolution of claims. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the … class.").

The Court's Preliminary Approval Order here assessed the Settlement and found, after a preliminary review, that it was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. *See* ECF No. 120, ¶¶4-5. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between April 3, 2025 and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal.

---

[3] The District's Procedural Guidance for Class Action Settlements (the "Northern District Settlement Guidance"), Final Approval, §1, states that the motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of valid claims, the number of opt outs and objections and address any objections. *See* United States District Court for the Northern District of California Procedural Guidance for Class Action Settlements (last modified September 5, 2024), https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. The number of undeliverable notices and claim packages is addressed in the Walter Decl., ¶10 (three undeliverable addresses), as well as the number of opt outs. *Id.*, ¶16 (zero requests for exclusion). While no objections have been received to date, Class Counsel will address any later-received objections, and the number of claims received in their reply brief to be filed on July 15, 2025.

May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now."). Additionally, the Court found this case appropriate for class certification for settlement purposes, and appointed Plaintiffs as class representatives and Lead Counsel as class counsel. ECF No. 120 at ¶¶2-4. Because nothing has changed since preliminary approval that would undermine the Court's conclusion, class certification for settlement purposes remains appropriate. *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

## B.    The Settlement Satisfies the Requirements of Rule 23(e)(2)

### 1.    Plaintiffs and Class Counsel Have Adequately Represented the Class

Pursuant to Rule 23(e)(2)(A), Plaintiffs and Class Counsel have adequately represented the Class. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"). Here, Class Counsel are highly qualified and experienced in securities litigation, *see* Apton Decl., ¶¶64-65, and together with Plaintiffs, actively pursued the claims of Proterra investors in this Court, and zealously advocated for the Class's best interests throughout the litigation. *See generally*, *id.*; *see also* Jam Decl.; Villanueva Decl.; Tirado Decl.; Du Decl.; Zinn Decl.; and Quick Decl.; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where class counsel "has significant experience in securities class action lawsuits" and vigorously pursued plaintiff's claims through multiple rounds of amended complaints and motions to dismiss). In addition, Plaintiffs and Class Counsel have no interests antagonistic to those of other Class Members; rather, their claims "arise from the same alleged conduct: the purchase of [Proterra] stock at inflated prices based on Defendants' alleged . . . misstatements." *Id.* Accordingly, Plaintiffs share the common interest in obtaining the largest possible recovery for Plaintiffs and the Class. *See In re Stable Road Acquisition Corp.*, 2014 WL 3643393, at *6 (N.D. Cal. Apr. 23, 2024) (finding lead plaintiff adequately represented the class where lead plaintiff's claims are typical of and coextensive with the claims of the settlement class with no antagonistic interests). Thus, this factor weighs in favor of final approval.

**2.    The Settlement Was Negotiated at Arm's Length with a Mediator**

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution," *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), as this consideration is seen as having overlap with certain additional factors weighed in this Circuit "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019). As such, courts have long recognized an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (noting that courts afford "a presumption of fairness and reasonableness" to settlements that were "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). Courts have also reasoned that "one important factor [to consider] is that the parties reached the settlement . . . with a third-party mediator." *In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see, e.g.*, *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (finding "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The parties here reached the Settlement only after extensive, hard-fought litigation—including drafting several complaints, consulting with a damages expert, conducting a thorough investigation, including thorough interviews with numerous former employees of Proterra, reviewing thousands of pages from the record in Proterra's bankruptcy, incorporating facts from those documents and other facts into detailed amended complaints, opposing Defendants' motions to dismiss, and preparing a detailed mediation statement— a mediation session, and months of additional negotiations overseen by David M. Murphy, Esq., a mediator with extensive experience in resolving securities class action cases, when all parties accepted Mr. Murphy's "mediator's proposal." *See* Apton Decl., ¶4. Given the parties' efforts over the years, there can be no question that counsel "'had a sound basis for measuring the terms of the settlement.'" *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D.

MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION
Case No. 5:23-cv-03519-EKL                              9

Cal. Aug. 31, 2022). These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625.

