United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEREMY VILLANUEVA, et al.,

Plaintiffs,

v.

GARETH JOYCE, et al.,

Defendants.

Case No. 23-cv-03519-EKL

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS**

Re: Dkt. Nos. 121, 122

Before the Court is Lead Plaintiff Cyress Jam's ("Lead Plaintiff's") motion for final approval of a securities class action settlement and plan of allocation. ECF No. 121 ("Mot."). Levi & Korsinsky, LLP and Pomerantz LLP also seek an award of attorneys' fees, litigation costs, and service awards. ECF No. 122 ("Fees Mot."). The Court previously granted a motion for preliminary approval. Prelim. Approval Order, ECF No. 120. No class member has objected to the settlement or fee request, nor requested exclusion from the settlement class. The Court held a final fairness hearing on August 20, 2025. For the following reasons, the Court grants both motions.

I.      **BACKGROUND**

        **A.      Factual and Procedural Background**

        On July 14, 2023, Jeremy Villanueva filed this securities class action for violations of Sections 10(b) and 20(a) of the Exchange Act against Proterra, Inc. ("Proterra"), its chief executive officer, Gareth T. Joyce, and its chief financial officer Karina Franco Padilla. Villanueva alleged that the Defendants made material misrepresentations and omissions regarding Proterra's financial well-being. ECF No. 1. On August 7, 2023, Proterra filed a voluntary petition for bankruptcy, and on September 1, 2023, a second action entitled *Tirado v. Proterra Inc. et al*,

United States District Court
Northern District of California

No. 5:23-cv-04528-BLF (N.D. Cal.) was filed. The *Tirado* action asserted similar claims and added Amy Ard as a defendant. Shortly thereafter, several putative class members sought consolidation of the actions and appointment as lead plaintiff. On October 23, 2023, the cases were consolidated; Cyress Jam was appointed as Lead Plaintiff, and Jam's counsel, Levi & Korsinsky, LLP, was appointed as Lead Counsel. ECF No. 57.

Lead Counsel and Pomerantz LLP (collectively, "Class Counsel") began investigating the claims, including further review of Proterra's public statements, analyst reports, and bankruptcy filings. Mot. at 4. In addition, Class Counsel consulted experts on loss causation and securities class action damages, and interviewed nearly two dozen former Proterra employees with information relevant to the allegations. *Id.* During their investigation, Class Counsel also engaged bankruptcy counsel to represent the interests of the putative class in Proterra's bankruptcy proceedings, culminating in a ruling from the bankruptcy court "requiring Proterra to modify its third-party releases by changing them from 'opt-out' to 'opt-in,' meaning that class members would no longer automatically be bound by Proterra's confirmation plan and consequently would not inadvertently lose their claims against the company and its former officers and directors." Apton Decl. ¶ 17, ECF No. 121-1 ("Apton Decl.").

On January 30, 2024, Class Counsel filed a 193-page amended complaint, adding claims against thirteen individuals and dropping claims against Proterra in light of its bankruptcy.[1] First Am. Compl., ECF No. 73 ("FAC"). The amended complaint expanded the Exchange Act class period to run from August 11, 2021, to August 7, 2023, added claims under Sections 11 and 15 of the Securities Act, and added additional named plaintiffs, (*i.e.*, Jeremy Villanueva, Tonya Tirado, Luong Du, and William Zen).[2] FAC ¶¶ 16-21. The complaint was again amended, adding plaintiff Raymond Quick.[3] Second Am. Compl., ECF No. 83 ("SAC"). On April 5, 2024,

---

[1] The amended complaint also added defendants John F. Erhard, Brook F. Porter, Joan Robinson-Berry, Jeannine P. Sargent, Constance E. Skidmore, Michael D. Smith, Daniel R. Revers, Marco F. Gatti, Arno Harris, Ja-Chin Audrey Lee, Brian Goncher, Steven Berkenfeld, and John J. Allen. FAC ¶¶ 22-48, 51-56.

