UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| **Jeremy Villanueva, et al.,** | ) |
| | ) No. 5:23-cv-03519-EKL |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) San Jose, California |
| **Gareth T. Joyce, et al.,** | ) August 20, 2025 |
| | ) 10:04 a.m. |
| Defendants. | ) |
| _____ | ) |

**BEFORE:   THE HONORABLE EUMI K. LEE, JUDGE**

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA HYBRID ZOOM
VIDEOCONFERENCE</u>**

**<u>MOTION HEARING</u>**

Official Court Reporter:
Jennifer Pancratz, RMR, CRR, CRC (By Zoom Videoconference)
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiffs:

    LEVI & KORSINSKY, LLP
    By:  **Adam M. Apton, Esq.**
        **Devyn R. Glass, Esq.**
    1160 Battery St. E., Suite 100
    San Francisco, CA 94111

    POMERANTZ LLP
    By:  **Joshua B. Silverman, Esq.**
    10 S. LaSalle St., Suite 3505
    Chicago, IL 60603

For the Proterra Defendants:

    CLEARY GOTTLIEB STEEN & HAMILTON LLP
    By:  **Victor L. Hou, Esq.**
    One Liberty Plaza
    New York, NY 10006

For the ACTC Director Defendants:

    Ropes & Gray LLP
    By:  **Amy J. Longo, Esq.**
    Three Embarcadero Center
    San Francisco, CA 94111

Also Present:

    Eric Miller, Claims Administrator for AB Data, Ltd.

**P R O C E E D I N G S**

(Proceedings commenced at 10:04 a.m.)

THE COURTROOM DEPUTY:  We're calling Case No. 5, 23-cv-3519-EKL, Villanueva versus Joyce, et al., Proterra, for a hearing on several motions.

Counsel, please come forward and state your appearances for the record, starting with counsel for the plaintiff.

MR. APTON:  Good morning, Your Honor.  Adam Apton of Levi and Korsinsky for the plaintiffs.

THE COURT:  Morning.

MR. SILVERMAN:  Good morning, Your Honor.  Josh Silverman of Pomerantz LLP for the plaintiffs.

THE COURT:  Good morning.

MS. GLASS:  Good morning.  Devyn Glass of Levi and Korsinsky for the plaintiffs.

THE COURT:  Good morning to you all.

MR. APTON:  Your Honor, before defense counsel introduces themselves, I just want to point out that Mr. Eric Miller of AB Data, for our claims administrator, is sitting in the gallery.

THE COURT:  Thank you very much.  Welcome, Mr. Miller.

MR. HOU:  Victor Hou from Cleary Gottlieb Steen and Hamilton on behalf of the Proterra Defendants.  Good morning, Your Honor.

THE COURT:  Good morning.

MS. LONGO:  Good morning, Your Honor.  Amy Longo with Ropes and Gray on behalf of the ACTC Director Defendants.

THE COURT:  All right.  Good morning, everybody.

So we are here today on plaintiffs' motion for final approval of the class action settlement and the plan for allocation as well as the motion for attorneys' fees.

But before I begin, just to make the record clear, at this point the Court has not received any objections since it entered the preliminary approval order on April 3rd, 2025.  And just for the record, is there anyone present who is raising any objection?

All right.  Seeing no objection having been raised to the settlement, let me talk a little about today's format.  I'm going to begin by asking both counsel -- counsel to make brief opening remarks just giving me an overview.  I'll say, to begin with, I'm inclined to grant both motions.

And then I have a few questions for counsel and then a couple questions for Mr. Miller.

And then we'll wrap it up with -- and just cite any further steps we need to take.  All right?

So beginning with that, Mr. Apton.

MR. APTON:  Thank you, Your Honor.  Again, Adam Apton for plaintiffs.

We appreciate the Court's attention on this as well as

the inclination to grant both motions.

I will say that our settlement is a very good one: $29 million, representing about 20 percent of recoverable damages, in what would ordinarily be a very complex, drawn-out, lengthy litigation with significant risk.

I just want to touch on some of the high points of the litigation because I think it is important.  When we first commenced this case, there was a lot of uncertainty with respect to which direction it was going to go.  This is a case that could have easily been defended with some persuasion as to just mismanagement, poor business decisions, bad luck.  Our investigation, though, yielded information that showed otherwise; in our opinion, evidence of fraud.

We then had to pursue our claims through bankruptcy court.  The bankruptcy in this case presented significant risk because this corporate defendant or former defendant attempted to obtain confirmation of a plan that would have effectively released all shareholder claims in the course of the bankruptcy proceedings.

We prevented that from happening in the District of Delaware Bankruptcy Court.  We successfully changed the confirmation plan to instead of an opt-out release to an opt-in release, which as I said, successfully preserved not just our client's claims but the entire class.  And that was a significant point in the litigation.

THE COURT:  That was notable to the Court as well.

MR. APTON:  Thank you, Your Honor.

