Adam M. Apton (SBN 316506)
LEVI & KORSINSKY, LLP
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com

*Lead Counsel for Plaintiffs and the Class*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE COURTHOUSE

|  |  |
|---|---|
| JEREMY VILLANUEVA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GARETH T. JOYCE, KARINA FRANCO PADILLA, JOHN J. ALLEN, AMY E. ARD, JOHN F. ERHARD, BROOK F. PORTER, JOAN ROBINSON-BERRY, JEANNINE P. SARGENT, CONSTANCE E. SKIDMORE, MICHAEL D. SMITH, DANIEL R. REVERS, MARCO F. GATTI, ARNO HARRIS, JA-CHIN AUDREY LEE, BRIAN GONCHER, and STEVEN BERKENFELD,<br><br>Defendants. | No. 5:23-cv-03519-EKL<br><br>CLASS ACTION<br><br>Hon. Eumi K. Lee<br><br>Courtroom: 7<br>Date:     March 25, 2026<br>Time:     10:00 a.m. |

## PLAINTIFFS' NOTICE OF MOTION AND MOTION
## FOR DISTRIBUTION OF CLASS SETTLEMENT FUNDS AND
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 25, 2026, at 10:00 a.m. or on such other date and time as they may be heard, Lead Plaintiff Cyress Jam and additional Plaintiffs Jeremy Villanueva, Tanya Tirado, Luong Du, William E. Zinn, and Raymond H. Quick (collectively, "Plaintiffs") will appear at Courtroom 7, United States District Court for the Northern District of California, San Jose Courthouse, 4th Floor, 280 South First Street, San Jose, CA 95113, or remotely via Zoom or telephone as the Court may direct, and will and hereby do move for an order to (i) approve the Claims Administrator's administrative recommendations accepting and rejecting claims received through and including December 15, 2025; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Recognized Claims have been accepted as valid and approved by the Court, according to the plan for distribution of the Net Settlement Fund as set forth in the Declaration of Adam D. Walter in Support of Lead Plaintiff's Motion for Distribution of Class Settlement Funds and Memorandum of Points and Authorities in Support Thereof, submitted on behalf of the Claims Administrator, A.B. Data, Ltd.; (iii) impose a Final Bar Date of December 15, 2025, meaning that any claims, or documentation to cure previously defective claims, received after that date will be automatically rejected; and (iv) approve the fees and expenses incurred by the Claims Administrator in connection with the Settlement.[1]

**PLEASE TAKE FURTHER NOTICE THAT** this motion is unopposed by Defendants. However, two claimants have disputed the Claims Administrator's and Lead Counsel's decision to reject their claims. These claimants are: Anthelion Capital Holdings and BlackRock Inc.. Plaintiffs have served a copy of this motion on counsel for these entities and expect them to oppose this motion.

**PLEASE TAKE FURTHER NOTICE THAT** this motion is supported by the following memorandum of points and authorities in support thereof, the Declaration of Adam D. Walter filed

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning as defined in the Stipulation and Agreement of Settlement, dated as of January 3, 2025 (Stipulation submitted herewith).

herewith, the previous filings and orders in this case, and any further representations as may be made by counsel at any hearing on this matter.

**TABLE OF CONTENTS**

Page

NOTICE OF MOTON AND MOTION ............................................................................................ i

TABLES OF CONTENTS ......................................................................................................... iii

TABLE OF AUTHORITIES ...................................................................................................... iv

STATEMENT OF THE ISSUES TO BE DECIDED.................................................................1

    I.      PRELIMINARY STATEMENT ..............................................................................2

    II.     BACKGROUND ...................................................................................................3

    III.    CLAIMS ADMINISTRATION.............................................................................4

    IV.    THE COURT SHOULD APPROVE ACCEPTANCE OF UNTIMELY BUT
            OTHERWISE ELIGIBLE CLAIMS ....................................................................5