### 3.   The Settlement Provides Adequate and Reasonable Relief for the Class

Rule 23(e)(2)(C)(i) instructs courts to consider "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575. These factors are often considered together. *See, e.g.*, *Betorina v. Randstad US, L.P.*, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017). While Plaintiffs believe their claims have merit and that they would prevail on Defendants' motions to dismiss, they nevertheless recognize the numerous risks and uncertainties in proceeding to trial. In fact, securities class actions "'are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). As discussed below, the benefits conferred on the Class by the Settlement far outweigh the costs, risks, and delay of further litigation.

*First*, to establish liability under Section 11 of the Securities Act, a plaintiff must show that he purchased or acquired a security issued pursuant and/or traceable to a registration statement and that there was a material misstatement or omission contained therein. *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013). To prove liability under Section 10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the defendants knowingly or recklessly made the materially false and misleading statements and that the material misrepresentations caused investors' losses. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Plaintiffs would be required to prove each element of each claim asserted to prevail, whereas Defendants needed only to succeed on one defense to defeat the entire action. Although Plaintiffs are confident in the abilities of Class Counsel to prove their case, the risk of an unfavorable judgment or verdict was still real. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present

hurdles to proving liability that are difficult for plaintiffs to clear.'").

Defendants advanced several plausible arguments disputing both liability and damages. Class Counsel anticipate that Defendants would have pressed these arguments throughout the litigation, including at trial. For example, Defendants forcefully challenged the element of falsity under both claims. While Plaintiffs alleged that Defendants' made materially false and misleading public statements regarding the operational and financial health of Proterra's core "Transit" segment while at the same time concealing management's plans to prioritize the "Powered" and "Energy" segments instead, Defendants contended that the challenged statements were merely fraud by hindsight and the federal securities laws do not create liability for poor business judgment or failed operations. Apton Decl., ¶¶20, 37. Defendants also argued that the alleged false and misleading statements were mere opinions, puffery, or forward-looking statements accompanied by meaningful cautionary language. *Id*. at ¶37. In disputing the requisite scienter under Section 10(b), Plaintiffs anticipate that Defendants would have argued on summary judgment that Defendants lacked any individualized pecuniary benefit from the alleged fraud supporting an alternative good faith inference *Id*. at ¶38. And even if Plaintiffs had successfully opposed Defendants' arguments against scienter in their pending motions to dismiss and/or a summary judgment motion, scienter is notoriously "complex and difficult to establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007). Likewise, because Defendants had already targeted loss causation under Section 10(b) and raised a negative causation defense to Section 11 liability in their motions to dismiss, Plaintiffs anticipated facing similar arguments again had litigation proceeded. *See* Apton Decl., ¶39. "[I]n 'any securities litigation case, it is difficult for plaintiff to prove loss causation and damages at trial.'" *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *9 (N.D. Cal. Feb. 11, 2016). Indeed, to prove loss causation and calculate damages involves "complex analysis, requiring [a] jury to parse divergent positions of expert witnesses in a complex area of the law," rendering "the outcome of that analysis . . . inherently difficult to predict and risky." *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014); *see also In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (finding that risks related to the "battle of experts" weighed in favor of settlement approval); Apton Decl., ¶40.

*Second*, there remained much work (and costs) for Plaintiffs in this Action had the parties not reached the Settlement. For instance, if the Settlement was not reached, the parties still faced oral argument on Defendants' pending motions to dismiss, and depending on the success or failure of those motions, Plaintiffs' drafting of an additional amended complaint, and the parties briefing of additional motions to dismiss, completing document discovery, taking and/or defending many fact and expert depositions, litigating any discovery disputes that may arise, briefing class certification, summary judgment, motions to exclude experts, and motions *in limine*, and trying the case before a jury. *See* Apton Decl., ¶41. And even if Plaintiffs had prevailed at trial, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966; *see, e.g.*, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial). In addition, there were cognizable risks related to Defendants' financial condition and the limited amount of insurance remaining to help fund any settlement. *See Zynga*, 2016 WL 537946, at *10 ("continuing litigation would not only be costly–representing expenses that would take away from any ultimate classwide recovery–but would also delay resolution and recovery for Settlement Class Members").