[2] The previous Exchange Act class period ran from August 2, 2022, to March 15, 2023. ECF No. 1.

[3] Together, Lead Plaintiff, Villanueva, Tirado, Du, Zen, and Quick are referred to as "Plaintiffs."

Defendants filed motions to dismiss the second amended complaint. ECF Nos. 93-96. Plaintiffs filed an omnibus opposition to the motions to dismiss. Opp. to Defs.' Mot. to Dismiss, ECF No. 100 ("Opp."). On August 20, 2024, the case was reassigned to this Court. ECF No. 105.

On September 26, 2024, a mediation before David Murphy, Esq. of Phillips ADR was held; the parties did not reach an agreement. Joint Case Management Statement at 8, ECF No. 108. However, the parties continued to engage in settlement discussions with the mediator, eventually resulting in a $29 million settlement. Stipulation of Settlement at 3, ECF No. 113 ("Stipulation"). On January 7, 2025, the parties filed an unopposed motion for preliminary approval of the proposed settlement. Mot. for Prelim. Approval of Class Action Settlement, ECF No. 114. On April 3, 2025, the Court preliminarily approved the settlement. *See* Prelim. Approval Order. The Court held a final fairness hearing on August 20, 2025.

### B.    Terms of Settlement

In exchange for a full and final release of claims, Defendants agree to pay $29,000,000 into an interest-bearing escrow account (the "Settlement Amount"). Stipulation at 10. The settlement recognizes that Class Counsel may apply for an award of attorneys' fees, actual costs and expenses, and service awards. *Id.* at 13-14. After subtracting any such fees and awards, the remaining Settlement Amount plus any accrued interest ("Net Settlement Fund") will be distributed pursuant to the allocation plan, which "provides formulas for calculating the recognized claim of each [c]lass [m]ember based on each such Person's purchases or acquisitions of Proterra securities between August 11, 2021 and August 7, 2023, inclusive, and if or when they sold." Mot. at 15-16; Stipulation, Ex. A-1 at 14-16. Each authorized clamant will receive a "*pro rata* share of the distribution." Stipulation, Ex. A-1 at 14.

### II.    FINAL SETTLEMENT APPROVAL

### A.    Certification of the Settlement Class

Prior to final approval, the Court must confirm that the settlement class meets Federal Rule of Civil Procedure 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Certification also requires the action be "maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v.*

United States District Court
Northern District of California

3

*Windsor*, 521 U.S. 591, 614 (1997).  The parties seek certification under Rule 23(b)(3), which imposes predominance and superiority requirements.

Here, the class includes:

> (1) all persons or entities who purchased or otherwise acquired public shares in Proterra (including by exchange of publicly-listed ArcLight Clean Transition Corp. shares) pursuant and/or traceable to the proxy/registration statement filed with the SEC on Form S4 on February 2, 2021, and thereafter amended on Form S-4/A and filed on April 7, 2021, and May 7, 2021, and the body of which was incorporated into the final prospectus on Form 424(b)(3) filed on May 14, 2021, as amended; and (2) all persons who purchased or otherwise acquired Proterra common stock between August 11, 2021 and August 7, 2023, inclusive.

*See* Stipulation § I.H.  The class meets all of Rule 23's requirements.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Generally, the numerosity requirement is met where the plaintiff class contains forty or more members.  *Corley v. Google, Inc.*, 316 F.R.D. 277, 290 (N.D. Cal. 2016).  Nearly 65,000 postcard notices were mailed to potential class members and, as of the date of this order, 1,127 valid claims have been submitted.  Reply at 1, 5, ECF No. 123; Status Report ¶ 2, ECF No. 125.  The number of class members clearly satisfies the numerosity requirement.

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Here, class members share multiple common questions of law and fact pertaining to whether Defendants omitted or misrepresented material facts, whether defendants acted with scienter, and whether Proterra's stock price was artificially inflated during the class period.  Thus, the commonality requirement is met.