From that point forward, we engaged in some of the more ordinary back-and-forth, amending the pleadings, a lengthy complaint, 16 confidential witnesses, motion to dismiss briefing, and this all culminated in a full-day participation in private mediation with Mr. David Murphy, who's a very well-known and respected mediator in the area of securities litigation.

We achieved a settlement through a mediator's recommendation.  And with Your Honor's approval, we commenced the notice distribution program following preliminary approval. I don't want to jump the gun here, but we have 65,000 notices that have gone out.  We have about --

THE COURT:  Well over a thousand replies.

MR. APTON:  -- 1,100 -- yeah, 1,100 valid claims in the door right now.  Very few undeliverable claims or notices. I think we have eight undeliverable notices, addresses that just couldn't be obtained.

And then we have the information in the status report that we provided just the other day, which I believe Your Honor has.

And second to that, everything we've done to date, the successes we've achieved, the hard work we put in, we think that does warrant granting the fee motion and expense motion.

And with that, that's all I have.

THE COURT:  Thank you.

MR. APTON:  Thank you, Your Honor.

THE COURT:  I have a quick question at some -- I'll wait till closer to the end, but I do want to ask you about the withholding.  Per the Court's standing order, I generally indicate that I will typically withhold between 10 to 20 percent of attorneys' fees after post-distribution accounting, basically waiting till the end of the whole distribution period occurs and was -- did not -- and suggest in my standing order that counsel propose an amount of withholding within the proposed order.  I did not see one, so I will follow up with you.

But let me hear the --

MR. APTON:  Sure.

THE COURT:  Let me hear from defendants first. Mr. Hou.

MR. HOU:  Thank you, Your Honor.  As I mentioned, I represent the Proterra-related defendants.

I think it's important that this case was being defended by -- and I guess the defendants are individuals and were personally liable because of the fact that Proterra, the company itself, went into bankruptcy.  So this case presented unique challenges from the outset.

Almost immediately after the filing of the complaint,

the company had entered into the bankruptcy process.  So that presents unique challenges for defendants.  Obviously their personal wealth is potentially at stake.  There are limited assets in order to defend such a case, and the difficulty, of course, of procuring evidence without having a company present to be able to manage the information flow and make sure that witnesses are available to both sides.

So this case presented a unique challenge.  I agree with my colleagues on the other side this was hard fought. They were worthy opponents.  They filed an amended complaint that was extensive and lengthy.  And based on a lot of confidential witness information, we believed we had very strong meritorious and factual defenses.

The fact is, this company faced a business cycle issue, including the pandemic, which caused massive strain on the company in terms of resources, in terms of the supply chain and the difficulty in securing necessary components, including harness parts that were critical for the company to progress in the ambitious way that it had hoped.  And due to that business cycle, the company ultimately failed.

But the technology, the IP, the innovations that the company created had tremendous value, as evidenced by the fact that a lot of this technology and IP was later sold.  So this is a company that was -- you know, it was not innovation or products or, you know, worthy business goals.  This was a

company that faced a business cycle.

But notwithstanding that, again, just given the challenges of defending individuals and the fact the company was no longer, we do believe that resolution, notwithstanding our arguments on the motion to dismiss before Your Honor, was the right approach.

And I agree, we appeared before a very -- an excellent mediator, Mr. Murphy, and the parties had very rigorous and vigorous debates and disagreements, and we reached what I believe to be a fair settlement on both sides.  What our clients achieve is a high degree of certainty of having this risk and the uncertainty removed from their respective ledgers.

But I'm also reminded of the fact that many of them lost their wealth as well.  They believed in this company wholeheartedly, and they similarly, with other investors, were wiped out.

So this resolution, again, we believe is fair, and I appreciate Your Honor's time and attention.

THE COURT:  Thank you.

All right.  So let me begin with a couple questions for -- actually, Mr. Hou, why don't -- let me ask -- you can answer from the podium if the mic is working -- and I'm not sure if it -- or from the table if the mic is working.

MR. HOU:  Does this work?

THE COURT:  Let's check.

MR. HOU:  Does this work?

THE COURT:  All right.  Madam court reporter is nodding, so it seems to be working.

So let me ask, beginning with you, Mr. Hou, in terms of the CAFA notices, those were sent out in January.  Did defendants receive any responses?

MR. HOU:  No, we did not, Your Honor.

THE COURT:  Okay.  And turning to you, Mr. Apton, just going to the question which I had raised beforehand, I wanted to prepare you before, give you an opportunity to think about it before I asked you, but in terms of a percentage for withholding, what would plaintiffs recommend?

MR. APTON:  We would ask for only 15 percent withheld, given the amount of work that we still need to do during the course of the administration and distribution, and that would help with that, certainly.

THE COURT:  Okay.  Any concerns or any objections from defendants on that?  I assume not.

MR. HOU:  No, Your Honor.  Thank you.

THE COURT:  Okay.  The Court will adopt the 15 percent suggested by plaintiffs' counsel.

MR. APTON:  Thank you, Your Honor.