    V.     DISPUTED CLAIMS ...........................................................................................7

    VI.    DISTRIBUTION OF THE NET SETTLEMENT FUND .....................................8

    VII.   ADMINISTRATIVE FEES ...................................................................................9

    VIII.  CONCLUSION....................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Briones v. Riviera Hotel & Casino*,
116 F.3d 379 (9th Cir. 1997) ...................................................................................................6

*Burns v. Elrod*,
757 F.2d 151 (7th Cir. 1985) ..................................................................................................5

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977) .................................................................................................6

*In re Cendant Corp. Prides Litig.*,
233 F.3d 188 (3d Cir. 2000)....................................................................................................5

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS) (SMG), 2009 WL 803382 (E.D.N.Y. March 25, 2009)...........................6

*In re TASER Int'l, Inc. Sec. Litig.*,
No. CV-05-115-PHX-SRB, 2009 WL 10707825 (D. Ariz. July 15, 2009)................................6, 7

*In re Valdez*,
289 F. App'x 204 (9th Cir. 2008) .........................................................................................5, 6

*Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW-FFMX, 2022 WL 22969666 (C.D. Cal. Jan. 6, 2022) ................................6

*Lemus v. H & R Block Enters., LLC*,
No. C 09-03179 SI, 2013 WL 3831866 (N.D. Cal. July 23, 2013) ..........................................5, 7

*Lemus v. Madar*,
594 F. App'x 419 (9th Cir. 2015) .............................................................................................5

*Norton v. LVNV Funding, LLC*,
No. 18-CV-05051-DMR, 2022 WL 562831 (N.D. Cal. Feb. 24, 2022)....................................5, 6

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993).................................................................................................................6

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1993) ................................................................................................5, 6

*Zients v. LaMorte*,
459 F.2d 628 (2d Cir. 1972).....................................................................................................5

**Additional References**

*Manual for Complex Litigation (Fourth)* § 21.662 (2004) ...............................................................5, 6

*Reports of the Conference for District Court Judges*,
    63 F.R.D. 231 (1973) ..........................................................................................................6, 7

**STATEMENT OF THE ISSUES TO BE DECIDED**

1.    Whether the Court should approve distribution of the Net Settlement Fund pursuant to the Settlement of this Action.

2.    Resolve the two (2) requests for judicial reviews by Claimants whose Claims have been recommended for rejection by A.B. Data.

## I.    PRELIMINARY STATEMENT

The Court has approved the $29 million Settlement in this Action.  ECF No. 128.  Plaintiffs now move for entry of the [Proposed] Order Authorizing Distribution of the Net Settlement Fund (the "Distribution Order"), which will: (i) approve the Claims Administrator's administrative recommendations accepting and rejecting Claims received through and including December 15, 2025; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Recognized Claims have been accepted as valid and approved by the Court, according to the plan for distribution of the Net Settlement Fund as set forth in the Declaration of Adam D. Walter in Support of Lead Plaintiff's Motion for Distribution of Class Settlement Funds and Memorandum of Points and Authorities in Support Thereof (the "Walter Decl."), submitted on behalf of the Claims Administrator, A.B. Data, Ltd. ("A.B. Data"); (iii) impose a Final Bar Date of December 15, 2025, meaning that any Claims, or documentation to cure previously defective Claims, received after that date will be automatically rejected; and (iv) approve the fees and expenses incurred by the Claims Administrator in connection with the Settlement.

The Claims Administrator has completed the processing of Claims submitted through December 15, 2025. Plaintiffs respectfully request that the Court approve A.B. Data's administrative recommendations (a) to accept the 12,984 Claims deemed acceptable in whole or in part, listed in Exhibits E and F to the Walter Decl., and (b) to reject the 27,427 Claims that A.B. Data has wholly rejected, listed in Exhibit G to the Walter Decl.  Walter Decl., ¶¶36–38.  The 12,984 Claims recommended for acceptance represent a total of $433,881,080.03 in Recognized Claims calculated in accordance with the Court-approved Plan of Allocation. *Id*. at ¶¶36–37.

In accordance with the Plan of Allocation, each Authorized Claimant with a Recognized Claim shall receive a *pro rata* share of the Net Settlement Fund. Once the distribution is complete, Plaintiffs will file a Post-Distribution Accounting pursuant to the district's Procedural Guidance.