"By contrast, the Settlement provides . . . timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022). The Settlement here recovers at least 9.1% of the potential $320.1 million in damages under Section 10(b) and at least 31.7% of the potential $91.47 million in damages under Section 11 and recovers 19.3% of the likely lower bound of estimated recoverable damages ($150 million). *See* Apton Decl., ¶5. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Courts regularly approve settlements with far lower percentage recoveries than obtained here as "fair and reasonable." *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) (finding settlement amount "between approximately 5% and 20.5% of the realistic maximum

damages" for a securities class action is "fair and reasonable"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at \*5 (S.D. Cal. June 6, 2022) (approving settlement of securities class action that represented approximately 3.49% of the maximum estimate damages); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at \*6 (N.D. Cal. Mar. 3, 2022) (approving settlement that recovers approximately 7.3% of likely recoverable damages); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at \*4 (C.D. Cal. Oct. 13, 2015) (finding settlement yielding "approximately 8%" of damages "equals or surpasses the recovery in many other securities class actions"); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Vataj v. Johnson*, 2021 WL 5161927, at \*6 (N.D. Cal. Nov. 5, 2021) (approving $10 million settlement that recovered approximately 2% of total estimated damages, as it was "consistent with the 2–3% average recovery that the parties identified in other securities class action settlements"); *see also Hunt v. Bloom Energy*, 2023 WL 7167118, at \*7 (N.D. Cal. Oct. 31, 2023) (approving 5.2% of maximum estimated recovery for Section 11 claims); *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at \*6 (N.D. Cal. Dec. 16, 2022) (finding settlement representing 3.2% to 4.7% of estimated maximum damages for Section 11 claims "well within the range of possible approval").

Accordingly, the Settlement represents a prompt and superior tangible recovery, without the considerable risk, expense, and delay of completing fact and expert discovery, summary judgment, trial, and post-trial litigation. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). At each of these stages, there would be significant risks attendant to the Action's continued prosecution, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

### 4. The Methods for Processing and Distributing Relief Are Effective

Rule 23(e)(2)(C)(ii) instructs courts to consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The proposed method for processing Class Members' claims and distributing the proceeds of the Settlement to Authorized Claimants here are well-established, effective methods that have been widely used in securities class action settlements. The proceeds of the Settlement will be distributed to Class Members who submit eligible claim forms with required documentation to the Court-approved claims administrator, A.B. Data, Ltd. ("A.B. Data"). The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation, discussed further in Section IV, *infra*, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants. A.B. Data, an independent company with extensive experience administering securities class actions, will review and process the claims under Class Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court. This type of claims processing is standard in securities class actions and is necessary because neither Plaintiffs nor Defendants possess data regarding investors' transactions in Proterra securities that would allow the parties to create a claims-free process to distribute Settlement funds. This factor weighs in favor of final approval.

### 5. The Terms of the Requested Attorneys' Fees are Fair and Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorneys' fees, including timing of payment." As discussed in Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Memorandum of Points and Authorities in Support Thereof ("Fee Memorandum"), submitted herewith, Class Counsel request an award of attorneys' fees of 25% of the Settlement Amount, in addition to repayment of their litigation expenses in the amount of $150,230.15, plus any accrued interest thereon, and on behalf of Plaintiffs, request an award of $35,000, in the aggregate, in connection with their representation of the Class, pursuant to the PSLRA. This fee request was fully disclosed in the Postcard Notice and Notice (Walter Decl., Exhibits 1 and 2, Notice at pp. 2, 6), approved by Plaintiffs (Jam Decl., ¶4; Villanueva Decl., ¶5; Tirado Decl., ¶5;

Du Decl., ¶6; Zinn Decl., ¶6; Quick Decl., ¶6) and is consistent with attorneys' fee awards in this District and Circuit. *See* Fee Memorandum, Section III.B. Approval of the requested attorneys' fees is not part of any agreement with Defendants, and the Settlement cannot be terminated based on any ruling on the fees or expenses.