Typicality requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation modified).  Here, Plaintiffs' claims are typical of the class because they arise from Defendants' same course of conduct and statements.  Plaintiffs purchased Proterra common stock during the class period and were injured due to Defendants' alleged misconduct.  Thus, Plaintiffs have met the typicality requirement.

4

United States District Court
Northern District of California

Adequacy of representation requires that the named class representatives "fairly and adequately protect the interests of the class." Fed. Rule Civ. P. 23(a)(4). This requires that named plaintiffs and their counsel have no conflicts of interest with other class members, and that they prosecute the action vigorously on behalf of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Plaintiffs' interests directly align with those of the class because they purchased Proterra stock during the class period and suffered losses akin to those of other class members. Lead Plaintiff, as the plaintiff with the largest financial stake, is well positioned to represent the interests of absent class members. The Court is unaware of any known conflicts of interests, and Class Counsel has vigorously prosecuted the action. The Court finds that the representation of the class by Lead Plaintiff and Class Counsel is adequate.

Predominance requires that "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In securities class actions, "[t]he common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009). Accordingly, Plaintiffs have shown predominance.

Finally, superiority "assure[s] that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation modified). The class is large and geographically dispersed. Individual lawsuits would have been cost prohibitive for many individual investors due to the complex nature of securities litigation and the cost of legal representation for these matters. Here, a class action is superior to other means of adjudicating the dispute.

* * *

Accordingly, because the requirements of Rule 23(a) and 23(b)(3) are satisfied, the Court grants class certification for settlement purposes only.

### B.    CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each

5

defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C. § 1715(b). The Court must wait 90 days from the date of service before granting final approval. *Id.* § 1715(d). Defendants served the notices on January 17, 2025. Joint Response to Order Regarding Proposed Settlement ¶ 4, ECF No. 119. The Court held the final approval hearing on August 20, 2025, which is more than 90 days after Defendants sent the notices. At the final approval hearing, Defendants confirmed that they did not receive any responses to the CAFA notices, and no state or federal official sought to intervene.

### C.    Adequacy of Notice

For all proposed class settlements, the court "must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982). Settlement notices satisfy Rule 23(e)(1) when they "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id.* (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The Court approved the Parties' proposed notice plan when it granted preliminary approval. *See* Prelim. Approval Order ¶ 7. At Plaintiffs' request, the Court appointed A.B. Data, Ltd. as the Settlement Administrator. *Id.* ¶ 8. As of July 15, 2025, the Settlement Administrator had disseminated 20,346 postcard notices to potential class members and nominees via first-class mail, and 44,341 postcard notices via email. *See* Walter Supp. Decl. ¶ 4, ECF No. 123-1. The Settlement Administrator has also maintained a case-specific, toll-free telephone number, dedicated email address, and website to assist potential class members. *Id.* ¶¶ 6-7. The website contains relevant court documents, objection and claim filing deadlines, and the date and time of

United States District Court
Northern District of California

6

the Final Settlement Hearing. *Id.* ¶ 7. Potential class members can submit claims on the website. *Id.*

Of the nearly 65,000 postcard notices issued, only eight were returned as undeliverable for which no updated address or other means of contact was obtainable. Status Report ¶ 9. In addition, more than 1,100 valid claims have been submitted thus far, and the Net Settlement Fund will be entirely claimed. *Id.* ¶¶ 2, 4. Accordingly, the Court finds that the parties have sufficiently provided notice to the settlement class members. *See Perkins v. LinkedIn Corp.*, No. 5:13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb.16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process").

### D.    Fairness, Adequacy, and Reasonableness

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making this determination, the district court must balance several factors, often referred to as the "*Churchill* factors":

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill,* 361 F.3d at 575.