THE COURT:  And then last, I was just hoping to hear a little bit from Mr. Miller, actually, just about the process in terms of how it's been going and his assertions, which you had

repeated within the status report, but I thought it would be helpful just to hear a little bit from you, Mr. Miller, if you wouldn't mind coming either to the podium or you can sit with counsel, either way.

MR. MILLER:  Good morning, Your Honor.

THE COURT:  Good morning.

So I was just hoping you could elaborate a little bit for me in terms of you had noted that the claims process -- how -- you were describing the claims process so far, and you had noted it does not have -- that you do not have any concerns regarding the adequacy of notice or the number of claims received to date comparing it to other experiences that AB Data has had.  So can you just elaborate some on that?

MR. MILLER:  Sure.  So what we found here is it's very typical.  The number of claims that we've received to date is normal, what we expect to see.  We still have a couple of weeks before the filing deadline.  Usually we see some more files back closer to that deadline.  It's usually several thousand, I would expect.

THE COURT:  Okay.

MR. MILLER:  But it's normal.

Sorry, I'm actually a little nervous today.

THE COURT:  It's all good.

MR. MILLER:  Probably because there isn't an audience.

THE COURT:  And in terms of the notice, can you

discuss the comparison in terms of notice with other class action -- with other settlements you've seen?

MR. MILLER:  Well, we received names and address files from everyone we normally expect to see.

THE COURT:  Okay.  And can you talk me through what's going to happen next?  So the time period's going to --

MR. MILLER:  Sure.  So next what we'll do is we'll be processing claims after the filing --

Sorry.  I'm very nervous today.

THE COURT:  It's okay.  Take your time.  I'm not trying to make you nervous.

MR. MILLER:  I've actually sat in that chair before and been less nervous.

THE COURT:  If you'd rather sit in the witness chair, we can let you sit there.  But this is more just information --

MR. MILLER:  Sure.

THE COURT:  -- and to establish the record --

MR. MILLER:  No, I understand.

THE COURT:  -- in terms of the timing and especially given the 15 percent, so...

MR. MILLER:  Sure.

So what we'll do next is we'll process the claims. We'll flag anything that's deficient, ineligible.  We'll perform audits.  Our QA department will review everything, make sure everything's flagged properly.  We'll notify anybody with

deficient conditions, allow them a period of time to respond. We'll process those responses.

And then we will do another final quality assurance review and recommend what's approved and what we deem ineligible.

THE COURT:  What's the total timeline for that process in terms of figuring?

MR. MILLER:  I would expect that we'll complete it in the next three to four months.

THE COURT:  And then in terms of the distributions themselves, when do you expect that to happen?

MR. MILLER:  Assuming that we put in a motion before the end of the year, we usually distribute within 30 days of an order.

THE COURT:  Great.

All right.  Anything else you'd like to inform the Court?

MR. MILLER:  No.  No.  This has been very typical.

THE COURT:  Okay.  Thank you so much, Mr. Miller.

MR. MILLER:  Thank you.

THE COURT:  All right.  Mr. Apton, anything else you'd like to inform the Court of?

MR. APTON:  No, Your Honor.  Assuming we get final approval today, we'll finish the claims process and move that forward as fast as possible and hopefully be back here on the

distribution motion before the end of the year.

THE COURT:  Okay.  So I'm not going to set a date certain for that right now.  I'll just assume that you'll inform my CRD when you're ready to schedule the motion, and per the standing order, you'll just schedule the motion with her.

MR. APTON:  Your Honor, would it be possible to notice that under administrative motion timelines to expedite the process, or is that not necessary?

THE COURT:  I think it's -- it's something which just -- we should be able to hear quickly.

MR. APTON:  Okay.

THE COURT:  So just if you inform Laura that -- remind her of the hearing and that I'm happy to do it on a shorter basis.

MR. APTON:  Very good.  Thank you, Your Honor.

THE COURT:  All right.  Thank you.

So with that, the Court will today be finalizing this week and granting plaintiffs' motion for final approval of the class action settlement as well as the motion for attorneys' fees award including 15 percent withholding.

And some minor -- most of the edits we've made are minor.  They're notes and cleanup.  So we'll be working on that this week, and we'll be issuing it by the end of the week.  All right.

MR. APTON:  Very good, Your Honor.

The version that your chambers edited, was that -- it was ECF number 123-2?  That was the one we submitted with our reply that reflected there were no requests for exclusions.

THE COURT:  Yes.

MR. APTON:  Okay.

THE COURT:  Let me write that down, because I'm going to double-check it.  I think it is.  Can you repeat the number again?

MR. APTON:  Yes.  ECF 123-2.

THE COURT:  All right.  We will double-check that. Thank you.

MR. APTON:  Very good.  Thank you, Your Honor.

THE COURT:  All right.  Have a wonderful week, everybody.

Thank you very much.  We're now in recess.

(Proceedings concluded at 10:20 a.m.)

UNITED STATES DISTRICT COURT

**C E R T I F I C A T E**

I, JENNIFER PANCRATZ, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 5th day of September, 2025.


s/Jennifer Pancratz_____
Jennifer Pancratz, RMR, CRR, CRC

UNITED STATES DISTRICT COURT