## II.    BACKGROUND

The Stipulation entered into by Plaintiffs and Defendants[2] sets forth the terms of the settlement (the "Settlement"), and resolves all Claims asserted against Defendants.  Pursuant to the terms of the settlement, a cash payment of $29,000,000 (twenty-nine million U.S. dollars) was deposited in escrow for the benefit of the Settlement Class.

In accordance with the Preliminary Approval Order (ECF No. 120), A.B. Data: (i) mailed and e-mailed the Court-approved Postcard Notice and Notice of Pendency and Proposed Class Action Settlement and Proof of Claim and Release Form; (ii) published the Court-approved Summary Notice; and (iii) established a website and toll-free telephone number dedicated to this Settlement.  ECF No. 121-2, ¶¶4–14; Walter Decl., ¶¶4–6.  To date, A.B. Data has mailed 20,349 Postcard Notices and e-mailed 44,341 Postcard Notices.  Walter Decl., ¶4.  On May 9, 2025, A.B. Data also caused the Summary Notice to be published electronically over PR Newswire.  *Id*. at ¶6.  The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than August 29, 2025. *Id*. at ¶7.

On August 25, 2025, following the dissemination of the Notice to potential Settlement Class Members and the publication of the Summary Notice was provided for in the Preliminary Approval Order, the Court entered the Order Granting Motion for Final Approval of Settlement and Granting Motion for Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards, granting final approval of the Settlement and holding that the Settlement was fair, reasonable, and adequate.  ECF No. 128.  Final Judgment was also entered on August 25, 2025.  ECF No. 129.  Claims Forms have now been processed, and the Net Settlement Fund is ready to be distributed to Authorized Claimants.  Accordingly, Plaintiffs respectfully ask the Court to enter the Distribution Order.

---

[2] "Defendants" refers to Gareth T. Joyce, Karina Franco Padilla, Amy E. Ard, John J. Allen, Andrew J. Cederoth, John F. Erhard, Brook F. Porter, Joan Robinson-Berry, Jeannine P. Sargent, Constance E. Skidmore, Michael D. Smith, Daniel R. Revers, Marco F. Gatti, Arno Harris, Ja-Chin Audrey Lee, Brian Goncher and Steven Berkenfeld (together with Plaintiffs, the "Parties" and each a "Party").

### III.    CLAIMS ADMINISTRATION

As set forth in the accompanying Walter Decl., through December 15, 2025, A.B. Data has received 40,411 Claims Forms, all of which have been fully processed in accordance with the Court-approved Plan of Allocation.  Walter Decl., ¶7.  Of the 40,411 Claims Forms, 340 were "Paper Claims," which were scanned into the Settlement Database developed and operated by A.B. Data.  *Id*. at ¶¶10–12.  An additional 1,150 Claims were Claims via the Claim portal on the Settlement Website ("Web Claims"), which were imported into the Settlement Database and then evaluated.  *Id*. at ¶13. Finally, 38,921 Claims were submitted electronically ("Electronic Claims"), typically by institutional investors, which were either mailed on a computer disc or electronically submitted, and then uploaded onto the Settlement Database and evaluated.  *Id*. at ¶¶14–18.  A.B. Data has identified 12,984 properly documented, valid Claims in whole or in part – 12,820 valid Claims that were timely submitted and 164 valid Claims that were received late but are otherwise eligible.  *Id*. at ¶¶20–27, 30–31, 36–37. A.B. Data recommended 27,427 Claims for rejection.  *Id*. at ¶¶20–27, 38.  Of the Claims recommended for rejection, 22,745 Claims did not result in a recognized Claim pursuant to the Court-approved Plan of Allocation; 4,397 Claims had no purchase(s) of Proterra securities during the Class Period; 228 Claims were submitted on behalf of an excluded party to the Class; 53 Claims were replaced or duplicates of other submitted Claims; 3 Claims were withdrawn; and 1 Claim was rejected for being identified as Questionable.  *Id*.  A.B. Data addressed all non-conforming Claims through a comprehensive process.  *Id*. at ¶¶20–34.  For such Paper and Web Claims that were deemed incomplete or defective, A.B. Data issued a Notice of Rejection of Claim, advising Claimants how to cure their Claims and advising the Claimants of their right to contest A.B. Data's determination.  *Id*. at ¶21.  For Electronic Claims, A.B. Data notified the Claimant if any issues arose with the formatting and data of the Claim, and subsequently reached out to Claimants for additional information to cure their Claims. *Id*. at ¶¶14–18.