### 6.    Any Other Agreements Under Rule 23(e)(3) are Fair and Reasonable

As previously stated in Plaintiffs' Preliminary Approval Motion, the Settling Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of damaged shares of Proterra securities represented by such opt-outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation, Section X.G. Again, such agreements are common and do not undermine the propriety of the Settlement. *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at \*6 ("The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair."); *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at \*10 (N.D. Cal. Oct. 5, 2021) (same). While the Supplemental Agreement is identified in the Stipulation (Stipulation, Section X.G.), and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential").

### 7.    The Plan of Allocation Treats Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other." Assessment of a proposed plan of allocation of settlement proceeds in a class action "'is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.'" *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008). The Plan of Allocation here, developed in consultation with Plaintiffs' damages expert, details how the Settlement proceeds will be distributed among authorized claimants and provides formulas for calculating the recognized claim of each Class Member based on each such Person's purchases or acquisitions of Proterra securities between August 11, 2021 and August 7, 2023,

inclusive, and if or when they sold. Apton Decl., ¶¶43-48. It is fair, reasonable, and adequate because all eligible Class Members (including Plaintiffs) will be subject to the same formulas for distribution of the Settlement and each authorized claimant will receive his, her or its *pro rata* share of the distribution. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) ("no indication that the distribution and allocation methods proposed . . . will result in unequitable treatment of Class Members" where the "Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the information submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on a pro rata basis."); *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each authorized claimant's share of the net settlement amount will be based on when the claimant acquired and sold the subject securities. Accordingly, this factor also weighs in favor of final approval.").[4]

### C.    The Remaining Ninth Circuit Factors Support Approval of the Settlement

#### 1.    The Risk of Maintaining Class Certification

Assuming the Action advanced beyond the pleading stage, there is always the risk that the Class would not be certified. Certification of a litigation class is never guaranteed, and even if the Court were to certify a litigation class here, Defendants may have moved to decertify the class or seek to shorten the 10(b) Class Period. Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits, which is an "inescapable and weighty risk that weighs in favor of a settlement." *In re Google Location History Litig.*, 2024 WL 1975462, at *6 (N.D. Cal. May 3, 2024). This factor weighs in favor of final approval of the Settlement.

#### 2.    The Exceptional Settlement Amount for the Class

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano*, 2016 WL 537946, at *11. That said, "[i]t is well-settled law that a cash settlement amounting to only a

---

[4] Plaintiffs' request for reimbursement of their reasonable costs and expenses directly related to their participation in the Action, noted above, would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). As discussed above, when assessing the adequacy and fairness of a proposed settlement, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense. *See* Section III.B.3, *supra*. The $29 million all-cash Settlement here is nearly double the median recovery of $15 million in securities class action cases in 2023. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024) at p.1; *see also id*. at p. 6 (Figure 5), attached as Exhibit A to the Apton Declaration. Similarly, the 19.3% recovery vastly exceeds the 1.8% median settlement value in 2023 for all securities class actions. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA 2024) at pp. 24-25 & Figure 21, attached as Exhibit B to the Apton Declaration. Accordingly, the Settlement is an excellent result for the Class.

### 3.     The Extent of Discovery Completed and the Stage of the Proceedings

While the Settlement was reached prior to *formal* discovery, Plaintiffs and Class Counsel were well aware of the strengths and challenges of the Action. Class Counsel conducted an extensive private investigation involving interviews with more than sixteen former employees, reviewed thousands of pages of Proterra's public filings with the SEC, consulted with a damages expert, and reviewed thousands of pages from the record in Proterra's bankruptcy and in ancillary litigation. *See* Apton Decl., ¶¶4, 7-8, 14-20. Plaintiffs were equally familiar with the strengths and weaknesses of their legal positions, having researched and briefed the law in connection with their omnibus opposition to Defendants' motions to dismiss and conducting confirmatory discovery that entailed the review of approximately 50,000 documents. *Id.* As several courts in this District have noted, "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 375 (N.D. Cal. 2021) (quoting *Wilson v. Tesla, Inc.*, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) and *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Accordingly, Plaintiffs and Class Counsel had more than adequate information to "reasonably