Under the first and second *Churchill* factors, the Court considers the strength of Plaintiffs' case and the risk, expense, complexity, and duration of further litigation. Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez*, 563 F.3d at 966. Here, Lead Plaintiff recognizes the "numerous risks and uncertainties in proceeding to trial." Mot. at 10. The risks specific to this case include proving the required elements of falsity, scienter, and loss causation. *Id.*; *see also Redwen v. Sino Clean Energy, Inc.*, No. 2:11-cv-03936-PA-SS, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts . . . routinely recognize that securities class

7

United States District Court
Northern District of California

actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (citation modified).  Further litigation would also require the hearing on Defendants' motion to dismiss, possible amendment of the complaint, additional document discovery, taking and defending fact and expert depositions, briefing class certification, summary judgment, and other pre-trial motions, all before ultimately trying the case before a jury.  Mot. at 12.  Because continued litigation would be risky, protracted, and expensive, the first two factors weigh in favor of final approval.

Under the third *Churchill* factor, the Court considers the risk of maintaining the class action status throughout the trial.  At the time of the proposed settlement, the Court had not yet certified a class.  Thus, Plaintiffs risk failing to certify any class or failing to maintain class certification through trial.  This risk, compared to the certainty of recovery pursuant to the proposed settlement, weighs in favor of final approval.

Under the fourth *Churchill* factor, the Court considers the amount offered in settlement.  To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just.*, 688 F.2d at 628.

Here, the $29 million settlement achieves a good result for the class.  Class Counsel calculates that the settlement represents "a recovery of approximately 19.3% of the estimated aggregate likely recoverable damages (*i.e.*, approximately $150 million)." Apton Decl. ¶ 5.  Third-party reports show that the $29 million dollar settlement is almost double the median recovery of $15 million in securities class actions in 2023.  Mot. at 15 (citing Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis 1, 6* (Cornerstone Research 2024)).  The 19.3% recovery is also substantially higher than the 1.8% median settlement value for all securities class actions in 2023.  Mot. at 15 (citing Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* 24-25 (NERA 2024)).  This percentage is in line with securities class actions settlements routinely

8

United States District Court
Northern District of California

approved by courts in this district.[4]  The Court finds that the settlement amount represents a reasonable compromise between Defendants' potential exposure at trial and the risks Plaintiffs face in continuing to litigate this matter.  Accordingly, the amount of settlement weighs in favor of final approval.

Under the fifth *Churchill* factor, the Court considers the extent of discovery completed and the stage of the proceedings.  In the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" so long as the parties "have sufficient information to make an informed decision about settlement[.]"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Here, although settlement was reached prior to formal discovery commencing, the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement.  Class Counsel conducted a private investigation involving interviews with more than sixteen former employees, reviewed thousands of pages of Proterra's public filings, consulted with a damages expert, researched and briefed the law in connection with their omnibus opposition to Defendants' motions to dismiss, and conducted "confirmatory discovery that entailed the review of approximately 50,000 documents."  Mot. at 17.  Accordingly, the Court is satisfied that, at the time of settlement, the parties were sufficiently familiar with the strengths and weaknesses of the case to make informed decisions.  This factor weighs in favor of final approval.

Under the sixth *Churchill* factor, the Court considers the experience and views of counsel.  Class Counsel here have extensive experience representing plaintiffs in securities and other complex class action litigation and have negotiated numerous substantial class action settlements.  Apton Decl. ¶¶ 64-65.  Class Counsel has demonstrated a thorough understanding of the strengths

---

[4] *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, No. 4:20-cv-08600-JST, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) (approving settlement that represented "between approximately 5% and 20.5% of the realistic maximum damages" for a securities class action); *In re Aqua Metals, Inc. Sec. Litig.*, No. 4:17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 3, 2022) (approving settlement for approximately 7.3% of likely recoverable damages); *Vataj v. Johnson*, No. 4:19-cv-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving $10 million settlement that represented approximately 2% of total estimated damages).

and weaknesses of this case and concluded that the settlement is fair, adequate, and reasonable. This factor weighs in favor of final approval.

The seventh *Churchill* factor – presence of a governmental participant – is neutral because there is no governmental participant in this case.