Each notice of deficiency advised the affected Claimants that, if they disagreed with A.B. Data's administrative determinations, they had the right to request the Court's review of their Claim, and explained that a Claimant who disputed A.B. Data's determinations was required to submit within 20 days a written statement of reasons indicating their grounds for contesting the rejection, along with

MOTION FOR DISTRIBUTION OF CLASS SETTLEMENT FUNDS
Case No. 5:23-cv-03519-EKL                    4

supporting documentation. *Id*. at ¶28.

A.B. Data conducted a Quality Assurance review and used Quality Assurance personnel throughout the administration to ensure that Claims were processed properly. *Id*. at ¶32. A.B. Data's Quality Assurance team also performed a final project wrap-up to ensure the correctness and completeness of all Claims. *Id*. A.B. Data further used a variety of fraud protection controls throughout the Claims administration. *Id*. at ¶33. A.B. Data checked all Claims against its database of known questionable filers, which contains names, addresses, and aliases of individuals or entities that have been investigated by government agencies for questionable Claim filings, as well as the names and contact information compiled from previous settlements that A.B. Data has administered where fraudulent Claims were received. *Id*. Further, in accordance with the Office of Foreign Assets Control ("OFAC"), A.B. Data will perform searches on all checks issued to ensure that no payments are made to payees whose names appear on the federal government's restricted persons list or who reside in countries to which payments are prohibited. *Id*. at ¶34. A.B. Data regularly monitors changes to OFAC regulations and guidelines. *Id*.

## IV. THE COURT SHOULD APPROVE ACCEPTANCE OF UNTIMELY BUT OTHERWISE ELIGIBLE CLAIMS

It is well settled that a "district court has discretion to allow late claims to a settlement fund." *Lemus v. H & R Block Enters., LLC*, No. C 09-03179 SI, 2013 WL 3831866, at *2 (N.D. Cal. July 23, 2013), *aff'd sub nom. Lemus v. Madar*, 594 F. App'x 419 (9th Cir. 2015) (citing *In re Valdez*, 289 F. App'x 204, 206 (9th Cir. 2008). "Multiple circuits have held that the court maintains an inherent equitable power to allow late-filed proofs of claim and late-cured proofs of claim." *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2022 WL 562831, at *6 (N.D. Cal. Feb. 24, 2022) (citing *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000); *accord Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972); *cf. Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1993) (recognizing that "the district court has discretion to extend a class member's time to opt out" of a class settlement)). Further, *The Manual for Complex Litigation* recommends that "[t]he court should allow adequate time for late claims before any refund or other

disposition of settlement funds occurs." *Manual for Complex Litigation (Fourth)* § 21.662 (2004). Indeed, courts commonly allow late-filed claims for "excusable neglect" or "good cause." *See Silber*, 18 F.3d at 1455; *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977); *see also Valdez*, 289 F. App'x at 206 (noting that district court permitted late-filed claims by claimants with "plausible excuses for not filing timely"). The excusable neglect analysis involves equitable consideration, and the Court may consider factors including the danger of prejudice, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *Norton*, 2022 WL 562831, at \*6.