evaluate their . . . positions" in mediation and at the time the Settlement was reached. *Bright v. Dennis Garberg & Assocs., Inc.*, 2011 WL 13150437, at *2 (C.D. Cal. Aug. 24, 2011) (granting preliminarily approval); *see, e.g.*, *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 976 (S.D. Cal. 2014) (granting final approval where no formal discovery occurred but where "Class Counsel had significant information going into the settlement negotiations"). This factor weighs in favor of final approval of the Settlement.

### 4.    Class Counsel's Experience and Views of This Good-Faith Settlement

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Rodriguez*, 563 F.3d at 967. Thus, courts accord great weight to the recommendations and opinions of experienced counsel. *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of th[e] case and their extensive experience litigating prior . . . class action cases"); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). Class Counsel here have extensive experience representing plaintiffs in securities and other complex class action litigation and have negotiated numerous substantial class action settlements across the country. Apton Decl., ¶¶64-65. As a result of this experience, Class Counsel possessed a firm understanding of Plaintiffs' claims by the time the Settlement was reached, and based thereon, had concluded that the Settlement is an outstanding result for the Class. Therefore, here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043.

### 5.    The Positive Reaction of Class Members to the Settlement

Courts in this Circuit also consider "the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 896 (N.D. Cal. 2020); *see also Churchill*, 361 F.3d at 577. While the deadline to object to the Settlement is July 1, 2025, to date, no objections have been received. Plaintiffs will address objections by Class Members,

if any, in their reply papers. Further, to date, no Class Members have opted out of the Class. The Class's overwhelmingly positive reaction to the Settlement to date supports final approval. *See Foster v. Adams & Assocs.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) ("[The] Court 'may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.'") (quoting *Kuraica v. Dropbox, Inc*., 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021)). This factor weighs in favor of final approval.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In addition to seeking final approval of the Settlement, Plaintiffs seek final approval of the Plan of Allocation that the Court preliminarily approved on April 3, 2025. ECF No. 120. The Plan of Allocation is considered separately from the fairness of the Settlement but is nevertheless governed by the same legal standards: the plan must be fair and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'") (alteration in original). As noted, the Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants (Class Members who submit an acceptable Proof of Claim and who have a recognized loss under the Plan of Allocation). Individual claimants' recoveries will depend on when they purchased or otherwise acquired Proterra securities between August 11, 2021 and August 7, 2023, inclusive, and whether and when they sold their securities. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund. This is the traditional and reasonable approach to allocating securities settlements. *See, e.g., Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'"). To date there has been no objection to the Plan of Allocation. As a result, the Plan of Allocation is fair and reasonable and should be approved.

## V.    NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best notice

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," *Id.* at 23(c)(2)(B). The notice also must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962. The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The substance of the Notice, which the Court preliminarily approved as amended, satisfies Rule 23 and due process. The Claims Administrator has emailed or mailed a total of 20,147 copies of the Court-approved Postcard Notice to potential Class Members and their nominees who could be identified with reasonable effort. *See* Walter Decl., ¶11. In addition, the Court-approved Summary Notice was published over *PR Newswire*. *Id.*, ¶12. The Claims Administrator also provided all information regarding the Settlement online through the Settlement website. *Id.*, ¶14. The Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement, as required by the PSLRA. The Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan as described in the Notice. The notice program here fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process. *See, e.g.*, *Fleming*, 2022 WL 2789496, at *5-*6; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

**VI.    CONCLUSION**

Based on the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement and Plan of Allocation.

Dated: May 27, 2025

Respectfully submitted,

LEVI & KORSINSKY, LLP

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com

*-and-*

Joshua B. Silverman
Christopher P.T. Tourek
POMERANTZ LLP
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
ctourek@pomlaw.com

*Counsel for Plaintiffs and the Class*