Under the eighth *Churchill* factor, the Court considers the reaction of the class members to the proposed settlement.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  The deadline to file an objection or opt out of the class has passed and no class members have objected to the proposed settlement or opted out of the class.  Status Report ¶ 1.  Thus, this factor weighs in favor of final approval.

### E.     Absence of Collusion

Because the settlement was reached prior to class certification, the Court must ensure that it is not "the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego*, 213 F.3d at 458).  Signs of potential collusion include:  (1) a disproportionate distribution of the settlement fund to counsel; (2) a "clear sailing agreement"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund.  *Id.* at 947.  If "multiple indicia of possible implicit collusion" are present, the Court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement [are] not unreasonably high.'"  *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

The settlement here does not implicate any of the *Bluetooth* factors.  Class Counsel requests an attorneys' fee award that is 25% of the Settlement Fund – the established benchmark for percentage fee awards in the Ninth Circuit.  Fees Mot. at 1; *see also In re Online DVD-Rental*, 779 F.3d at 949.  There is no clear sailing provision and no reversions to Defendants will be made.  Stipulation at 13-14, 17; *see also* Status Report ¶ 4 ("The Net Settlement Fund will be entirely claimed.").  In addition, the settlement was reached with the "assistance of an experienced mediator," which provides further evidence that the "settlement is non-collusive."  *G.F. v. Contra*

10

*Costa Cnty.*, No. 3:13-cv-03667-MEJ, 2015 WL 4606078, at \*13 (N.D. Cal. July 30, 2015). Accordingly, the Court finds that none of the *Bluetooth* factors are present and that the settlement does not raise concerns of collusion on any other basis.[5]

\* \* \*

Therefore, the Court finds that the notice of the proposed settlement was adequate, the settlement is not a result of collusion, and the settlement is fair, adequate, and reasonable. The Court GRANTS final approval of the settlement.

## III.   FINAL APPROVAL OF PLAN OF ALLOCATION

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole:  the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. 3:90-cv-00931-VRW, 1994 WL 502054, at \*1-2 (N.D. Cal. June 18, 1994) (citing *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)).  Here, the allocation plan provides an equitable basis to allocate the settlement fund among all Authorized Claimants.[6]  "Individual claimants' recoveries will depend on when they purchased or otherwise acquired Proterra securities between August 11, 2021 and August 7, 2023, inclusive, and whether and when they sold their securities.  Authorized Claimants will recover their proportional '*pro rata*' amount of the Net Settlement Fund."  Stipulation, Ex. A-1 at 14.  This type of *pro rata* distribution is frequently deemed reasonable.[7]  *Hessefort v. Super Micro Computer, Inc.*, No. 4:18-cv-00838-JST, 2023 WL 7185778, at \*7 (N.D. Cal. May 5, 2023) (collecting cases).  The Court concludes that this plan does not discriminate between class

---

[5] In addition, the parties entered into a "standard supplemental agreement which provides that if [c]lass [m]embers opt out of the [s]ettlement such that the number of damaged shares of Proterra securities represented by such opt-outs equals or exceeds a certain amount, Defendants shall have the option to terminate the [s]ettlement." Mot. at 15; *see also* Stipulation at 20-21.  The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the settlement unfair. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 948.  The Court finds that the agreement does not weigh against approval – and, in any event, this provision was not triggered because no class members opted out.

[6] "Authorized Claimants" are those that submit an acceptable Proof of Claim and have a recognized loss under the Plan of Allocation.  Mot. at 18; *see also* Stipulation at 3.

[7] Additionally, few valid claims received to date fall below the $20 *de minimis* threshold required for distribution.  Status Report ¶¶ 4-5 (stating that 34 claims fall below the *de minimis* threshold, representing a total of $1,063.38).

11

members and is fair and reasonable.