Here, 329 of the Proofs of Claim were postmarked or received after the August 29, 2025 Claim submission deadline. Walter Decl., ¶30. Of these Claims, 164 were found by A.B. Data to be eligible in whole or in part. *Id.* No Proof of Claim was rejected by A.B. Data solely because it was received after the submission deadline and the Proof of Claim has not caused significant delay in the processing or distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant or Defendant. *Id.* Indeed, when the equities are balanced, some courts hold that it would be unfair to prevent an otherwise valid Proof of Claim from recovering from the Net Settlement Fund solely because it was submitted after the cut-off date but while Claims were still being processed. *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2009 WL 803382, at \*6 (E.D.N.Y. March 25, 2009) ("Because there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement."); *see also Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW-FFMX, 2022 WL 22969666, at \*1 (C.D. Cal. Jan. 6, 2022) (permitting late but otherwise valid claims to be included in the class for settlement disbursement). Therefore, Plaintiffs respectfully request that the Court approve the 164 late but otherwise valid Claims listed in Exhibit F of the Walter Decl. *Id.*, Exhibit F.

However, to facilitate the efficient distribution of the Net Settlement Fund, there must be a final cut-off date for Claims. *See In re TASER Int'l, Inc. Sec. Litig.*, No. CV-05-115-PHX-SRB, 2009 WL 10707825, at \*2 (D. Ariz. July 15, 2009) ("[I]n the distribution of a large class action settlement

MOTION FOR DISTRIBUTION OF CLASS SETTLEMENT FUNDS
Case No. 5:23-cv-03519-EKL                    6

fund, 'a cutoff date is essential and at some point the matter must be terminated.'" (quoting *Reports of the Conference for District Court Judges*, 63 F.R.D. 231, 262 (1973)).  Otherwise, "the claim period would never cease and the money could never be distributed."  *Lemus*, 2013 WL 3831866, at *2. A.B. Data, in consultation with Lead Counsel, recommends that no Claim received after December 15, 2025, or Claim cured or adjusted after December 15, 2025, be eligible for payment.  Walter Decl., ¶31.  Accordingly, it is respectfully requested that the distribution order provide that no untimely Claim received that is not already listed on Exhibit F to the Walter Decl. be accepted for any reason whatsoever.  *Id*. at ¶31, Exhibit F.

## V.    DISPUTED CLAIMS

A.B. Data carefully received Claimants' responses to deficiency notices and informed Claimants that they had the right to contest A.B. Data's administrative determination of deficiencies or ineligibility within twenty (20) days from the date of notification and that they could request that the dispute be submitted to the Court for review.  Walter Decl., ¶28.  Two (2) requests were made for the Court to review A.B. Data's treatment of fifteen (15) Claims, both of which are attached to the Walter Decl. *Id*. at ¶29, Exhibit D-1 through D-2.  These two claims were filed by Anthelion Capital Holdings and BlackRock Inc.  The Recognized Loss for BlackRock Inc.'s Claims is $16,588,874.75, and the Recognized Loss for Anthelion Capital Holdings' Claim is $59,591,028.02.  With Class Counsel's approval, A.B. Data determined that the Claims were rejected because the Claimants were excluded from the Class under the Class definition.  *Id*.

The Court should accept A.B. Data's determination that the fifteen (15) disputed Claims should be rejected because the Class definition specifically excluded "any entity that has entered into a stockholder agreement or co-venture agreement with Proterra, or was a Private Investment in Public Equities ("PIPE") investor in Proterra; and (d) and ***each of the foregoing persons' legal representatives, heirs, successors or assigns, and any entity controlled, majority-owned or wholly owned, or affiliated with any of the above all persons who purchased or otherwise acquired Proterra common stock during the 10(b) Class Period***."  *Id*.  (emphasis added).  The Claimants fall into this definition, and, therefore, their Claims are ineligible.  Specifically, BlackRock Inc. and Anthelion

Capital Holdings were PIPE investors in Proterra or affiliated with PIPE investors, and explicitly excluded from the Class.  Further, Anthelion Capital Holdings was a party to a stockholder agreement or co-venture agreement with Proterra, acquired Proterra's business in bankruptcy after the Class Period, and acquired Proterra stock through warrants – all of which were explicitly excluded in the Court-approved Class definition.