## IV.    ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A.    Attorneys' Fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, . . . courts have an independent obligation to ensure that the award, like the settlement itself is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (internal citation omitted). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorneys' fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.*

In the Ninth Circuit, the "benchmark for an attorneys' fee award in a successful class action is twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Accordingly, courts in the Ninth Circuit generally start with the 25% benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental*, 779 F.3d at 954-55 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir 2002)). Though not required, courts often crosscheck the fee request against the lodestar. Regardless of whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

Class Counsel seeks an award of attorneys' fees amounting to 25% of the settlement fund, or "$7,250,000, plus interest accrued thereon." Proposed Final Approval Order ¶ 11, ECF No.

United States District Court
Northern District of California

123-2; Fees Mot. at 1. This request is consistent with the benchmark for a reasonable fee award in the Ninth Circuit. *In re Bluetooth*, 654 F.3d at 942 (recognizing that "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award").

None of the other factors counsel in favor of a downward variant. *See In re Online DVD-Rental*, 779 F.3d at 954-55 (explaining courts consider results achieved, level of risk, and burdens on class counsel). The first and "most critical factor [in determining attorneys' fees] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Here, Class Counsel achieved a $29 million settlement representing over 19% of the estimated aggregate damages in the case. Mot. at 2. This result is substantial and is significantly higher than the 1.8% median recovery for securities class actions settled in 2023. *See supra* § II.C. In addition, the fact that no class member objected to the settlement or opted out supports the finding that this is a positive result for the class members. Second, Class Counsel faced substantial risks in pursuing this litigation because "securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.*, No. 4:16-cv-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 17, 2018) (citation omitted). Specifically, Plaintiffs faced uncertainty in establishing both liability and damages, "including the risk of no damages at all." Fees Mot. at 9. Finally, Class Counsel carried a heavy burden pursuing this action on a contingency basis. Each of these factors weighs in favor of the award.

A lodestar cross-check confirms the reasonableness of the 25% award. To confirm an award's reasonableness through a lodestar cross-check, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "The determination of fees should not result in a second major litigation[.]" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citation modified). Rather, the Court seeks to "do rough justice, not to achieve auditing perfection." *Id.*

Here, Class Counsel has calculated a total lodestar of $3,226,944.25, which results in a multiplier of 2.25. Fees Mot. at 16. Class Counsel's rates range from $800 to $1,150 for partners or of counsel attorneys; from $465 to 675 for associates and staff attorneys; and are set at $350 for paralegals. Apton Fees Decl. ¶ 3, ECF No. 122-1; Silverman Fees Decl. ¶ 3, ECF No. 122-2. For

13

purposes of the lodestar cross-check, the Court finds that these rates are reasonable. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding reasonable rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals). The Ninth Circuit has recognized that multipliers generally range from 1 to 4. *Vizcaino*, 290 F.3d at 1051 n.6. District courts within the Ninth Circuit commonly apply multipliers in that range. *See Leventhal v. Chegg. Inc.*, No. 5:21-cv-09953-PCP, 2025 WL 1481382 at *9 (N.D. Cal. May 21, 2025) (collecting cases). Given the results achieved for the class and the risk counsel faced, the 2.25 multiplier is reasonable. Accordingly, the Court awards Class Counsel $7,250,000 plus interest in attorneys' fees. The Court will withhold 15% of this award until a post-distribution accounting has been filed with the Court.

### B. Reimbursement of Costs

In common fund cases, attorneys are also entitled to recover the reasonable expenses of acquiring the fund. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). To recover such expenses, the attorneys should provide an itemized list of their expenses by category with the total amount advanced for each category so that the Court can assess whether the expenses were reasonable. *Wren v. RGIS Inventory Specialists*, No. 3:06-cv-5778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Class Counsel also seeks reimbursement of up to $150,230.15, plus interest, in litigation-related expenses. Fees Mot. at 17. The notice provided to potential class members informed them that expenses in the settlement could reach $275,000. Stipulation, Ex. A-1 at 3. Class Counsel's final request is well below that figure. Class Counsel filed supporting documentation outlining the expenses, which include expenses typical of this type of litigation, such as court fees, mediation fees, expert fees, notice costs, and private investigator costs. Apton Fees Decl. ¶ 4; Silverman Fees Decl. ¶ 4; *see also Vincent v. Reser*, No. 3:11-cv-03572-CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (granting award of expenses for "three experts and the mediator, photocopying and ailing expenses, travel expenses, and other reasonable litigation related expenses"). The Court has reviewed Class Counsel's expenses and finds them reasonable. The Court grants the request