Consequently, A.B. Data was correct in its determination that the Claimants fell into the Class definition exclusion, and their Claims are therefore ineligible.[3]

## VI.    DISTRIBUTION OF THE NET SETTLEMENT FUND

The Claims Administrator has now finished processing all Claims.  Plaintiffs request that the Court approve A.B. Data's administrative recommendations to accept the 12,984 Claims deemed acceptable (including the 164 late, but otherwise valid Claims) listed in Exhibits E and F to the Walter Decl., and to reject the 27,427 Claims that A.B. Data has determined are inadequate or ineligible, listed in Exhibit G to the Walter Decl. Walter Decl., ¶¶35–39.

Upon the issuance of the Court's order authorizing distribution, A.B. Data will distribute the entire available balance of the Net Settlement Fund to Authorized Claimants, after deducting the payments previously allowed and requested herein, including the 15% of attorney's fees ordered withheld until the filing of the Post-Distribution Accounting in accordance with the Order Granting Motion for Final Approval of Settlement and Granting Motion for Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards (ECF No. 128), and after the payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees. Walter Decl., ¶41(a).  Each Authorized Claimant's *pro rata* share of the Net Settlement Fund will be based on each Authorized Claimant's Recognized Claim as compared to the total Recognized Claims of all Authorized

---

[3] On December 5, 2025, counsel for Fidelity Group of Funds ("Fidelity") reached out to Class Counsel concerning A.B. Data's determination to reject Fidelity's Claims. Counsel for Fidelity and Class Counsel subsequently held a telephonic meeting where Class Counsel outlined the reasoning for A.B. Data's determination.  A.B. Data followed up with counsel for Fidelity two (2) separate times about its determination to reject Fidelity's Claims and offered Fidelity the opportunity to have Fidelity's Claims submitted to the Court for review.  Walter Decl., ¶29, fn.2.  To date, neither A.B. Data nor Class Counsel have received any communication from Fidelity or its counsel requesting Court review.

Claimants. *Id*. at ¶41(a)(1). No distribution will be made on a Claim where the potential distribution amount is less than $20.00 in cash. *Id*. at ¶41(a)(2). The Net Settlement Fund will be allocated among the Authorized Claimants mentioned in the paragraph above whose prorated payment is $20.00 or greater and any prorated amounts of less than $20.00 will be included in the pool distributed to those whose prorated payments are $20.00 or greater. *Id*. at ¶41(a)(3). To encourage Authorized Claimants to deposit their payments promptly, all distribution checks will bear a notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. at ¶41(b).

If there is any balance remaining in the Net Settlement Fund after six (6) months from the initial distribution date (whether by reason of tax refunds, uncashed checks, or otherwise), Class Counsel recommends that, if economically feasible, such remainder be allocated in a redistribution, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who cashed their checks from the initial distribution, and who would receive at least $20.00 from such re-distribution. *Id*. at ¶41(d).

Additionally, Plaintiffs respectfully request that one year after the Initial Distribution, A.B. Data be permitted to destroy the paper copies of the Claims and all supporting documentation, and one year after all funds have been distributed, A.B. Data be permitted to destroy electronic copies of the Claim forms and supporting documentation. *Id*. at ¶41(g).

## VII.   ADMINISTRATIVE FEES

As ordered by the Court in its Preliminary Approval Order, Class Counsel may use the Settlement Fund to pay reasonable Notice and Administration Costs up to $300,000 actually incurred and paid or payable without further order of the Court. ECF No. 120, ¶9. To date, A.B. Data has incurred $177,823.36 in fees and costs administering the Settlement, none of which have yet been reimbursed. Walter Decl., ¶40, Exhibit H. The total cost of administration through the initial distribution is $202,241.11. *Id*. These amounts qualify as Notice and Administration Costs pursuant to the Preliminary Approval Order and are well below the $300,000 limit the Court has already approved. ECF No. 120, ¶9.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and enter the proposed Distribution Order submitted herewith.

Dated: February 12, 2026

Respectfully submitted,

LEVI & KORSINSKY, LLP

By:    */s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com

*Lead Counsel for Plaintiffs*
*and the Class*

Joshua B. Silverman
Christopher P.T. Tourek
POMERANTZ LLP
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
ctourek@pomlaw.com

*Additional counsel for Plaintiffs*
*and the Class*