for reimbursement of costs totaling $150,230.15.

### C.    Lead Plaintiffs' Request for Service Award

The Private Securities Litigation Reform Act authorizes courts to allow reimbursement to a lead plaintiff for "reasonable costs and expenses . . . directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Lead Plaintiff Jam requests a PSLRA service award of $10,000 and Villanueva, Tirado, Du, Zinn, and Quick request service awards of $5,000 each.  Fees Mot. at 19.  Plaintiffs have each submitted a declaration setting forth the time and effort they spent monitoring the action and directing Class Counsel, including discussing litigation strategy, collecting and reviewing materials in preparation for discovery, and discussing settlement negotiations and case filings with Class Counsel, among other things.  *See* Jam Decl. ¶ 2, ECF No. 121-3; Villanueva Decl. ¶¶ 2-3, ECF No. 121-4; Tirado Decl. ¶¶ 2-3, ECF No. 121-8; Du Decl. ¶ 4, ECF No. 121-7; Zinn Decl. ¶ 4, ECF No. 121-6; Quick Decl. ¶ 4, ECF No. 121-5.  The named Plaintiffs' requests of $5,000 each are "presumptively reasonable" in the Ninth Circuit.  *Thomas v. MagnaChip Semiconductor Corp.*, No. 3:14-cv-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018).

As to Lead Plaintiff's request, courts will grant an award exceeding the presumptive amount when such award is warranted.  *Brown v.China Integrated Energy, Inc.*, No. 2:11-cv-02559-AB-PLA, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) (collecting cases).  Courts in this district often award service awards of $10,000 or more to lead plaintiffs in securities class actions.[8]  In support of his request, Lead Plaintiff explains that he spent approximately 70 hours performing tasks associated with representing the class that "ordinarily would have been dedicated to [his] business and investment activities."  Jam Decl. ¶¶ 7-8.  Jam estimates that his professional

---

[8] *See, e.g.*, *Zaidi v. Adamas Pharma., Inc.*, No. 4:19-cv-0851-JSW, 2024 WL 4342186, at *2 (N.D. Cal. Sept. 27, 2024) (approving service award of $10,000 to lead plaintiff); *Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-cv-00226-YGR, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving service awards ranging from more than $8,000 to nearly $15,000 to class representatives); *Buccellato v. AT&T Operations, Inc.*, No. 5:10-cv-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) (approving $20,000 award to lead plaintiff and $5,000 award to each of the four additional named plaintiffs); *Kanawi v. Bechtel Corp.*, No. 3:06-cv-05566 CRB, 2011 WL 782244, at *3 (N.D. Cal. Mar. 1, 2011) (granting $7,500 incentive awards to each named plaintiff).

time is worth approximately $150 per hour and therefore believes that the $10,000 service award is fair and reasonable. *Id.* In further support of this request, Class Counsel and Lead Plaintiff point to the fact that zero objections were made to the request of these service awards, which were disclosed in the notice distributed to class members. Given the documented work that Plaintiffs have done on behalf of the class, the Court awards $10,000 to Lead Plaintiff Jams and $5,000 each to Villanueva, Tirado, Du, Zinn, and Quick.

* * *

In conclusion, the Court GRANTS Plaintiffs' motion for final approval of the settlement and motion for award of attorneys' fees, expenses, and compensatory awards.

**IT IS SO ORDERED.**

Dated: August 25, 2025

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California

16